# EXHIBIT A

**The Plan**

<u>COMPOSITE</u>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

-------------------------------------------------------x
```
                                           :
In re                                      :        Chapter 11
                                           :
WASHINGTON MUTUAL, INC., et al.,           :
                                           :        Case No. 08-12229 (MFW)
                                           :
        Debtors.                           :        (Jointly Administered)
                                           :
                                           :
```
-------------------------------------------------------x

**SEVENTH AMENDED JOINT PLAN OF AFFILIATED DEBTORS**
**PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

- and -

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

Dated: December 12, 2011

# TABLE OF CONTENTS

**Page**

ARTICLE I        DEFINITIONS ................................................................................................ 1

| | | |
|---|---|---|
| 1.1 | AAOC ........................................................................................... | 1 |
| 1.2 | AAOC Releasees .......................................................................... | 1 |
| 1.3 | Accepting Non-Filing WMB Senior Note Holder ........................ | 1 |
| 1.4 | Acquisition JPMC Entities ........................................................... | 1 |
| 1.5 | Actions ......................................................................................... | 1 |
| 1.6 | Admin Account ............................................................................. | 1 |
| 1.7 | Administrative Claim Bar Date .................................................... | 1 |
| 1.8 | Administrative Expense Claim ..................................................... | 2 |
| 1.9 | Affiliate ....................................................................................... | 2 |
| 1.10 | Affiliated Banks .......................................................................... | 2 |
| 1.11 | Allowed Administrative Expense Claim ...................................... | 2 |
| 1.12 | Allowed CCB-1 Guarantees Claim .............................................. | 2 |
| 1.13 | Allowed CCB-2 Guarantees Claim .............................................. | 2 |
| 1.14 | Allowed Claim ............................................................................. | 2 |
| 1.15 | Allowed Convenience Claim ........................................................ | 3 |
| 1.16 | Allowed General Unsecured Claim .............................................. | 3 |
| 1.17 | Allowed JPMC Assumed Liability Claim .................................... | 3 |
| 1.18 | Allowed Late-Filed Claim ........................................................... | 3 |
| 1.19 | Allowed PIERS Claim ................................................................. | 3 |
| 1.20 | Allowed Priority Non-Tax Claim ................................................. | 3 |
| 1.21 | Allowed Priority Tax Claim ......................................................... | 3 |
| 1.22 | Allowed Senior Notes Claim ....................................................... | 3 |
| 1.23 | Allowed Senior Subordinated Notes Claim ................................. | 3 |
| 1.24 | Allowed Subordinated Claim ....................................................... | 4 |
| 1.25 | Allowed Trustee Claim ................................................................ | 4 |
| 1.26 | Allowed Unsecured Claim ........................................................... | 4 |
| 1.27 | Allowed WMB Senior Notes Claim ............................................. | 4 |
| 1.28 | Allowed WMB Vendor Claim ...................................................... | 4 |
| 1.29 | Allowed WMI Vendor Claim ....................................................... | 4 |
| 1.30 | American Savings Escrow Funds ................................................. | 4 |
| 1.31 | American Savings Litigation ........................................................ | 4 |
| 1.32 | Anchor Litigation ........................................................................ | 4 |
| 1.33 | Assets .......................................................................................... | 4 |
| 1.34 | Avoidance Actions ...................................................................... | 4 |
| 1.35 | Ballot ........................................................................................... | 5 |
| 1.36 | Ballot Date .................................................................................. | 5 |
| 1.37 | Bankruptcy Code ......................................................................... | 5 |
| 1.38 | Bankruptcy Court ........................................................................ | 5 |
| 1.39 | Bankruptcy Rules ........................................................................ | 5 |
| 1.40 | Bankruptcy Stay Motions ........................................................... | 5 |
| 1.41 | BB Liquidating Trust Interests .................................................... | 5 |

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 1.42 | Benefit Plan | 5 |
| 1.43 | BKK Group | 5 |
| 1.44 | BKK Liabilities | 5 |
| 1.45 | BKK Litigation | 6 |
| 1.46 | BKK Proofs of Claim | 6 |
| 1.47 | BKK Settlement Agreement | 6 |
| 1.48 | Bond Claim | 6 |
| 1.49 | Bond Indemnity | 6 |
| 1.50 | Bonding Companies | 6 |
| 1.51 | Bonds | 6 |
| 1.52 | Business Day | 6 |
| 1.53 | Cash | 6 |
| 1.54 | Cash Equivalents | 6 |
| 1.55 | Causes of Action | 7 |
| 1.56 | CCB-1 Common Securities | 7 |
| 1.57 | CCB-1 Guarantees | 7 |
| 1.58 | CCB-1 Guarantees Claim | 7 |
| 1.59 | CCB-1 Guarantee Agreements | 7 |
| 1.60 | CCB-1 Preferred Securities | 7 |
| 1.61 | CCB-1 Trustee | 7 |
| 1.62 | CCB-2 Common Securities | 7 |
| 1.63 | CCB-2 Guarantees | 8 |
| 1.64 | CCB-2 Guarantees Claim | 8 |
| 1.65 | CCB-2 Guarantee Agreements | 8 |
| 1.66 | CCB-2 Preferred Securities | 8 |
| 1.67 | CCB-2 Trustees | 8 |
| 1.68 | CCB Releasees | 8 |
| 1.69 | CDTSC | 8 |
| 1.70 | Chapter 11 Cases | 8 |
| 1.71 | Claim | 8 |
| 1.72 | Class | 8 |
| 1.73 | Common Equity Interest | 9 |
| 1.74 | Common Stock Allotment | 9 |
| 1.75 | Confirmation Date | 9 |
| 1.76 | Confirmation Hearing | 9 |
| 1.77 | Confirmation Order | 9 |
| 1.78 | Convenience Claim | 9 |
| 1.79 | Credit Facility | 10 |
| 1.80 | Creditor | 10 |
| 1.81 | Creditor Cash | 10 |
| 1.82 | Creditors' Committee | 10 |
| 1.83 | Debtors | 10 |

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 1.84 | Debtors' Claims | 10 |
| 1.85 | Debtors in Possession | 10 |
| 1.86 | Dime Inc. | 10 |
| 1.87 | Dime Warrant Litigation | 11 |
| 1.88 | Dime Warrants | 11 |
| 1.89 | Disbursing Agent | 11 |
| 1.90 | Disclosure Statement | 11 |
| 1.91 | Disclosure Statement Order | 11 |
| 1.92 | Disputed Accounts | 11 |
| 1.93 | Disputed Claim | 11 |
| 1.94 | Disputed Equity Escrow | 12 |
| 1.95 | Disputed Equity Interest | 12 |
| 1.96 | Distribution Record Date | 12 |
| 1.97 | Effective Date | 12 |
| 1.98 | Entity | 12 |
| 1.99 | Equity Committee | 12 |
| 1.100 | Equity Committee Adversary Proceeding | 12 |
| 1.101 | Equity Committee Action to Compel | 12 |
| 1.102 | Equity Release Election Date | 13 |
| 1.103 | Equity Interest | 13 |
| 1.104 | Estate Claims | 13 |
| 1.105 | FDIC Claim | 13 |
| 1.106 | FDIC Corporate | 13 |
| 1.107 | FDIC Receiver | 14 |
| 1.108 | FDIC Stay Relief Motion | 14 |
| 1.109 | Final Order | 14 |
| 1.110 | Fixed Rate Notes | 14 |
| 1.111 | Floating Rate Notes | 14 |
| 1.112 | FSB | 14 |
| 1.113 | General Unsecured Claim | 14 |
| 1.114 | Global Settlement Agreement | 14 |
| 1.115 | Guarantee Agreements | 15 |
| 1.116 | Indentures | 15 |
| 1.117 | Information Demands | 15 |
| 1.118 | Intercompany Claim | 15 |
| 1.119 | Intercompany Notes | 15 |
| 1.120 | IRC | 15 |
| 1.121 | Intercreditor Interest Claim | 15 |
| 1.122 | IRS | 15 |
| 1.123 | January Opinion | 15 |
| 1.124 | JPMC | 15 |
| 1.125 | JPMC Action | 15 |

# TABLE OF CONTENTS
## (continued)

Page

1.126  JPMC Allowed Unsecured Claim .................................................................... 16
1.127  JPMC Assumed Liabilities ............................................................................ 16
1.128  JPMC Assumed Liability Claim ................................................................... 16
1.129  JPMC Claims ................................................................................................ 16
1.130  JPMC Entities .............................................................................................. 16
1.131  JPMC Policies .............................................................................................. 16
1.132  JPMC Rabbi Trust/Policy Claim ................................................................. 16
1.133  JPMC Rabbi Trusts ...................................................................................... 17
1.134  Junior Subordinated Notes Indenture .......................................................... 17
1.135  Lakeview Plan .............................................................................................. 17
1.136  Late-Filed Claim .......................................................................................... 17
1.137  Lien .............................................................................................................. 17
1.138  Liquidating Trust ......................................................................................... 17
1.139  Liquidating Trust Agreement ...................................................................... 17
1.140  Liquidating Trust Assets ............................................................................. 17
1.141  Liquidating Trust Beneficiaries .................................................................. 18
1.142  Liquidating Trust Claims Reserve .............................................................. 18
1.143  Liquidating Trustee ...................................................................................... 18
1.144  Liquidating Trust Interests .......................................................................... 18
1.145  Litigation Proceeds ...................................................................................... 18
1.146  Litigation Proceeds Interest ........................................................................ 18
1.147  Local Bankruptcy Rules .............................................................................. 18
1.148  Modified Plan ............................................................................................... 19
1.149  Non-Filing WMB Senior Note Holder ........................................................ 19
1.150  Non-Filing WMB Senior Note Holders Election Form ............................... 19
1.151  Original Disclosure Statement Order ........................................................... 19
1.152  Other Benefit Plan Claim ............................................................................ 19
1.153  Other Subordinated Claim ........................................................................... 19
1.154  Penalty Claim ............................................................................................... 19
1.155  Pension Plans ............................................................................................... 19
1.156  Person ........................................................................................................... 20
1.157  Petition Date ................................................................................................ 20
1.158  PIERS Claim ................................................................................................ 20
1.159  PIERS Claims Releasees .............................................................................. 20
1.160  PIERS Common Securities .......................................................................... 20
1.161  PIERS Guarantee Agreement ...................................................................... 20
1.162  PIERS Preferred Securities .......................................................................... 20
1.163  PIERS Trust Agreement ............................................................................... 20
1.164  PIERS Trustee: ............................................................................................. 20
1.165  Plan .............................................................................................................. 20
1.166  Plan Contribution Assets ............................................................................. 20
1.167  Plan Supplement .......................................................................................... 21

# TABLE OF CONTENTS
## (continued)

1.168  Plan Support Agreement ............................................................................ 21
1.169  Postpetition Interest Claim ........................................................................ 21
1.170  Preferred Equity Interest ........................................................................... 21
1.171  Preserved Avoidance Actions .................................................................... 21
1.172  Priority Non-Tax Claim ............................................................................. 21
1.173  Priority Tax Claim ..................................................................................... 21
1.174  Privileges ................................................................................................... 22
1.175  Pro Rata Share ........................................................................................... 22
1.176  Purchase and Assumption Agreement ....................................................... 22
1.177  Qualified Plan Claim ................................................................................. 23
1.178  Receivership .............................................................................................. 23
1.179  Registry Funds ........................................................................................... 23
1.180  REIT Series ............................................................................................... 23
1.181  Related Actions ......................................................................................... 23
1.182  Related Persons ......................................................................................... 23
1.183  Released Claims ........................................................................................ 23
1.184  Released Parties ......................................................................................... 24
1.185  Released Third Party Causes of Action ..................................................... 24
1.186  Releasing REIT Trust Holder .................................................................... 24
1.187  Remaining Postpetition Interest Claim ..................................................... 25
1.188  Reorganized Common Stock ..................................................................... 25
1.189  Reorganized Debtors .................................................................................. 25
1.190  Reorganized Debtors By-Laws .................................................................. 25
1.191  Reorganized Debtors Certificates of Incorporation .................................. 25
1.192  Reorganized WMI ..................................................................................... 25
1.193  Rule 2004 Inquiry ..................................................................................... 25
1.194  Rule 2019 Appeal ...................................................................................... 25
1.195  Runoff Indenture ....................................................................................... 25
1.196  Runoff Notes ............................................................................................. 26
1.197  Runoff Proceeds ........................................................................................ 26
1.198  Runoff Threshold ...................................................................................... 26
1.199  Schedules .................................................................................................. 26
1.200  Section 510(b) Subordinated WMB Notes Claim ..................................... 27
1.201  Securities Litigations ................................................................................ 27
1.202  Senior Notes .............................................................................................. 27
1.203  Senior Notes Claim .................................................................................... 27
1.204  Senior Notes Claims Releasees .................................................................. 27
1.205  Senior Notes Indenture .............................................................................. 27
1.206  Senior Notes Indenture Trustee ................................................................. 27
1.207  Senior Notes Release Consideration .......................................................... 27
1.208  Senior Subordinated Notes ........................................................................ 28
1.209  Senior Subordinated Notes Claim ............................................................. 28

# TABLE OF CONTENTS
## (continued)

Page

1.210   Senior Subordinated Notes Claims Releasees ........................................................ 28
1.211   Senior Subordinated Notes Indenture ..................................................................... 28
1.212   Senior Subordinated Notes Indenture Trustee ....................................................... 28
1.213   Senior Subordinated Notes Release Consideration................................................ 28
1.214   September Opinion ................................................................................................. 28
1.215   September Order ..................................................................................................... 28
1.216   Settlement WMB Senior Note Holders.................................................................. 28
1.217   Sixth Amended Plan ............................................................................................... 29
1.218   Standing Motion...................................................................................................... 29
1.219   Stock Trading Order ............................................................................................... 29
1.220   Subordinated Claim ................................................................................................ 29
1.221   Subordination Model .............................................................................................. 29
1.222   Tax Authority.......................................................................................................... 29
1.223   Taxes........................................................................................................................ 29
1.224   Tax Refunds ............................................................................................................ 29
1.225   Tax Return .............................................................................................................. 29
1.226   Texas Litigation ..................................................................................................... 29
1.227   Tranquility............................................................................................................... 30
1.228   Tranquility Claim ................................................................................................... 30
1.229   Transferred Intellectual Property ........................................................................... 30
1.230   Treasury Regulations .............................................................................................. 30
1.231   Trust Advisory Board ............................................................................................. 30
1.232   Trustee Claims ........................................................................................................ 30
1.233   Trustee Distribution Expenses ............................................................................... 30
1.234   Trustees.................................................................................................................... 30
1.235   Trust Preferred Securities ...................................................................................... 30
1.236   Trust Preferred Trustees.......................................................................................... 31
1.237   Trusts........................................................................................................................ 31
1.238   Turnover Action...................................................................................................... 31
1.239   Unidentified Intellectual Property.......................................................................... 31
1.240   Unsecured Claim ..................................................................................................... 31
1.241   Vendor Escrow......................................................................................................... 31
1.242   Visa Claims.............................................................................................................. 31
1.243   Visa Shares............................................................................................................... 31
1.244   Voting Record Date ................................................................................................ 32
1.245   WaMu Pension Plan................................................................................................. 32
1.246   WMB......................................................................................................................... 32
1.247   WMB Intellectual Property ..................................................................................... 32
1.248   WMB Global Note Program ................................................................................... 32
1.249   WMB Notes Claim .................................................................................................. 32
1.250   WMB Senior Notes.................................................................................................. 32
1.251   WMB Senior Notes Claim ...................................................................................... 32

**TABLE OF CONTENTS**
**(continued)**

**Page**

| | | |
|---|---|---|
| 1.252 | WMB Subordinated Notes | 32 |
| 1.253 | WMB Subordinated Notes Claim | 32 |
| 1.254 | WMB Vendor Claim | 32 |
| 1.255 | WMI | 32 |
| 1.256 | WMI Accounts | 32 |
| 1.257 | WMI Action | 33 |
| 1.258 | WMI Entities | 33 |
| 1.259 | WMI Intellectual Property | 33 |
| 1.260 | WMI Investment | 33 |
| 1.261 | WMI Medical Plan | 33 |
| 1.262 | WMI Medical Plan Claim | 33 |
| 1.263 | WMI Policies | 33 |
| 1.264 | WMI Rabbi Trust | 33 |
| 1.265 | WMI Vendor Claim | 33 |
| 1.266 | WMI/WMB Intercompany Claim | 33 |
| 1.267 | WMMRC | 33 |
| 1.268 | Other Definitions | 33 |
| 1.269 | Allowed Equity Interest | 34 |
| 1.270 | LTW Stipulation | 34 |
| ARTICLE II | COMPROMISE AND SETTLEMENT OF DISPUTES | 34 |
| 2.1 | Compromise, Settlement and Sale | 34 |
| ARTICLE III | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 38 |
| 3.1 | Administrative Expense Claims | 38 |
| 3.2 | Professional Compensation and Reimbursement Claims | 38 |
| 3.3 | Priority Tax Claims | 39 |
| 3.4 | Statutory Fees | 39 |
| 3.5 | Administrative Tax Claims | 39 |
| ARTICLE IV | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 39 |
| 4.1 | Class 1 Priority Non-Tax Claims | 39 |
| 4.2 | Class 2 Senior Notes Claims | 40 |
| 4.3 | Class 3 Senior Subordinated Notes Claims | 40 |
| 4.4 | Class 4 WMI Medical Plan Claims | 40 |
| 4.5 | Class 5 JPMC Rabbi Trust/Policy Claims | 40 |
| 4.6 | Class 6 Other Benefit Plan Claims | 40 |
| 4.7 | Class 7 Qualified Plan Claims | 40 |
| 4.8 | Class 8 WMB Vendor Claims | 40 |
| 4.9 | Class 9 Visa Claims | 40 |
| 4.10 | Class 10 Bond Claims | 40 |
| 4.11 | Class 11 WMI Vendor Claims | 40 |

# TABLE OF CONTENTS
## (continued)

**Page**

4.12    Class 12 General Unsecured Claims  Class 12A Late-Filed Claims .................. 40
4.13    Class 13 Convenience Claims ................................................................ 40
4.14    Class 14 CCB-1 Guarantees Claims ....................................................... 40
4.15    Class 15 CCB-2 Guarantees Claims ....................................................... 40
4.16    Class 16 PIERS Claims ....................................................................... 40
4.17    Class 17A WMB Senior Notes Claims  Class 17B WMB Subordinated
        Notes Claims ................................................................................... 40
4.18    Class 18 Subordinated Claims .............................................................. 40
4.19    Class 19 Preferred Equity Interests ....................................................... 40
4.20    Class 20 Intentionally Left Blank .......................................................... 40
4.21    Class 21 Dime Warrants ..................................................................... 40
4.22    Class 22 Common Equity Interests ........................................................ 40

ARTICLE V        PROVISION FOR TREATMENT OF PRIORITY NON-TAX
                 CLAIMS (CLASS 1) ............................................................. 40

5.1     Payment of Allowed Priority Non-Tax Claims ......................................... 40

ARTICLE VI       PROVISION FOR TREATMENT OF SENIOR NOTES CLAIMS
                 (CLASS 2) ........................................................................ 40

6.1     Treatment of Senior Notes Claims ......................................................... 40
6.2     Rights of Election ............................................................................. 42
6.3     Limitation on Recovery ...................................................................... 42

ARTICLE VII      PROVISION FOR TREATMENT OF  SENIOR
                 SUBORDINATED NOTES CLAIMS (CLASS 3) .............................. 43

7.1     Treatment of Senior Subordinated Notes Claims ....................................... 43
7.2     Rights of Election ............................................................................. 44
7.3     Limitation on Recovery ...................................................................... 45

ARTICLE VIII     PROVISION FOR TREATMENT OF WMI MEDICAL PLAN
                 CLAIMS (CLASS 4) ............................................................. 45

8.1     Treatment of WMI Medical Plan Claims .................................................. 45

ARTICLE IX       PROVISION FOR TREATMENT OF  JPMC RABBI
                 TRUST/POLICY CLAIMS (CLASS 5) ......................................... 45

9.1     Treatment of JPMC Rabbi Trust/Policy Claims .......................................... 45

ARTICLE X        PROVISION FOR TREATMENT OF OTHER BENEFIT PLAN
                 CLAIMS (CLASS 6) ............................................................. 46

10.1    Treatment of Other Benefit Plan Claims .................................................. 46

# TABLE OF CONTENTS
## (continued)

**Page**

ARTICLE XI        PROVISION FOR TREATMENT OF QUALIFIED PLAN CLAIMS (CLASS 7) .............................................................................. 46

  11.1    Treatment of Qualified Plan Claims .............................................. 46

ARTICLE XII       PROVISION FOR TREATMENT OF WMB VENDOR CLAIMS (CLASS 8) ..................................................................................... 46

  12.1    Treatment of WMB Vendor Claims ............................................. 46

ARTICLE XIII      PROVISION FOR TREATMENT OF VISA CLAIMS (CLASS 9)....... 46

  13.1    Treatment of Visa Claims ............................................................ 46

ARTICLE XIV     PROVISION FOR TREATMENT OF BOND CLAIMS (CLASS 10) ............................................................................................ 46

  14.1    Treatment of Bond Claims........................................................... 46

ARTICLE XV      PROVISION FOR TREATMENT OF WMI VENDOR CLAIMS (CLASS 11) ................................................................................... 46

  15.1    Treatment of WMI Vendor Claims.............................................. 46

ARTICLE XVI     PROVISION FOR TREATMENT OF GENERAL UNSECURED CLAIMS (CLASS 12) ............................................................... 47

  16.1    Class 12 – General Unsecured Claims......................................... 47
  16.2    Class 12A – Late-Filed Claims.................................................... 48
  16.3    Limitation on Recovery .............................................................. 49

ARTICLE XVII    PROVISION FOR TREATMENT OF CONVENIENCE CLAIMS (CLASS 13) ................................................................................... 49

  17.1    Treatment of Convenience Claims............................................... 49

ARTICLE XVIII   PROVISION FOR TREATMENT OF  CCB-1 GUARANTEES CLAIMS (CLASS 14) ............................................................... 49

  18.1    Treatment of CCB-1 Guarantees Claims ..................................... 49
  18.2    Rights of Election ........................................................................ 50
  18.3    Limitation on Recovery .............................................................. 51

ARTICLE XIX    PROVISION FOR TREATMENT OF  CCB-2 GUARANTEES CLAIMS (CLASS 15) ............................................................... 51

  19.1    Treatment of CCB-2 Guarantees Claims ..................................... 51
  19.2    Rights of Election ........................................................................ 52
  19.3    Limitation on Recovery .............................................................. 53

# TABLE OF CONTENTS
## (continued)

Page

ARTICLE XX    PROVISION FOR TREATMENT OF PIERS CLAIMS (CLASS
16) ................................................................................................................. 54

20.1    Treatment of PIERS Claims.......................................................................... 54
20.2    Reorganized Common Stock Election ............................................................ 55
20.3    Limitation on Recovery ................................................................................ 55

ARTICLE XXI    PROVISION FOR TREATMENT OF WMB NOTES CLAIMS
AND NON-FILING WMB SENIOR NOTE HOLDERS (CLASS
17)................................................................................................................. 55

21.1    Treatment of WMB Notes Claims ................................................................. 55

ARTICLE XXII    PROVISION FOR TREATMENT OF SUBORDINATED
CLAIMS (CLASS 18) ...................................................................................... 58

22.1    Treatment of Subordinated Claims ................................................................ 58
22.2    Limitation on Recovery ................................................................................ 58

ARTICLE XXIII    PROVISION FOR TREATMENT OF PREFERRED EQUITY
INTEREST (CLASS 19)..................................................................................... 59

23.1    Treatment of Preferred Equity Interests......................................................... 59
23.2    Cancellation of REIT Series .......................................................................... 59
23.3    Cancellation of Preferred Equity Interests ..................................................... 60

ARTICLE XXIV    PROVISION FOR TREATMENT OF DIME WARRANTS
(CLASS 21) ................................................................................................... 60

24.1    Treatment of Dime Warrants ......................................................................... 60
24.2    Cancellation of Dime Warrants ..................................................................... 60

ARTICLE XXV    PROVISION FOR TREATMENT OF COMMON EQUITY
INTERESTS (CLASS 22) ................................................................................. 60

25.1    Treatment of Common Equity Interests.......................................................... 60
25.2    Cancellation of Common Equity Interests...................................................... 60

ARTICLE XXVI    PROVISION FOR TREATMENT OF DISPUTED CLAIMS AND
DISPUTED EQUITY INTERESTS ...................................................................... 61

26.1    Objections to Claims; Prosecution of Disputed Claims and Disputed
Equity Interests ............................................................................................ 61
26.2    Estimation of Claims.................................................................................... 61
26.3    Payments and Distributions on Disputed Claims and Disputed Equity
Interests ....................................................................................................... 61

ARTICLE XXVII    THE LIQUIDATING TRUST ............................................................... 64

27.1    Execution of Liquidating Trust Agreement .................................................... 64
27.2    Purpose of the Liquidating Trust ................................................................... 65

# TABLE OF CONTENTS
## (continued)

**Page**

27.3   Liquidating Trust Assets ............................................................................ 65
27.4   Administration of the Liquidating Trust ................................................. 65
27.5   The Liquidating Trustee ........................................................................... 65
27.6   Role of the Liquidating Trustee .............................................................. 65
27.7   Liquidating Trustee's Tax Power for Debtors ........................................ 66
27.8   Transferability of Liquidating Trust Interests ....................................... 66
27.9   Cash .......................................................................................................... 66
27.10  Distribution of Liquidating Trust Assets ................................................ 67
27.11  Costs and Expenses of the Liquidating Trust ........................................ 67
27.12  Compensation of the Liquidating Trustee ............................................. 67
27.13  Retention of Professionals/Employees by the Liquidating Trustee ...... 67
27.14  Federal Income Tax Treatment of the Liquidating Trust ...................... 68
27.15  Indemnification of Liquidating Trustee ................................................. 71
27.16  Privileges and Obligation to Respond to Ongoing Investigations ........ 71

ARTICLE XXVIII   PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD
BY THE DEBTORS ................................................................. 72

28.1   Prosecution of Claims .............................................................................. 72

ARTICLE XXIX   ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR
EQUITY INTERESTS ............................................................... 73

29.1   Impaired Classes to Vote ......................................................................... 73
29.2   Acceptance by Class of Creditors ........................................................... 73
29.3   Cramdown ................................................................................................. 73

ARTICLE XXX   IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS
IMPAIRED AND NOT IMPAIRED BY THE PLAN ............... 73

30.1   Impaired and Unimpaired Classes ........................................................... 73
30.2   Impaired Classes Entitled to Vote on Plan ............................................. 73
30.3   Claims and Equity Interests Deemed to Reject ...................................... 73
30.4   Claims Deemed to Accept ........................................................................ 74
30.5   Controversy Concerning Impairment ...................................................... 74

ARTICLE XXXI   PROVISIONS GOVERNING DISTRIBUTIONS ................... 74

31.1   Time and Manner of Distributions ........................................................... 74
31.2   Timeliness of Payments ........................................................................... 75
31.3   Distributions by the Disbursing Agent .................................................... 75
31.4   Manner of Payment under the Plan .......................................................... 75
31.5   Delivery of Distributions ......................................................................... 75
31.6   Undeliverable/Reserved Distributions .................................................... 76
31.7   Withholding and Reporting Requirements .............................................. 78
31.8   Time Bar to Cash Payments ..................................................................... 78

# TABLE OF CONTENTS
## (continued)

**Page**

31.9    Distributions After Effective Date .................................................................. 79
31.10   Setoffs .......................................................................................................... 79
31.11   Allocation of Plan Distributions Between Principal and Interest ...................... 79
31.12   Payment of Trustee Fees and Expenses ......................................................... 79
31.13   Distribution Record Date .............................................................................. 80
31.14   Runoff Notes ................................................................................................ 80

ARTICLE XXXII    .......................................................................................................... 81

32.1    Incorporation and Enforcement of the Settlement Agreement ......................... 81
32.2    Intercompany Claims .................................................................................... 82
32.3    Merger/Dissolution/Consolidation ................................................................ 82
32.4    Cancellation of Existing Securities and Agreements ....................................... 82
32.5    Claims of Subordination ............................................................................... 83
32.6    Surrender of Instruments ............................................................................... 83
32.7    Issuance of Runoff Notes, Liquidating Trust Interests and Reorganized
        Common Stock ............................................................................................. 83
32.8    Exemption from Securities Laws .................................................................... 83
32.9    Hart-Scott-Rodino Compliance ..................................................................... 84
32.10   Fractional Stock or Other Distributions ......................................................... 84
32.11   Credit Facility .............................................................................................. 84

ARTICLE XXXIII    CREDITORS' COMMITTEE/EQUITY COMMITTEE ....................... 84

33.1    Dissolution of the Creditors' Committee ........................................................ 84
33.2    Dissolution of the Equity Committee ............................................................. 85

ARTICLE XXXIV    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 86

34.1    Rejection or Assumption of Remaining Executory Contracts and
        Unexpired Leases ......................................................................................... 86
34.2    Approval of Rejection or Assumption of Executory Contracts and
        Unexpired Leases ......................................................................................... 86
34.3    Inclusiveness ................................................................................................ 86
34.4    Cure of Defaults ........................................................................................... 86
34.5    Rejection Damage Claims .............................................................................. 87
34.6    Indemnification and Reimbursement Obligations ........................................... 87
34.7    Termination of Benefit Plans ......................................................................... 87
34.8    Termination of Vendor Stipulation ................................................................ 88

ARTICLE XXXV    RIGHTS AND POWERS OF DISBURSING AGENT ....................... 88

35.1    Exculpation .................................................................................................. 88
35.2    Powers of the Disbursing Agent .................................................................... 88
35.3    Fees and Expenses Incurred From and After the Effective Date ...................... 88

**TABLE OF CONTENTS**
**(continued)**

**Page**

ARTICLE XXXVI   CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN ...... 89
36.1   Conditions Precedent to Confirmation of the Plan ........... 89
36.2   Waiver of Conditions Precedent to Confirmation ............. 90

ARTICLE XXXVII   CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN ...... 90
37.1   Conditions Precedent to Effective Date of the Plan........... 90
37.2   Waiver of Conditions Precedent ......... 91

ARTICLE XXXVIII   RETENTION OF JURISDICTION ......... 91
38.1   Retention of Jurisdiction ......... 91

ARTICLE XXXIX   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...... 93
39.1   Modification of Plan ......... 93
39.2   Revocation or Withdrawal ......... 93
39.3   Amendment of Plan Documents ......... 93
39.4   No Admission of Liability ......... 93

ARTICLE XL   CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTORS ...... 94
40.1   Corporate Action......... 94
40.2   Reincorporation......... 95
40.3   Amendment of Articles of Incorporation and By-Laws ......... 95
40.4   Directors of the Reorganized Debtors......... 95
40.5   Officers of the Reorganized Debtors ......... 95

ARTICLE XLI   MISCELLANEOUS PROVISIONS......... 95
41.1   Title to Assets ......... 95
41.2   Discharge and Release of Claims and Termination of Equity Interests ...... 96
41.3   Injunction on Claims......... 97
41.4   Integral to Plan ......... 98
41.5   Releases by the Debtors, the Creditors' Committee and the Equity Committee......... 98
41.6   Releases by Holders of Claims and Equity Interests ......... 99
41.7   Injunction Related to Releases......... 102
41.8   Exculpation ......... 102
41.9   Bar Order ......... 102
41.10   Deemed Consent ......... 103
41.11   No Waiver......... 103
41.12   Supplemental Injunction ......... 103
41.13   Term of Existing Injunctions or Stays ......... 104

# TABLE OF CONTENTS
## (continued)

**Page**

41.14  Payment of Statutory Fees .................................................................... 104
41.15  Post-Effective Date Fees and Expenses........................................... 105
41.16  Exemption from Transfer Taxes ....................................................... 105
41.17  Withdrawal of Equity Committee Proceedings ............................... 105
41.18  Payment of Fees and Expenses of Certain Creditors ....................... 105
41.19  Securities Litigations Documents ..................................................... 106
41.20  Severability ...................................................................................... 106
41.21  Governing Law ................................................................................. 106
41.22  Notices .............................................................................................. 106
41.23  Closing of Case ................................................................................ 107
41.24  Section Headings ............................................................................. 107
41.25  Inconsistencies ................................................................................. 107

Washington Mutual, Inc. and WMI Investment Corp. hereby propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below and be equally applicable to the singular and plural of the terms defined:

1.1 **AAOC**: Each of (a) Appaloosa Management L.P., Appaloosa Investment L.P. I, Palomino Fund Ltd., Thoroughbred Fund, L.P., and Thoroughbred Master Ltd., (b) Aurelius Capital Management, LP, Aurelius Capital Partners, LP, Aurelius Convergence Master, Ltd., ACP Master, Ltd., Aurelius Capital Master, Ltd. and Aurelius Investment, LLC, (c) Owl Creek Asset Management, L.P., Owl Creek I, L.P., Owl Creek II, L.P., Owl Creek Overseas Fund, Ltd., Owl Creek Socially Responsible Investment Fund, Ltd., Owl Creek Asia I, L.P., Owl Creek Asia II, L.P., and Owl Creek Asia Master Fund, Ltd. and (d) Centerbridge Partners, L.P., Centerbridge Special Credit Partners, L.P., Centerbridge Credit Partners, L.P., and Centerbridge Credit Partners Master, L.P. and any other Affiliates of the funds listed in (a) through (d) above which own or, during the Chapter 11 Cases, owned securities issued by and/or have direct or indirect Claims against WMI.

1.2 **AAOC Releasees**: AAOC, any Entities or funds managed by AAOC and each of their respective officers, directors, partners, general partners, limited partners, equity investors, investment managers, management companies, members, employees and, solely in their capacity as counsel to AAOC with respect to the Debtors' Chapter 11 Cases, attorneys.

1.3 **Accepting Non-Filing WMB Senior Note Holder**: A Non-Filing WMB Senior Note Holder that checked the box on the Non-Filing WMB Senior Note Holder Election Form labeled "Grant Plan Section 43.6 Release", tendered in connection with the solicitation of acceptances and releases with respect to the Sixth Amended Plan.

1.4 **Acquisition JPMC Entities**: JPMC in its capacity as the "Acquiring Bank" pursuant to the Purchase and Assumption Agreement and each former subsidiary of WMB acquired pursuant to the Purchase and Assumption Agreement (including each entity into which such former subsidiary may have been merged, consolidated or liquidated), together with JPMC in its capacity as the "Purchaser" pursuant to the Purchase and Assumption Agreement.

1.5 **Actions**: The "Actions," as defined in the Global Settlement Agreement.

1.6 **Admin Account**: That certain account identified as Account No. xxxxxx1206, identified by WMI as having a balance as of the Petition Date in the approximate amount of Fifty Two Million Six Hundred Thousand Dollars ($52,600,000.00).

1.7 **Administrative Claim Bar Date**: Unless otherwise ordered by the Bankruptcy Court, the date established by the Bankruptcy Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than ninety (90) days after the Effective Date, after which date, any proof of

Administrative Expense Claim not filed shall be deemed forever barred, and the Debtors, the Reorganized Debtors and the Liquidating Trust shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Bankruptcy Court or (ii) with the consent of the Debtors and in the ordinary course of the Debtors' operations.

1.8     **Administrative Expense Claim:**  A Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, including, without limitation, (i) any actual and necessary cost and expense of preserving the estates of the Debtors, (ii) any actual and necessary cost and expense of operating the businesses of the Debtors in Possession, (iii) any post-Petition Date loan or advance extended by one Debtor to the other Debtor, (iv) any cost and expense of the Debtors in Possession for the management, maintenance, preservation, sale, or other disposition of any assets, (v) the administration and implementation of the Plan, (vi) the administration, prosecution, or defense of Claims by or against the Debtors and for distributions under the Plan, (vii) any guarantee or indemnification obligation extended by the Debtors in Possession, (viii) any Claim for compensation and reimbursement of expenses arising during the period from and after the Petition Date and prior to the Effective Date and awarded by the Bankruptcy Court in accordance with section 328, 330, 331, or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, (ix) any fee or charge assessed against the Debtors' estates pursuant to section 1930, chapter 123, title 28, United States Code, and (x) any tort or extracontractual claims against the Debtors in Possession.

1.9     **Affiliate:**  With respect to any specified Entity, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified entity.

1.10    **Affiliated Banks:**  WMB and FSB.

1.11    **Allowed Administrative Expense Claim:**  An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

1.12    **Allowed CCB-1 Guarantees Claim:**  A CCB-1 Guarantees Claim, to the extent set forth on Exhibit "A" hereto.

1.13    **Allowed CCB-2 Guarantees Claim:**  A CCB-2 Guarantees Claim, to the extent set forth on Exhibit "B" hereto.

1.14    **Allowed Claim:**  A Claim against any of the Debtors or the Debtors' estates, (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing such proof of claim against any such Debtor or such Debtor's estate, or (ii) if no proof of Claim has been timely filed, which has been or hereafter is listed by such Debtor in its Schedules as liquidated in amount and not disputed or contingent, in each such case in clauses (i) and (ii) above, a Claim as to which no objection to the allowance thereof, or action to

equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. For purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any claim that the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law. Without in any way limiting the foregoing, "Allowed Claim" shall include any Claim arising from the recovery of property in accordance with sections 550 and 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of the Plan, or any Claim to the extent that it has been allowed pursuant to a Final Order; provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) for any purpose under the Plan, "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code. Notwithstanding the foregoing, a WMB Senior Notes Claim may become an Allowed WMB Senior Notes Claim (in an amount equal to the principal balance thereof plus all interest accrued thereunder as of the Petition Date) in the manner provided for in Section 21.1(a) hereof.

1.15   **Allowed Convenience Claim**: A Convenience Claim, to the extent it is or has become an Allowed Claim.

1.16   **Allowed General Unsecured Claim:**  A General Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.17   **Allowed JPMC Assumed Liability Claim:**  A JPMC Assumed Liability Claim, to the extent it is or has become an Allowed Claim.

1.18   **Allowed Late-Filed Claim:**  A Late-Filed Claim to the extent it is or has become an Allowed Claim.

1.19   **Allowed PIERS Claim:**  A PIERS Claim, to the extent set forth on Exhibit "D" hereto.

1.20   **Allowed Priority Non-Tax Claim:**  A Priority Non-Tax Claim, to the extent it is or has become an Allowed Claim.

1.21   **Allowed Priority Tax Claim:**  A Priority Tax Claim, to the extent it is or has become an Allowed Claim.

1.22   **Allowed Senior Notes Claim:**  A Senior Notes Claim, to the extent set forth on Exhibit "E" hereto.

1.23   **Allowed Senior Subordinated Notes Claim:**  A Senior Subordinated Notes Claim, to the extent set forth on Exhibit "F" hereto.

1.24    **Allowed Subordinated Claim:** A Subordinated Claim, to the extent it is or has become an Allowed Claim.

1.25    **Allowed Trustee Claim:** A Trustee Claim, to the extent it is or has become an Allowed Claim.

1.26    **Allowed Unsecured Claim:** An Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.27    **Allowed WMB Senior Notes Claim:** A WMB Senior Notes Claim, to the extent it is or has become an Allowed Claim.

1.28    **Allowed WMB Vendor Claim:** A WMB Vendor Claim, to the extent it is or has become an Allowed Claim.

1.29    **Allowed WMI Vendor Claim:** A WMI Vendor Claim, to the extent it is or has become an Allowed Claim.

1.30    **American Savings Escrow Funds:** All funds held in escrow in connection with the American Savings Litigation, pursuant to that certain Escrow Agreement, dated December 20, 1996, by and among WMI, Keystone Holdings Partners, L.P., Escrow Partners, L.P. and The Bank of New York.

1.31    **American Savings Litigation:** That certain litigation styled American Savings Bank, F.A. v. United States, No. 92-872C, currently pending in the United States Court of Federal Claims.

1.32    **Anchor Litigation:** That certain litigation styled Anchor Savings Bank, FSB v. United States, No. 95-39C, currently pending in the United States Court of Federal Claims, and on appeal in the United States Court of Appeals for the Federal Circuit, as Anchor Savings Bank, FSB v. United States, No. 2008-5175, -5182.

1.33    **Assets:** With respect to a Debtor, (i) all "property" of such Debtor's estate, as defined in section 541 of the Bankruptcy Code, including, without limitation, such property as is reflected on such Debtor's books and records as of the date of the Disclosure Statement Order (including, without limitation, received and anticipated "Net Tax Refunds," as defined in the Global Settlement Agreement) and certain Plan Contribution Assets transferred to such Debtor pursuant to the Global Settlement Agreement, unless modified pursuant to the Plan or a Final Order, and except as transferred pursuant to the Global Settlement Agreement and (ii) all claims and causes of action, and any subsequent proceeds thereof, that have been or may be commenced by such Debtor in Possession or other authorized representative for the benefit of such Debtor's estate, unless modified pursuant to the Plan or a Final Order, including, without limitation, any claim or cause of action pursuant to chapter 5 of the Bankruptcy Code.

1.34    **Avoidance Actions:** Any and all avoidance, recovery, subordination or other actions or remedies against Entities that may be brought by or on behalf of a Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

1.35    **Ballot:** The form distributed to each holder of an impaired Claim or Equity Interest entitled to vote on the plan (as set forth herein), on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.36    **Ballot Date:** The date(s) established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots and the election of alternative treatments pursuant to the terms and provisions of the Plan; provided, however, that with respect to holders of an Equity Interest, such holders may execute and deliver a release in accordance with the provisions of Section 41.6 of the Plan up to and including the Equity Release Election Date.

1.37    **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended, to the extent codified in title 11, United States Code, as applicable to the Chapter 11 Cases.

1.38    **Bankruptcy Court:** The United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

1.39    **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases.

1.40    **Bankruptcy Stay Motions:** The motions by the FDIC Receiver and JPMC to stay or dismiss the Turnover Action and the JPMC Action in favor of proceedings before the United States District Court for the District of Columbia in the WMI Action.

1.41    **BB Liquidating Trust Interests:** Those certain Liquidating Trust Interests that are to be distributed to holders of Allowed WMB Senior Notes Claims and Accepting Non-Filing WMB Senior Note Holders, which interests, in the aggregate, shall represent an undivided interest in WMI's share of the Homeownership Carryback Refund Amount, as defined and set forth in Section 2.4 of the Global Settlement Agreement, in an amount equal to Three Hundred Thirty-Five Million Dollars ($335,000,000.00).

1.42    **Benefit Plan:** Any employee welfare benefit plan, employee pension benefit plan, or a plan that is both an employee welfare benefit plan and an employee pension benefit plan within the meaning of Section 3(3) of ERISA, including, without limitation, those benefit plans listed on Exhibit "G" hereto, or any such similar employee benefit plan or arrangement that any of the Debtors maintained prior to the Petition Date; provided, however, that the term "Benefit Plan" does not include the WaMu Savings Plan (#002) and does not include any plan policy, or arrangement transferred to JPMC pursuant to the Global Settlement Agreement.

1.43    **BKK Group:** Collectively, the BKK Joint Defense Group, as defined in the BKK Settlement Agreement, Atlantic Richfield Corporation, THUMS Long Beach Company, Shell Exploration & Production Company, Shell Oil Company and Bayer CropScience Inc.

1.44    **BKK Liabilities:** Any and all liabilities and obligations of the WMI Entities (other than WMI Rainier LLC) for remediation or clean-up costs and expenses (and

excluding tort and tort related liabilities, if any) in excess of applicable and available insurance arising from or relating to (i) the BKK Litigation, (ii) the Amended Consent Decree, dated March 6, 2006, entered in connection therewith, and (iii) that certain Amended and Restated Joint Defense, Privilege and Confidentiality Agreement, dated as of February 28, 2005, by and among the BKK Joint Defense Group, as defined therein.

1.45    **BKK Litigation:** That certain litigation styled California Department of Toxic Substances Control, et al. v. American Honda Motor Co., Inc., et al., No. CV05-7746 CAS (JWJx), currently pending in the United States District Court for the Central District of California.

1.46    **BKK Proofs of Claim:** The BKK Liabilities-related proofs of claim filed against the Debtors and the Debtors' chapter 11 estates numbered 2138, 2213, 2233, 2405, 2467, 2693 and 3148.

1.47    **BKK Settlement Agreement:** That certain Settlement Agreement, dated as of December 3, 2010, by and among the Debtors, JPMC, the CDTSC and the BKK Group, setting forth the compromise and settlement between the parties.

1.48    **Bond Claim:** Any Claim against the Debtors set forth on Schedule 2.23 to the Global Settlement Agreement filed by any of the Bonding Companies, to the extent such Claim constitutes an Allowed JPMC Assumed Liability Claim.

1.49    **Bond Indemnity:** That certain General Agreement of Indemnity, as amended, dated as of June 14, 1999, executed and delivered by WMI, pursuant to which, among other things, the Bonds were to be issued and WMI agreed to pay all losses and expenses of the Bonding Companies associated therewith.

1.50    **Bonding Companies:** Safeco Insurance Company, its successor in interest, and such other insurance or bonding companies that issued Bonds pursuant to the Bond Indemnity.

1.51    **Bonds:** The bonds issued by the Bonding Companies on behalf of one or more of the Affiliated Banks or their Affiliates, each as identified on Exhibit "D" to the Global Settlement Agreement, together with the numbers of the respective proofs of Claim that have been filed with the Bankruptcy Court in connection therewith.

1.52    **Business Day:** A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York are required or authorized to close by law or executive order.

1.53    **Cash:** Lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and other similar items.

1.54    **Cash Equivalents:** Equivalents of Cash in the form of readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or

better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than One Hundred Million Dollars ($100,000,000.00), having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

1.55    **Causes of Action:** All Claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) of any of the Debtors and/or their estates that are pending or may be asserted against any Entity on or after the date hereof, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

1.56    **CCB-1 Common Securities:** The common securities set forth on Exhibit "A" hereto.

1.57    **CCB-1 Guarantees:** The guarantees issued and delivered by WMI in accordance with the terms and conditions of the CCB-1 Guarantee Agreements, and set forth on Exhibit "A" hereto.

1.58    **CCB-1 Guarantees Claim:** An Unsecured Claim arising from or relating to the CCB-1 Guarantees.

1.59    **CCB-1 Guarantee Agreements:** Those certain agreements titled "Guarantee of Washington Mutual, Inc.," dated as of November 1, 2007, pursuant to which WMI guaranteed payment of the obligations and liabilities of WMB under certain agreements and related securities issued by the CCB Capital Trust IV, CCB Capital Trust V, CCB Capital Trust VII, and CCB Capital Trust VIII.

1.60    **CCB-1 Preferred Securities:** The preferred securities set forth on Exhibit "A" hereto.

1.61    **CCB-1 Trustee:** Wilmington Trust Company, as Trustee, or its duly appointed successor, solely in its capacity as trustee with regard to each of the CCB-1 Guarantee Agreements.

1.62    **CCB-2 Common Securities:** The common securities set forth on Exhibit "B" hereto.

1.63     **CCB-2 Guarantees:** The guarantees issued and delivered by WMI in accordance with the terms and conditions of the CCB-2 Guarantee Agreements, and set forth on Exhibit "B" hereto.

1.64     **CCB-2 Guarantees Claim:** An Unsecured Claim arising from or relating to the CCB-2 Guarantees.

1.65     **CCB-2 Guarantee Agreements:** Those certain agreements titled "Guarantee of Washington Mutual, Inc.," dated as of November 1, 2007, pursuant to which WMI guaranteed payment of the obligations and liabilities of WMB under certain agreements and related securities issued by the HFC Capital Trust I, CCB Capital Trust VI, and CCB Capital Trust IX.

1.66     **CCB-2 Preferred Securities:** The preferred securities set forth on Exhibit "B" hereto.

1.67     **CCB-2 Trustees:** Wilmington Trust Company, as Trustee, and Deutsche Bank Trust Company Americas, as Trustee, or their duly appointed successors, solely in their capacities as trustees with regard to each of the CCB-2 Guarantee Agreements.

1.68     **CCB Releasees:** Collectively, and in the event that CCB-1 Guarantees Claims, CCB-2 Guarantees Claims and Postpetition Interest Claims with respect to each of the foregoing Claims are not paid in full in accordance with the provisions of the Plan, each holder of record or beneficial owner of an Allowed CCB-1 Guarantees Claim or an Allowed CCB-2 Guarantees Claim, and any Affiliate of such Entities which, during the Chapter 11 Cases, owned, invested or acquired a CCB-1 Guarantees Claim or a CCB-2 Guarantees Claim, and each of their respective officers, directors, partners, equity investors, investment managers, management companies, members, employees and, solely to the extent as counsel to a holder of record or beneficial owner of an Allowed CCB-1 Guarantees Claim or an Allowed CCB-2 Guarantees Claim with respect to the Debtors' Chapter 11 Cases, attorneys.

1.69     **CDTSC:** California Department of Toxic Substances Control.

1.70     **Chapter 11 Cases:** The jointly administered cases commenced by the Debtors styled as In re Washington Mutual, Inc., et al. and being jointly administered in the Bankruptcy Court, Case No. 08-12229 (MFW), under chapter 11 of the Bankruptcy Code.

1.71     **Claim:** Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

1.72     **Class:** A category of holders of Claims or Equity Interests set forth in Article IV of the Plan.

1.73 **Common Equity Interest**: Collectively, (a) an Equity Interest represented by the 3,000,000,000 authorized shares of common stock of WMI, including, without limitation, one of the 1,704,958,913 shares of common stock of WMI issued and outstanding as of the Petition Date, or any interest or right to convert into such an Equity Interest or acquire any Equity Interest of WMI that was in existence immediately prior to or on the Petition Date or (b) a Claim, other than with respect to the Dime Warrants, which pursuant to a Final Order, has been subordinated to the level of Equity Interest in accordance with section 510 of the Bankruptcy Code or otherwise and whose shall count, for purposes of calculating Pro Rata Share of distributions, shall be determined by dividing the amount of an Allowed Claim by the per share price of WMI common stock as of either (a) the Petition Date, (b) the close of business on the day immediately preceding the Petition Date, (c) December 12, 2011, or (3) such other date as determined by the Bankruptcy Court.

1.74 **Common Stock Allotment**: Ten Million (10,000,000) shares of Reorganized Common Stock, representing five percent (5%) of the issued and outstanding Reorganized Common Stock as of the Effective Date.

1.75 **Confirmation Date**: The date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.76 **Confirmation Hearing**: The hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.77 **Confirmation Order**: The order of the Bankruptcy Court confirming the Plan in accordance with section 1129 of the Bankruptcy Code, approving the compromise and settlement set forth in the Global Settlement Agreement and directing the consummation of the transactions contemplated therein, which order shall be in form and substance reasonably satisfactory to the Debtors, JPMC, the Creditors' Committee, the Equity Committee, the FDIC Receiver, FDIC Corporate and AAOC; provided, however, that with respect to provisions of the Confirmation Order that affect or otherwise relate to (a) the economic substance of the Plan, (b) the withdrawal and vacatur of the September Order, to the extent relating to the Standing Motion, and certain portions of the September Opinion, as set forth in Section 36.1(a)(11) of the Plan, and (c) the releases provided in Sections 41.5 and 41.6 the Plan, such order shall be in form and substance satisfactory to the foregoing parties and the WMI Noteholder Group as represented by White & Case LLP.

1.78 **Convenience Claim**: A Claim equal to or less than Fifty Thousand Dollars ($50,000.00) or greater than Fifty Thousand Dollars ($50,000.00) but, with respect to which, the holder thereof voluntarily reduces such Claim to Fifty Thousand Dollars ($50,000.00) on the Ballot; provided, however, that, for purposes of the Plan and the distributions to be made hereunder, "Convenience Claim" shall not include (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Priority Non-Tax Claim, (iv) a Senior Notes Claim, (v) a Senior Subordinated Notes Claim, (vi) any JPMC Assumed Liability Claim, (vii) a WMB Vendor Claim, (viii) a WMI Vendor Claim, (ix) a CCB-1 Guarantees Claim, (x) a CCB-2 Guarantees Claim, (xi) a PIERS Claim, (xii) a WMB Notes Claim, (xiii) a Subordinated Claim, (xiv) a

Trustee Claim, (xv) a Late-Filed Claim, and (xvi) any other Claim that is a component of a larger Claim, portions of which may be held by one or more holders of Allowed Claims.

1.79    **Credit Facility**: The credit facility to be entered into by Reorganized WMI on the Effective Date providing for the funding of, among other things, working capital, permitted acquisitions and permitted originations by Reorganized WMI, as referenced in Section 32.11 of the Plan and fully set forth in the Credit Agreement annexed hereto as Exhibit "C".

1.80    **Creditor**: Any Entity holding a Claim against one or more of the Debtors or the Debtors' estates or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtors, including, without limitation, a Claim against either one of the Debtors or Debtors in Possession of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.81    **Creditor Cash**: On the Effective Date (or as soon as practicable thereafter when the Disbursing Agent is prepared to make its initial distribution pursuant to Section 31.1 of the Plan), the excess, if any, of (i) all Cash and Cash Equivalents to be distributed by the Disbursing Agent in accordance with the Plan over (ii) such amounts of Cash (a) reasonably determined by the Disbursing Agent as necessary to satisfy, in accordance with the terms and conditions of the Plan, Allowed Administrative Expense Claims, Allowed Priority Tax Claims (to the extent necessary), Allowed Priority Non-Tax Claims, Allowed Convenience Claims, Trustee Claims, the fees and expenses owed to certain Creditors' professionals pursuant to Section 41.18 herein, and fees and expenses of the Disbursing Agent as of the Effective Date, (b) necessary to fund the Liquidating Trust in accordance with Article XXVII of the Plan, as reasonably determined by the Debtors, (c) necessary to make pro rata distributions to holders of Disputed Claims as if such Disputed Claims were, at such time, Allowed Claims, (d) necessary to make pro rata distributions to holders of Administrative Expense Claims that have not yet been filed or Allowed as of the Effective Date, and (e) such other amounts reasonably determined by the Disbursing Agent (in consultation with the Liquidating Trustee) as necessary to fund the ongoing operations of the Liquidating Trust during the period from the Effective Date up to and including such later date as the Disbursing Agent shall reasonably determine; provided, however, that "Creditor Cash" shall include Cash in the Vendor Escrow only to the extent of WMI's share of Cash remaining in such escrow after payment of Allowed WMI Vendor Claims.

1.82    **Creditors' Committee**: The official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

1.83    **Debtors**: WMI and WMI Investment.

1.84    **Debtors' Claims**: The proof of claim filed by the Debtors and each of WMI's direct and indirect non-banking subsidiaries, on December 30, 2008, with the FDIC Receiver in connection with WMB's receivership, asserting claims on behalf of the Debtors' chapter 11 estates, and as asserted in the WMI Action.

1.85    **Debtors in Possession**: The Debtors as debtors in possession pursuant to sections 1101(1), 1107(a), and 1108 of the Bankruptcy Code.

1.86    **Dime Inc.**: Dime Bancorp, Inc.

1.87    **Dime Warrant Litigation**: That certain litigation styled <u>Broadbill Investment Corp., et al.</u> v. <u>Washington Mutual, Inc.</u>, Adversary Pro. No. 10-50911 (MFW), currently pending in the Bankruptcy Court.

1.88    **Dime Warrants**: Those certain Litigation Tracking Warrants™ for shares of Dime Inc. common stock based on the value of the recovery in the Anchor Litigation, which warrants, as a result of the merger of Dime Inc. into WMI, are exchangeable for and into shares of Common Equity Interests in WMI upon certain conditions and whose share count, for purposes of calculating Pro Rata Share of distributions and the number of shares of Reorganized Common Stock to be reserved in the Disputed Equity Escrow, shall be determined by dividing the amount of the Claim by the per share price of WMI common stock as of either (a) the Petition Date, as if the Trigger Event, as defined in the Dime Warrant Litigation, had not occurred, (b) the close of business on the day immediately preceding the Petition Date, (c) December 12, 2011, as if the Trigger Event had not occurred, (d) the Petition Date, as if the Trigger Event had occurred, (e) December 12, 2011, as if the Trigger Event had occurred, or (f) such other date as determined by the Bankruptcy Court.

1.89    **Disbursing Agent**: With respect to (a) the initial distribution of (i) Cash pursuant to Article III of the Plan to holders of Allowed Administrative Expense Claims and, to the extent applicable, Allowed Priority Tax Claims as of the Effective Date, (ii) Cash to holders of Allowed Priority Non-Tax Claims as of the Effective Date, (iii) Cash to holders of Allowed Convenience Claims, Allowed WMI Claims, Allowed Trustee Claims, and the fees and expenses owed to certain Creditors' professionals pursuant to Section 41.18 hereof, in each case as of the Effective Date, (iv) Creditor Cash pursuant to Section 31.1 hereof, and (v) Runoff Notes, Liquidating Trust Interests and Reorganized Common Stock to or for the benefit of holders of Allowed Claims and Equity Interests, as applicable, the Reorganized Debtors or the Reorganized Debtors' designee and (b) with respect to all other distributions, the Liquidating Trustee or any Entity in its capacity as a disbursing agent. The Disbursing Agent also shall, at the election of JPMC, make the distribution to each Releasing REIT Trust Holder set forth in Article XXIII of the Plan from Cash or stock transferred by JPMC to the Disbursing Agent for that purpose. In their role as Disbursing Agent, the Reorganized Debtors shall hold Cash, Creditor Cash, Runoff Notes, Reorganized Common Stock and Liquidating Trust Interests as agent only, and shall not have any ownership interest in such cash, stock or interests.

1.90    **Disclosure Statement**: The disclosure statement relating to the Plan and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.91    **Disclosure Statement Order**: The Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.92    **Disputed Accounts**: The amounts and intercompany balances identified with the account numbers set forth on Exhibit "E" to the Global Settlement Agreement.

1.93    **Disputed Claim**: A Claim against the Debtors, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed by the Debtors in accordance with applicable law, and which

objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.94    **Disputed Equity Escrow:** The escrow created on the Effective Date to hold such shares of Reorganized Common Stock allocable to any Disputed Equity Interest, including, but not limited to, Dime Warrants until such time as the Dime Warrant Litigation is determined, pursuant to a Final Order, or a compromise and settlement is approved by the Bankruptcy Court.

1.95    **Disputed Equity Interest:** An Equity Interest in or Claim against the Debtors (which Claim is or has been determined by the Bankruptcy Court to be subject to subordination to the level of Common Equity Interest in accordance with section 510 of the Bankruptcy Code), including, without limitation, holders of restricted shares of Common Equity Interests, to the extent the allowance of such Equity Interest is the subject of a timely objection in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or as otherwise disputed by the Debtors in accordance with applicable law, and which objection or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.96    **Distribution Record Date:** The Effective Date.

1.97    **Effective Date:** The first (1st) Business Day on which (i) all of the conditions precedent to confirmation of the Plan specified in Section 36.1 of the Plan shall have been satisfied or waived, as provided in Section 36.2 of the Plan, and (ii) all the conditions precedent to the effectiveness of the Plan specified in Section 37.1 of the Plan shall have been satisfied or waived as provided in Section 37.2 of the Plan.

1.98    **Entity:** A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

1.99    **Equity Committee:** The official committee of equity security holders appointed in the Chapter 11 Cases.

1.100    **Equity Committee Adversary Proceeding:** The adversary proceeding commenced in the Chapter 11 Cases by the Equity Committee, styled Official Committee of Equity Security Holders v. Washington Mutual, Inc., Adversary Pro. No. 10-50731 (MFW).

1.101    **Equity Committee Action to Compel:** The action commenced by the Equity Committee on April 26, 2010 in the Thurston County Superior Court in the state of Washington seeking to compel WMI to convene and hold an annual shareholders' meeting for the nomination and election of directors in accordance with Washington state law, which action was (i) removed to the United States Bankruptcy Court for the Western District of Washington on May 13, 2010, and (ii) transferred to the Bankruptcy Court pursuant to an order, dated June 21, 2010.

1.102  **Equity Release Election Date:**  The date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission by holders of Preferred Equity Interests and Common Equity Interests of executed releases in accordance with Section 41.6 of the Plan in order to be entitled to receive distributions pursuant to the Plan.

1.103  **Equity Interest:**  The interest of any holder of one or more equity securities of WMI (including, without limitation, voting rights, if any, related to such equity securities) represented by issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in WMI, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including, without limitation, unvested restricted stock.

1.104  **Estate Claims:**  Any Claims and causes of action, regardless of whether asserted by the Debtors, the Liquidating Trust, the Creditors' Committee or the Equity Committee, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, that (a) are based upon, relate to, or arise out of or in connection with, in whole or in part any act, omission, transaction, event or other circumstance relating to the Debtors and the Chapter 11 Cases, (b) exist on or prior to the Effective Date, and (c) are or may be asserted against (i) the AAOC Releasees with respect to any conduct or, (ii) any of (1) the PIERS Claims Releasees, (2) the Senior Notes Claims Releasees, (3) the Senior Subordinated Notes Claims Releasees and (4) the CCB Releasees with respect to (A) any and all Claims for equitable disallowance and equitable subordination, (B) any and all Claims with respect to any conduct undertaken during the period from and after the Petition Date and (C) any and all Claims with respect to conduct undertaken during the period prior to the Petition Date solely in their capacity as holders of any securities issued by the Debtors or their subsidiaries, including, without limitation, any claims for insider trading or violations of securities laws; <u>provided, however,</u> that, solely with respect to clause (ii) above, under no circumstances shall Estate Claims include (y) any Claims related to trading in the securities issued by the Debtors or their subsidiaries that are based on an allegation that such trading contributed to the failure of WMB or the commencement of the Chapter 11 Cases, including, without limitation, any Claims discussed on pages 330-338 of that certain Final Report of the Examiner, dated November 1, 2010, issued by Joshua R. Hochberg, appointed as Examiner in these Chapter 11 Cases, and (z) Preserved Avoidance Actions.  For the avoidance of doubt, "Estate Claims" shall include, without limitation, (1) any claim relating to the trading of the Debtors' securities during the period from the Petition Date up to and including the Effective Date and (2) any claim for equitable subordination or equitable disallowance.

1.105  **FDIC Claim:**  The proof of Claim filed by the FDIC Receiver against the Debtors and the Debtors' estates, in an unliquidated amount, which was assigned claim number 2140.

1.106  **FDIC Corporate:**  The Federal Deposit Insurance Corporation, in its corporate capacity.

1.107  **FDIC Receiver**:  The Federal Deposit Insurance Corporation, in its capacity as receiver for WMB.

1.108  **FDIC Stay Relief Motion**:  That certain Motion of the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, for an Order Modifying the Automatic Stay, filed by the FDIC Receiver in the Chapter 11 Cases, dated November 4, 2009 [Docket No. 1834], seeking relief from the automatic stay pursuant to section 362 of the Bankruptcy Code in order to exercise rights pursuant to Section 9.5 of the Purchase and Assumption Agreement.

1.109  **Final Order**:  An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or, (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, (a) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order and (b) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

1.110  **Fixed Rate Notes**:  Those Senior Notes issued pursuant to the Senior Notes Indenture having a fixed rate of interest.

1.111  **Floating Rate Notes**:  Those Senior Notes issued pursuant to the Senior Notes Indenture having a floating rate of interest.

1.112  **FSB**:  Washington Mutual Bank fsb.

1.113  **General Unsecured Claim**:  An Unsecured Claim against the Debtors other than a Senior Notes Claim, a Senior Subordinated Notes Claim, a JPMC Assumed Liability Claim, a WMB Vendor Claim, a WMI Vendor Claim, a CCB-1 Guarantees Claim, a CCB-2 Guarantees Claim, a PIERS Claim, a WMB Notes Claim, a Convenience Claim, a Subordinated Claim, a Late-Filed Claim, or a Trustee Claim, including, without limitation, any portion of a larger claim to the extent such portion does not relate to JPMC Assumed Liabilities.

1.114  **Global Settlement Agreement**:  That certain Second Amended and Restated Settlement Agreement, dated as of February 7, 2011, by and among the Debtors, the JPMC Entities, the FDIC Receiver, FDIC Corporate, and the Creditors' Committee, as it has been and may be further amended, together with all exhibits annexed thereto, setting forth the compromise and settlement between the parties of, among other things, (i) the WMI Action, (ii) the JPMC Action, (iii) the Turnover Action, (iv) the Rule 2004 Inquiry, (v) the Debtors' Claims,

(vi) the JPMC Claims, (vii) the Bankruptcy Stay Motions and the appeals therefrom, (viii) the FDIC Claim, and (ix) the transfer of the Trust Preferred Securities and the consequent issuance of the REIT Series, and the sale, free and clear of all Liens, Claims and encumbrances, of the Plan Contribution Assets, a copy of which is annexed hereto as Exhibit "I".

1.115  **Guarantee Agreements:**  The CCB-1 Guarantee Agreements, CCB-2 Guarantee Agreements, and PIERS Guarantee Agreement.

1.116  **Indentures:**  The Senior Notes Indenture, the Senior Subordinated Notes Indenture, and the Junior Subordinated Notes Indenture.

1.117  **Information Demands:**  Any and all subpoenas and other demands for documents, testimony and other information issued in connection with any current or future pending or threatened legal proceedings (whether judicial, regulatory, administrative, arbitral, investigative, criminal, civil, or otherwise).

1.118  **Intercompany Claim:**  A Claim against any of the WMI Entities held by another of the WMI Entities; provided, however, that "Intercompany Claim" does not include any PIERS Claim.

1.119  **Intercompany Notes:**  Those certain intercompany notes set forth on Exhibit "V" to the Global Settlement Agreement.

1.120  **IRC:**  The Internal Revenue Code of 1986, as amended from time to time.

1.121  **Intercreditor Interest Claim:**  A Claim for interest accrued in respect of an outstanding obligation or liability during the period from the Petition Date up to and including the date of final payment in full of such Claim, arising from contractual subordination rights and payable in accordance with the Subordination Model attached hereto as Exhibit "H", as required by section 510(a) of the Bankruptcy Code, calculated at the contract rate set forth in any agreement related to such Claim, compounded as provided in such agreement, provided that interest shall continue to accrue only on the then outstanding and unpaid obligation or liability that is the subject of such Claim.

1.122  **IRS:**  The Internal Revenue Service, an agency of the United States Department of Treasury.

1.123  **January Opinion:**  That certain Opinion, dated January 7, 2011, issued by the Bankruptcy Court with respect to, among other things, the confirmability of the Sixth Amended Plan and the solicitation of acceptances and releases in connection with the Sixth Amended Plan [Docket No. 6528].

1.124  **JPMC:**  JPMorgan Chase Bank, N.A.

1.125  **JPMC Action:**  The adversary proceeding commenced in the Chapter 11 Cases by JPMC, styled JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc., et al., Adversary Pro. No. 09-50551 (MFW).

1.126  **JPMC Allowed Unsecured Claim:** Collectively, the JPMC Claims, which shall be deemed an Allowed Claim against WMI and shall be classified with and treated in the same manner as other Allowed General Unsecured Claims pursuant to the Plan; provided, however, that, in the sole and absolute discretion of the Debtors, for purposes of the Global Settlement Agreement, each Allowed Claim constituting the JPMC Allowed Unsecured Claim may be counted as a separate claim for purposes of voting to accept or reject the Plan.

1.127  **JPMC Assumed Liabilities:** Collectively, and except as otherwise set forth in the Global Settlement Agreement, the obligations, undertakings and liabilities expressly assumed by JPMC and the Acquisition JPMC Entities in the Global Settlement Agreement, as follows:  (a) to the extent payment or performance of such liability or obligation arising from or relating to the period from and after the effective date of the Global Settlement Agreement, all obligations, undertakings and liabilities relating to such payment or performance, and (b) to the extent payment or performance of such liability or obligation was due during the period prior to the effective date of the Global Settlement Agreement, all obligations, undertakings and liabilities relating to such payment or performance to the extent of, and in the amounts of, the contractual obligations, undertakings and liabilities arising from or relating to such obligations, undertakings and liabilities; provided, however, that, for purposes of clause (b) above, or to the extent that the delay in payment or performance thereof was due to the actions or inactions, as the case may be, of the WMI Entities, "JPMC Assumed Liabilities" shall not include (i) any damages or compensation for any default, failure to perform or delay in the performance or payment of any obligations, undertakings, or liabilities in connection with such assets or agreements, whether or not provided for in any agreement, document, applicable provision of law or otherwise, (ii) any damages, losses, liabilities, claims or causes of action that are based in tort or on any statute, regulation, rule or principle of applicable or common law or promulgated by governmental or regulatory authority or agency, or that otherwise are extra contractual, (iii) any special, exemplary, consequential or punitive damages, or (iv) Taxes other than Taxes that JPMC has specifically agreed to pay pursuant to Section 2.4 of the Global Settlement Agreement.

1.128  **JPMC Assumed Liability Claim:** A Claim arising from or relating to a JPMC Assumed Liability.

1.129  **JPMC Claims:** The proofs of Claim filed by JPMC against the Debtors and the Debtors' estates, as listed in Exhibit "A" to the Global Settlement Agreement and as resolved in accordance with Section 2.22 of the Global Settlement Agreement.

1.130  **JPMC Entities:** JPMC, collectively with those of its Affiliates that have filed proofs of Claims against the Debtors or that are Acquisition JPMC Entities.

1.131  **JPMC Policies:** All BOLI/COLI policies and the proceeds thereof set forth on Exhibit "N" to the Global Settlement Agreement, and all CCBI split dollar policies set forth on Exhibit "O" to the Global Settlement Agreement.

1.132  **JPMC Rabbi Trust/Policy Claim:** Any Claim against the Debtors and their chapter 11 estates set forth on Schedule 2.9(a) to the Global Settlement Agreement filed by a beneficiary of the JPMC Rabbi Trusts or the JPMC Policies, to the extent such Claim

constitutes an Allowed JPMC Assumed Liability Claim and to the extent payable, in whole or in part, by the Debtors or the Debtors' chapter 11 estates.

1.133  **JPMC Rabbi Trusts:** The "rabbi trusts" set forth on Exhibit "M" to the Global Settlement Agreement, including all assets therein.

1.134  **Junior Subordinated Notes Indenture:** That certain Indenture, dated as of April 30, 2001, as supplemented by that certain First Supplemental Indenture, dated as of April 30, 2001, between WMI and The Bank of New York Mellon Trust Company, N.A., as Trustee.

1.135  **Lakeview Plan:** That certain Retirement Income Plan for the Salaried Employees of Lakeview Savings Bank, which plan is intended to satisfy the tax requirements of Section 401 of the IRC and is sponsored by WMI.

1.136  **Late-Filed Claim:** A Claim against any of the Debtors or the Debtors' estates, (i) proof of which was filed subsequent to the date designated by the Bankruptcy Court as the last date for filing such proof of claim against any such Debtor or such Debtors' estate, but prior to the commencement of the Confirmation Hearing, and which is not merely amending or superseding a Claim that was filed prior to such date, and (ii) which has not been listed by such Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.137  **Lien:** Any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.138  **Liquidating Trust:** The Entity to be created on or after the Confirmation Date in accordance with the provisions of Article XXVII hereof and the Liquidating Trust Agreement, for the benefit of (i) holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, Allowed WMB Senior Notes Claims, Allowed Late-Filed Claims, and Allowed Subordinated Claims, (ii) Accepting Non-Filing WMB Senior Note Holders, and (iii) in certain circumstances, holders of Preferred Equity Interests, Dime Warrants and Common Equity Interests, in accordance with the terms and provisions of the Plan.

1.139  **Liquidating Trust Agreement:** The Liquidating Trust Agreement, substantially in the form contained in the Plan Supplement, pursuant to which the Liquidating Trustee shall manage and administer the Liquidating Trust Assets and distribute the proceeds thereof, if any.

1.140  **Liquidating Trust Assets:** From and after the Effective Date, all Assets of the Debtors (including, without limitation, certain Plan Contribution Assets and such Runoff Notes which are either (a) not distributed on the Effective Date or (b) placed into the Liquidating Trust Claims Reserve) except (i) Cash to be distributed by the Reorganized Debtors as Disbursing Agent to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims (to the extent applicable), Allowed Priority Non-Tax Claims, Allowed Convenience Claims, Allowed WMI Vendor Claims, Allowed Trustee Claims, and the fees and expenses owed to certain Creditors' professionals pursuant to Section 41.18 herein, in each case as of the

Effective Date, (ii) Cash necessary to reimburse the Reorganized Debtors for fees and expenses incurred in connection with initial distributions made by the Reorganized Debtors as Disbursing Agent, (iii) the economic interest retained by the Debtors in any Litigation Proceeds pursuant to the respective elections for Reorganized Common Stock, and (iv) Creditor Cash on the Effective Date and the equity interests in each of WMI Investment (all the assets of which, for the avoidance of doubt, shall be contributed to the Liquidating Trust, including any Intercompany Claims), WMMRC and WMB.

1.141    **Liquidating Trust Beneficiaries:**  The (i) holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, Allowed Late-Filed Claims, and Allowed WMB Senior Notes Claims, (ii) Accepting Non-Filing WMB Senior Note Holders, and (iii) in certain circumstances, holders of Allowed Subordinated Claims, Preferred Equity Interests, Dime Warrants and Common Equity Interests, to the extent such holders have received Liquidating Trust Interests under the Plan (and any transferee thereof, and any subsequent transferee of any transferor of Liquidating Trust Interests in accordance with the provisions of Section 27.8 of the Plan).

1.142    **Liquidating Trust Claims Reserve:**  Any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, even if held in commingled accounts.

1.143    **Liquidating Trustee:**  William C. Kosturos, as "Managing Trustee," CSC Trust Company of Delaware, as "Resident Trustee," and such additional trustee(s) as may be appointed by the Trust Advisory Board in accordance with applicable law.

1.144    **Liquidating Trust Interests:**  The beneficial interests in the Liquidating Trust allocable to certain holders of Allowed Claims and Equity Interests (and any transferee thereof, and any subsequent transferee of any transferor of Liquidating Trust Interests) in accordance with the terms and conditions of Article XXVII of the Plan, including, without limitation, the BB Liquidating Trust Interests; provided, however, that (i) the BB Liquidating Trust Interests shall only be distributed to holders of Allowed WMB Senior Notes Claims and Accepting Non Filing WMB Senior Note Holders and (ii) for purposes of distributing Liquidating Trust Interests, "Pro Rata Share" shall not include the BB Liquidating Trust Interests.

1.145    **Litigation Proceeds:**  Recoveries, net of related legal fees and other expenses, on account of Causes of Action against third parties, including, without limitation, and subject to the release and exculpation provisions herein, professionals and other advisors engaged by the Debtors on or prior to the Petition Date, officers, directors and employees and relating to actions taken or inactions, as the case may be, during the period prior to the Petition Date, but, expressly excluding recoveries on account of any Avoidance Actions.

1.146    **Litigation Proceeds Interest:**  The interest of a holder of a Claim or Equity Interest in the Litigation Proceeds by virtue of such holder's right to receive Liquidating Trust Interests pursuant to the Plan.

1.147 **Local Bankruptcy Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

1.148 **Modified Plan:** The Modified Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated February 7, 2011, as amended.

1.149 **Non-Filing WMB Senior Note Holder:** A holder of a WMB Senior Note who did not timely file a proof of Claim against the Debtors.

1.150 **Non-Filing WMB Senior Note Holders Election Form:** The form distributed to each Non-Filing WMB Senior Note Holder in connection with the solicitation of acceptances with respect to the Sixth Amended Plan on which each such holder indicated, among other things, whether or not such holder elects to grant certain releases (as described therein and in the Plan) in order to share in their Pro Rata Share of BB Liquidating Trust Interests, as set forth in Section 21.1(b) of the Plan.

1.151 **Original Disclosure Statement Order:** The Final Order of the Bankruptcy Court, dated October 21, 2010, (a) approving the adequacy of the information contained in the disclosure statement associated with the Sixth Amended Plan and (b) establishing, among other things, the solicitation procedures with respect to the Sixth Amended Plan, including, without limitation, procedures for holders of REIT Series to elect to receive distributions pursuant to the Sixth Amended Plan.

1.152 **Other Benefit Plan Claim:** Any Claim against the Debtors set forth on Schedule 2.9(c) to the Global Settlement Agreement filed by a beneficiary of a benefit plan listed on Exhibit "P" to the Global Settlement Agreement, to the extent such Claim constitutes an Allowed JPMC Assumed Liability Claim.

1.153 **Other Subordinated Claim:** A Claim determined pursuant to a Final Order to be subordinated in accordance with section 510(b), to the extent that such Claim related to the purchase or sale of a debt security (rather than an equity security), or 510(c) of the Bankruptcy Code; provided, however, that "Other Subordinated Claim" shall not include Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed JPMC Assumed Liability Claims, Allowed WMB Vendor Claims, Allowed WMI Vendor Claims, Allowed Convenience Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Trustee Claims; and, provided, further, that, any Claim related to the purchase or sale of an equity security that is subordinated in accordance with section 510(b) of the Bankruptcy Code shall be classified with and receive the treatment provided for the Preferred Equity Interests or Common Equity Interests, as appropriate.

1.154 **Penalty Claim:** A Claim for a fine, penalty, forfeiture, or for multiple, exemplary, or punitive damages, or otherwise not predicated upon compensatory damages, that is subject to subordination in accordance with section 726(a)(4) of the Bankruptcy Code or otherwise, as determined pursuant to a Final Order.

1.155 **Pension Plans:** The WaMu Pension Plan and the Lakeview Plan.

1.156  **Person:** An individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government, or agency or political subdivision thereof, or any other form of legal entity.

1.157  **Petition Date:** September 26, 2008, the date on which each of the respective Debtors filed its voluntary petition for relief commencing the Chapter 11 Cases.

1.158  **PIERS Claim:** An Unsecured Claim arising from or related to the PIERS Trust Agreement, the PIERS Guarantee Agreement and the Junior Subordinated Notes Indenture, on account of the PIERS Common Securities or the PIERS Preferred Securities.

1.159  **PIERS Claims Releasees:** Each holder of record or beneficial owner of an Allowed PIERS Claim, and any Affiliate of such Entities which, during the Chapter 11 Cases, owned, invested or acquired PIERS Claims, and each of their respective officers, directors, partners, equity investors, investment managers, management companies, members, employees and, solely to the extent as counsel to a holder of record or beneficial owner of an Allowed PIERS Claim with respect to the Debtors' Chapter 11 Cases, attorneys.

1.160  **PIERS Common Securities:** The common securities set forth on Exhibit "D" hereto.

1.161  **PIERS Guarantee Agreement:** That certain Guarantee Agreement, dated as of April 30, 2001, as amended by that certain Amendment No. 1 to the Guarantee Agreement, dated as of May 16, 2001, between WMI, as Guarantor, and The Bank of New York, as Guarantee Trustee.

1.162  **PIERS Preferred Securities:** The preferred securities set forth on Exhibit "D" hereto.

1.163  **PIERS Trust Agreement:** That certain Amended and Restated Declaration of Trust, Washington Mutual Capital Trust 2001, dated as of April 30, 2001.

1.164  **PIERS Trustee:** Wells Fargo Bank, National Association, solely in its capacity as successor in interest to The Bank of New York Mellon Trust Company, N.A., solely in its capacity as successor in interest to The Bank of New York, or its duly appointed successor, as Trustee and as Guarantee Trustee, solely in its capacity as trustee with regard to the Junior Subordinated Notes Indenture and the PIERS Guarantee Agreement.

1.165  **Plan:** This Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.166  **Plan Contribution Assets:** All right, title and interest of the WMI Entities, the JPMC Entities, and the FDIC Receiver and FDIC Corporate in and to the assets set forth on Exhibit "G" to the Global Settlement Agreement, which shall be sold, pursuant to the Plan and as required by the Global Settlement Agreement, free and clear of all Liens, Claims and encumbrances.

1.167  **Plan Supplement:** A separate volume, to be filed with the clerk of the Bankruptcy Court, including, among other documents, forms of (i) the Liquidating Trust Agreement, (ii) the Reorganized Debtors By-laws, if applicable, (iii) (A) the Reorganized Debtors' Amended and Restated Articles of Incorporation and (B) the Reorganized Debtors' Certificates of Incorporation, if applicable, (iv) a schedule of executory contracts and unexpired leases to be assumed or assumed and assigned pursuant to Section 34.1 of the Plan, (v) a registration rights agreement (if any) with respect to the Reorganized Common Stock, (vi) the documents governing the Runoff Notes and (vii) the documents associated with the Credit Facility (other than the Credit Agreement annexed hereto as Exhibit "C"), which, in each case, shall be in form and substance reasonably satisfactory to the Debtors, the Creditors' Committee, the Equity Committee and AAOC; provided, however, that, with respect to documents associated with the Credit Facility, such documents shall be in form and substance satisfactory to all such parties. The Plan Supplement (containing drafts or final versions of the foregoing documents) shall be filed with the clerk of the Bankruptcy Court as soon as practicable (but in no event later than fifteen (15) days) prior to the Ballot Date, or on such other date as the Bankruptcy Court establishes. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full.

1.168  **Plan Support Agreement:** That certain Plan Support Agreement, dated as of October 6, 2010, by and among the Debtors and the Settlement WMB Senior Note Holders.

1.169  **Postpetition Interest Claim:** A Claim against any of the Debtors or the Debtors' estates for interest accrued in respect of an outstanding obligation or liability that is the subject of an Allowed Claim during the period from the Petition Date up to and including the date of final payment in full of such Allowed Claim, calculated at the federal judgment rate of 1.95%, the rate as in effect on the Petition Date, compounded annually, provided that interest shall continue to accrue only on the then outstanding and unpaid obligation or liability, including any postpetition interest compounded thereon, that is the subject of an Allowed Claim.

1.170  **Preferred Equity Interest:** An Equity Interest represented by an issued and outstanding share of preferred stock of WMI prior to or on the Petition Date, including, without limitation, those certain (i) Series K Perpetual Non-Cumulative Floating Rate Preferred Stock, (ii) Series R Non-Cumulative Perpetual Convertible Preferred Stock, and (iii) the REIT Series.

1.171  **Preserved Avoidance Actions:** An Avoidance Action that is, as of December 12, 2011, preserved by (a) a tolling agreement between the Creditors' Committee, the Equity Committee and/or the Debtors, on the one hand, and the target of such Avoidance Action, on the other hand, or (b) the litigation commenced by the Creditors' Committee, the Equity Committee and/or the Debtors against the target of any such Avoidance Action.

1.172  **Priority Non-Tax Claim:** A Claim entitled to priority in payment pursuant to section 507(a)(4), 507(a)(5), 507(a)(7), or 507(a)(9) of the Bankruptcy Code.

1.173  **Priority Tax Claim:** A Claim of a governmental unit against the Debtors of the kind entitled to priority in payment pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.174  **Privileges:**  All attorney-client privileges, work product protections, and other immunities or protections from disclosure held by the Debtors.

1.175  **Pro Rata Share:**  With respect to Allowed Claims (i) within the same Class, the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class, and (ii) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims, without regard to subordination; provided, however, that, notwithstanding the foregoing, for purposes of distributing Creditor Cash and Liquidating Trust Interests, "Pro Rata Share" shall not include Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, JPMC Assumed Liability Claims, WMB Vendor Claims, WMI Vendor Claims, WMB Senior Notes Claims, Convenience Claims, Subordinated Claims and Trustee Claims. With respect to redistributions of Liquidating Trust Interests to holders of Allowed Subordinated Claims, the proportion that an Allowed Subordinated Claim bears to the sum of all Allowed Subordinated Claims; and, provided, further, that, with respect to distribution of BB Liquidating Trust Interests to holders of Allowed WMB Senior Notes Claims and Accepting Non-Filing WMB Senior Note Holders, "Pro Rata Share" shall mean the proportion that an Allowed WMB Senior Notes Claim or the aggregate face amount of WMB Senior Notes, plus interest accrued to the Petition Date, held by an Accepting Non-Filing WMB Senior Note Holder bears to the aggregate of (i) all Allowed WMB Senior Notes Claims and (ii) the aggregate face amount of WMB Senior Notes, plus interest accrued to the Petition Date, held by Accepting Non-Filing WMB Senior Note Holders; and, provided, further, that, with respect to any elections to receive Reorganized Common Stock, "Pro Rata Share" shall mean the proportion of the original principal amount of the Runoff Notes which a holder may be entitled to receive and for which such holder elected to be tendered bears to the sum of the original principal amount of the Runoff Notes which all holders may be entitled to receive and for which all holders elected to be tendered pursuant to Sections 6.2(b), 7.2(b), 16.1(b)(ii), 18.2(b), 19.2(b) and 20.2 of the Plan. With respect to Equity Interests, "Pro Rata Share" shall mean (i) within the same Class, the proportion that an Equity Interest bears to the sum of all Equity Interests within such Class, and (ii) among all Classes, the proportion that a Class of Equity Interests bears to the sum of all Equity Interests; provided, however, that, with respect to distributions of Reorganized Common Stock, "Pro Rata Share" shall mean (i) the proportion that an Equity Interest within the Class of Preferred Equity Interest, entitled to receive distributions in accordance with the provisions of Sections 23.1 and 41.6 of the Plan, bears to the sum of all Equity Interests in such Class which are entitled to receive distributions in accordance with the provisions of Sections 23.1 and 41.6 of the Plan or (ii) the proportion that an Equity Interest within the Class of either the Dime Warrants (if determined pursuant to a Final Order to be an Equity Interest or a Claim subordinated to the level of Common Equity Interests pursuant to section 510 of the Bankruptcy Code) or Common Equity Interests, entitled to receive distributions in accordance with the provisions of Sections 24.1, 25.1 and 41.6 of the Plan bears to the sum of all Equity Interests in such classes which are entitled to receive distributions in accordance with the provisions of Sections 24.1, 25.1 and 41.6 of the Plan.

1.176  **Purchase and Assumption Agreement:**  That certain Purchase and Assumption Agreement, Whole Bank, dated September 25, 2008, between the FDIC Receiver, FDIC Corporate, and JPMC, as amended, modified or supplemented prior to the date hereof.

1.177  **Qualified Plan Claim**:  Any Claim against the Debtors and their chapter 11 estates set forth on Schedule 2.10 to the Global Settlement Agreement filed by any Person arising from or relating to the WaMu Pension Plan or the Lakeview Plan, to the extent such Claim constitutes an Allowed JPMC Assumed Liability Claim.

1.178  **Receivership**:  WMB's receivership.

1.179  **Registry Funds**:  The funds deposited into the registry of the Bankruptcy Court with respect to the American Savings Litigation.

1.180  **REIT Series**:  Those certain (i) Series I Perpetual Non-Cumulative Fixed-to-Floating Preferred Stock, (ii) Series J Perpetual Non-Cumulative Fixed Rate Preferred Stock, (iii) Series L Perpetual Non-Cumulative Fixed-to-Floating Rate Preferred Stock, (iv) Series M Perpetual Non- Cumulative Fixed-to-Floating Rate Preferred Stock, and (v) Series N Perpetual Non-Cumulative Fixed-to-Floating Rate Preferred Stock.

1.181  **Related Actions**:  The "Related Actions," as defined in the Global Settlement Agreement.

1.182  **Related Persons**:  With respect to any Entity, its predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present Affiliates and each of their respective current and former members, partners, equity holders, officers, directors, employees, managers, shareholders (other than holders of Equity Interests of WMI), partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals (including, without limitation, any and all professionals retained by WMI or the Creditors' Committee in the Chapter 11 Cases either (a) pursuant to an order of the Bankruptcy Court other than ordinary course professionals or (b) as set forth on Schedule 3.1(a) to the Global Settlement Agreement), or other representatives, nominees or investment managers, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals), but, under all circumstances, excluding the "Excluded Parties," as such term is defined in the Global Settlement Agreement.

1.183  **Released Claims**:  Collectively, (a) with respect to those Entities party to the Global Settlement Agreement, claims and causes of action released thereunder, (b) claims or causes of action that arise in, relate to or have been or could have been asserted (i) in the Chapter 11 Cases, the Receivership or the Related Actions, or (ii) by the Debtors (with respect to releases given by the Debtors) and by Creditors relating to Claims or holders of Equity Interests relating to Equity Interests, as the case may be, they have against the Debtors (with respect to releases given by Creditors or holders of Equity Interests, as the case may be), and (c) claims that otherwise arise from or relate to the Receivership, the Purchase and Assumption Agreement, the 363 Sale and Settlement, as defined in the Global Settlement Agreement, the Plan, the Global Settlement Agreement, and the negotiations and compromises set forth in the Global Settlement Agreement and the Plan, including, without limitation, in connection with or related to any of the Debtors, the Affiliated Banks, and their respective subsidiaries, assets, liabilities, operations, property or estates, the assets to be received by JPMC pursuant to the Global Settlement Agreement, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the WMI/WMB

Intercompany Claims, any intercompany claims on the books of WMI or WMB related to the WaMu Pension Plan or the Lakeview Plan, or the Trust Preferred Securities (including, without limitation, the creation of the Trust Preferred Securities, the financing associated therewith, the requested assignment of the Trust Preferred Securities by the Office of Thrift Supervision and the transfer and the asserted assignment of the Trust Preferred Securities subsequent thereto); provided, however, that "Released Claims" does not include (1) any and all claims that the JPMC Entities, the Receivership, the FDIC Receiver and the FDIC Corporate are entitled to assert against each other or any other defenses thereto pursuant to the Purchase and Assumption Agreement, which claims and defenses shall continue to be governed by the Purchase and Assumption Agreement, (2) any and all claims held by Entities against WMB, the Receivership and the FDIC Receiver solely with respect to the Receivership, and (3) subject to the exculpation provisions set forth in the Plan, any avoidance action or claim objection regarding an Excluded Party or the WMI Entities, WMB, each of the Debtors' estates, the Reorganized Debtors and their respective Related Persons; and, provided, further, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order or the Plan.

1.184  **Released Parties:**  Collectively, each of the Debtors, WMB, each of the Debtors' estates, the JPMC Entities, the FDIC Receiver and FDIC Corporate, and the Related Persons of each of the JPMC Entities, FDIC Corporate and the FDIC Receiver.

1.185  **Released Third Party Causes of Action:**  Any Claims and causes of action, regardless of whether asserted by any of the parties executing and delivering a release in accordance with the provisions of Section 41.6 of the Plan, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, that are based upon, relate to, or arise out of or in connection with, in whole or in part any act, omission, transaction, event or other circumstance relating to the Debtors and the Chapter 11 Cases and taking place or existing on or prior to the Effective Date, including, without limitation, (a) any such claim relating to the trading of the Debtors' securities during the period from the Petition Date up to and including the Effective Date and (b) any claim for equitable subordination or equitable disallowance with respect to any Claims held by (i) the AAOC Releasees, (ii) the Senior Notes Claims Releasees, (iii) the Senior Subordinated Notes Claims Releasees, (iv) the PIERS Claims Releasees, and (v) the CCB Releasees against the Debtors or the Debtors' chapter 11 estates.

1.186  **Releasing REIT Trust Holder:**  A holder of REIT Series that (i) voted to accept the Sixth Amended Plan and, to the extent such holder is a holder of REIT Series as of the Voting Record Date with respect to solicitation of acceptances to the Plan, votes to accept the Plan and grants the releases set forth in Section 41.6 of the Plan, (ii) did not interpose an objection to confirmation of the Sixth Amended Plan as it related to the REIT Series or the Trust Preferred Securities, (iii) with respect to the Plan, does not otherwise interpose an objection to confirmation of the Plan as it relates to the REIT Series or the Trust Preferred Securities, (iv) acknowledges that JPMC or its designee is the sole legal, equitable and beneficial owner of the Trust Preferred Securities for all purposes and that such REIT Series holder has no legal, equitable or beneficial interest in the Trust Preferred Securities, and (v) in connection with the

solicitation of acceptances to the Sixth Amended Plan, executed and delivered the release of claims against the "Releasees", as set forth in Section 2.24 of the Global Settlement Agreement and as incorporated into the Ballots distributed to holders of REIT Series.

1.187  **Remaining Postpetition Interest Claim:**  A Claim by a holder of an Allowed Senior Notes Claim with respect to Floating Rate Notes against any of the Debtors or the Debtors' estates for interest accrued during the period from the Petition Date up to and including the date of final payment of such Claim, in an amount equal to (a) such holder's Postpetition Interest Claim *minus* (b) such holder's Intercreditor Interest Claim, all as set forth in the Subordination Model annexed hereto as Exhibit "H".

1.188  **Reorganized Common Stock:**  Subject to the provisions of Section 31.1(d) hereof, the Two Hundred Million (200,000,000) shares of duly authorized common stock of Reorganized WMI to be issued as of the Effective Date, with a par value of $0.00001 per share.

1.189  **Reorganized Debtors:**  The Debtors from and after the Effective Date.

1.190  **Reorganized Debtors By-Laws:**  The respective by-laws of the Reorganized Debtors, which by-laws shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Creditors' Committee, the Equity Committee and AAOC.

1.191  **Reorganized Debtors Certificates of Incorporation:**  The respective Amended and Restated Articles of Incorporation and Certificates of Incorporation, if applicable, of the Reorganized Debtors, which certificates shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the Creditors' Committee, the Equity Committee and AAOC.

1.192  **Reorganized WMI:**  WMI, on and after the Effective Date, which shall include One Hundred Percent (100%) of the equity interests of WMI Investment, WMMRC and, subject to the abandonment of the equity interests of WMB, WMB.

1.193  **Rule 2004 Inquiry:**  That certain discovery authorized by the Bankruptcy Court and conducted by the Debtors, pursuant to Bankruptcy Rule 2004, in order to facilitate the Debtors' inquiry into the existence of potential additional claims and causes of action of the Debtors and the Debtors' chapter 11 estates against JPMC.

1.194  **Rule 2019 Appeal:**  The appeal filed on December 14, 2009 by the WMI Noteholders Group from the Bankruptcy Court order, dated December 2, 2009, granting JPMC's Motion to Compel the Washington Mutual, Inc. Noteholders Group to Comply with Rule 2019 of the Federal Rules of Bankruptcy.

1.195  **Runoff Indenture:**  That certain Senior First Lien Notes Indenture, dated as of the Effective Date, to be executed and delivered in connection with the issuance of the Runoff Notes, substantially in the form annexed hereto as Exhibit "J".

1.196  **Runoff Notes:**  The two series of non-recourse promissory notes to be issued on the Effective Date by Reorganized WMI and either (a) distributed to Entities electing distributions of Runoff Notes in lieu of Creditor Cash on the Effective Date or (b) to the extent unavailable for distribution to Entities in accordance with such elections, constituting Liquidating Trust Assets, in the aggregate original principal amount of One Hundred Forty Million Dollars ($140,000,000.00), subject to the elections and reductions set forth in the Plan, maturing on the eighteenth (18th) anniversary of the Effective Date, bearing interest at the rate of thirteen percent (13%) per annum (payable in cash to the extent available and payable in kind through capitalization of accrued interest at the rate of thirteen percent (13%) per annum to the extent cash is unavailable), and, to the extent permitted by applicable law and upon regulatory approval with respect thereto, the repayment thereof secured by, and having a specified priority in right of payment in, as and to (1) a securities or deposit account into which Reorganized WMI shall deposit distributions of Runoff Proceeds and (2) the equity interest in either WMMRC or such other Entity as holds the Trusts and their assets, to the extent a valid and perfected lien has been granted therein, all as more fully described in the Runoff Indenture.

1.197  **Runoff Proceeds:**  Collectively, (a) all net premiums, reinsurance recoverables, net revenue resulting from commutation of insurance contracts, net interest income, reserve releases and other revenues derived from the reinsurance contracts, investments and other assets of the Trusts, <u>minus</u>, without duplication, (y) the reasonable and necessary costs and expenses of the Trusts and WMMRC (or its successor in interest upon closure of WMMRC's book of insurance) (including, but not limited to, general and administrative expenses, audit fees, required regulatory capital contributions (which capital contributions will be added back to the Runoff Proceeds if applicable regulations permit such distribution thereof), expenses of regulatory compliance, including all costs associated with the closure of WMMRC's book of insurance, expenses of administering the Runoff Indenture and Taxes) attributable to the administration of the Trusts or the assets thereof, and the collection of premiums and/or management of investments in connection therewith, which expenses shall include reasonable and customary expenses attributable to the foregoing paid under any administrative services agreement, investment management agreement or similar agreement, and (z) the claims paid for covered losses, <u>plus</u> (b) the proceeds from the foregoing received by WMMRC (or its successor in interest upon closure of WMMRC's book of insurance) or Reorganized WMI in cash, securities and/or other property from any sale, liquidation, merger or other disposition in respect of WMMRC (or its successor in interest upon closure of WMMRC's book of insurance) or its interests in the Trusts or the assets thereof. The inclusion of clause (b) of this Section 1.197 shall not be construed as a consent to any sale, liquidation, merger or other disposition or waiver of compliance with any covenant related thereto. For the avoidance of doubt, to the extent that WMI or WMMRC pays any such cost, capital contribution or expense described in clause (y), payment by WMI or WMMRC will be deemed a cost or expense of the Trusts.

1.198  **Runoff Threshold:**  Runoff Notes in the original principal amount of Ten Million Dollars ($10,000,000.00).

1.199  **Schedules:**  Collectively, the schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms in the Chapter 11 Cases, as

may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.200   **Section 510(b) Subordinated WMB Notes Claim:**  A WMB Notes Claim, to the extent determined pursuant to a Final Order to be subordinated in accordance with section 510(b) of the Bankruptcy Code; provided, however, that, for all purposes, and for the avoidance of doubt, to the extent that a holder of an Allowed WMB Senior Notes Claim receives a distribution pursuant to the Plan, such holder shall be deemed to have released any and all Section 510(b) Subordinated WMB Notes Claims that such holder may have.

1.201   **Securities Litigations:**  Collectively, the litigations styled (i) South Ferry LP #2, Individually and on Behalf of All Others Similarly Situated v. Killinger, Case No. C04-1599 (MJP), and (ii) Boilermakers National Annuity Trust Fund, on Behalf of Itself and All Others Similarly Situated v. WAMU Mortgage Pass-Through Certificates, Series AR1, et al., Case No. C09-0037 (MJP), each pending in the United States District Court for the Western District of Washington.

1.202   **Senior Notes:**  The promissory notes and debentures issued and delivered by WMI in accordance with the terms and conditions of the Senior Notes Indenture and set forth on Exhibit "E" hereto.

1.203   **Senior Notes Claim:**  An Unsecured Claim arising from or relating to the Senior Notes.

1.204   **Senior Notes Claims Releasees:**  Each holder of record or beneficial owner of an Allowed Senior Notes Claim, and any Affiliate of such Entities which, during the Chapter 11 Cases, owned, invested or acquired Senior Notes Claims, and each of their respective officers, directors, partners, equity investors, investment managers, management companies, members, employees and, solely to the extent as counsel to a holder of record or beneficial owner of an Allowed Senior Notes Claim with respect to the Debtors' Chapter 11 Cases, attorneys.

1.205   **Senior Notes Indenture:**  That certain Senior Debt Securities Indenture, dated as of August 10, 1999, as supplemented by that certain First Supplemental Indenture and Second Supplemental Indenture, dated as of August 1, 2002 and November 20, 2002, respectively, between WMI and The Bank of New York Mellon Trust Company, N.A., as Trustee.

1.206   **Senior Notes Indenture Trustee:**  The Bank of New York Mellon Trust Company, N.A., solely in its capacity as successor in interest to The Bank of New York, solely in its capacity as successor in interest to Harris Trust and Savings Bank, as Trustee, or its duly appointed successor, solely in its capacity as indenture trustee with regard to the Senior Notes Indenture.

1.207   **Senior Notes Release Consideration:**  The consideration to be contributed by holders of Allowed Senior Notes Claims from distributions received, in accordance with the provisions of Sections 6.1 and 31.1 of the Plan, to Reorganized WMI in

exchange for the releases executed and delivered to the Senior Notes Claims Releasees in accordance with the provisions of Section 41.6 of the Plan.

1.208 **Senior Subordinated Notes:** The promissory notes and debentures issued and delivered by WMI in accordance with the terms and conditions of the Senior Subordinated Notes Indenture and set forth on Exhibit "F" hereto.

1.209 **Senior Subordinated Notes Claim:** An Unsecured Claim arising from or relating to the Senior Subordinated Notes.

1.210 **Senior Subordinated Notes Claims Releasees:** Each holder of record or beneficial owner of an Allowed Senior Subordinated Notes Claim, and any Affiliate of such Entities which, during the Chapter 11 Cases, owned, invested or acquired a Senior Subordinated Notes Claim, and each of their respective officers, directors, partners, equity investors, investment managers, management companies, members, employees and, solely to the extent as counsel to a holder of record or beneficial owner of an Allowed Senior Subordinated Notes Claim with respect to the Debtors' Chapter 11 Cases, attorneys.

1.211 **Senior Subordinated Notes Indenture:** That certain Subordinated Debt Securities Indenture, dated as of April 4, 2000, as supplemented by that certain First Supplemental Indenture and Second Supplemental Indenture, dated as of August 1, 2002 and March 16, 2004, respectively, between WMI and The Bank of New York Mellon Trust Company, N.A., as Trustee.

1.212 **Senior Subordinated Notes Indenture Trustee:** Law Debenture Trust Company of New York, solely in its capacity as successor in interest to The Bank of New York Mellon Trust Company, N.A., solely in its capacity as successor in interest to The Bank of New York, solely in its capacity as successor in interest to Harris Trust and Savings Bank, as Trustee, or its duly appointed successor, solely in its capacity as indenture trustee with regard to the Senior Subordinated Notes Indenture.

1.213 **Senior Subordinated Notes Release Consideration:** The consideration to be contributed by holders of Allowed Senior Subordinated Notes Claims from distributions received, in accordance with the provisions of Sections 7.1 and 31.1 of the Plan, to Reorganized WMI in exchange for the releases executed and delivered to the Senior Subordinated Notes Claims Releases in accordance with the provisions of Section 41.6 of the Plan.

1.214 **September Opinion:** That certain Opinion, dated September 13, 2011, issued by the Bankruptcy Court with respect to, among other things, the confirmability of the Modified Plan [Docket No. 8612].

1.215 **September Order:** That certain order, dated September 13, 2011, issued by the Bankruptcy Court in connection with the September Opinion [Docket No. 8613].

1.216 **Settlement WMB Senior Note Holders:** Each of the signatories, other than the Debtors, to the Plan Support Agreement.

1.217    **Sixth Amended Plan**: The Sixth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated October 6, 2010, as amended.

1.218    **Standing Motion**: That certain Motion for an Order Authorizing the Official Committee of Equity Security Holders to Commence and Prosecute Certain Claims of Debtors' Estates, dated July 12, 2011 [Docket. No. 8179].

1.219    **Stock Trading Order**: That certain Final Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates, dated November 18, 2008, entered by the Bankruptcy Court in the Chapter 11 Cases [Docket No. 315].

1.220    **Subordinated Claim**: A Penalty Claim, an Other Subordinated Claim, or a Section 510(b) Subordinated WMB Notes Claim.

1.221    **Subordination Model**: The model developed by Alvarez & Marsal LLC for the Debtors, a copy of which is attached hereto as Exhibit "H," which implements the Debtors' interpretation of the respective subordination provisions in the Senior Subordinated Notes Indenture, CCB-1 Guarantee Agreements, CCB-2 Guarantee Agreements, Junior Subordinated Notes Indenture and PIERS Guarantee Agreement.

1.222    **Tax Authority**: A federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court, or other body (if any) charged with the administration of any law relating to Taxes.

1.223    **Taxes**: All (i) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, and estimated taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

1.224    **Tax Refunds**: To the extent of the Debtors' rights, title and interest therein in whatever capacity, all refunds of Taxes of the Debtors and any consolidated, combined or unitary tax group of which the Debtors are members for taxable periods ended on or before December 31, 2009, including all of the Debtors' rights, title and interest in and with respect to any "Net Tax Refunds" as defined in the Global Settlement Agreement, including, without limitation, any interest received with respect to such refunds.

1.225    **Tax Return**: A return, declaration, form, election letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax Refund.

1.226    **Texas Litigation**: That certain litigation styled American National Insurance Company v. FDIC, Case No. 09-1743 (RMC), with respect to which the United States District Court for the District of Columbia entered an order granting motions to dismiss filed by JPMC and the FDIC Receiver.

1.227 **Tranquility**: Tranquility Master Fund, Ltd.

1.228 **Tranquility Claim**: The proof of claim filed by Tranquility, assigned claim number 2206 by the Debtors' claims agent, or any subsequent amendments or modifications thereto, including, but not limited to, the asserted proof of claim filed by Tranquility on November 30, 2010.

1.229 **Transferred Intellectual Property**: The intellectual property listed on Exhibit "W" to the Global Settlement Agreement.

1.230 **Treasury Regulations**: The United States Department of Treasury regulations promulgated under the IRC.

1.231 **Trust Advisory Board**: The trust advisory board provided for in the Liquidating Trust Agreement, which board shall (a) be initially comprised of ten (10) members: (i) four (4) members selected solely by the Creditors' Committee, (ii) four (4) members selected solely by the Equity Committee, (iii) one (1) member selected by the Creditors' Committee and approved by the Equity Committee, which approval shall not be unreasonably withheld, and (iv) one (1) member selected by HoldCo Advisors, LLC serving in a non-voting *ex officio* capacity, and (b) have an oversight function with respect to the Liquidating Trust, and the composition of which may change only in accordance with the provisions of the Liquidating Trust Agreement.

1.232 **Trustee Claims**: The Claims of the Senior Notes Indenture Trustee, Senior Subordinated Notes Indenture Trustee, CCB-1 Trustee, CCB-2 Trustees, PIERS Trustee, and Trust Preferred Trustees, pursuant to the Senior Notes Indenture, Senior Subordinated Notes Indenture, CCB-1 Guarantee Agreements, CCB-2 Guarantee Agreements, Junior Subordinated Notes Indenture and PIERS Guarantee Agreement, and Trust Preferred Securities documents, respectively, for indemnification and for reasonable fees and expenses, including, without limitation, reasonable attorneys' fees and expenses, which claims shall be satisfied in accordance with Section 31.12 of the Plan or such other order of the Bankruptcy Court.

1.233 **Trustee Distribution Expenses**: The reasonable, direct, out-of-pocket costs and expenses incurred by the Trustees in connection with making distributions pursuant to the Plan.

1.234 **Trustees**: The Senior Notes Indenture Trustee, Senior Subordinated Notes Indenture Trustee, CCB-1 Trustee, CCB-2 Trustees, PIERS Trustee, and Trust Preferred Trustees.

1.235 **Trust Preferred Securities**: Collectively, those certain (i) Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-1, (ii) Washington Mutual Preferred (Cayman) I Ltd. 7.25% Perpetual Non-Cumulative Preferred Securities, Series A-2, (iii) Washington Mutual Preferred Funding Trust I Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, (iv) Washington Mutual Preferred Funding Trust II Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, (v) Washington Mutual Preferred Funding Trust III Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities, and (vi) Washington Mutual Preferred Funding Trust IV Fixed-to-Floating Rate Perpetual Non-Cumulative Trust Securities.

1.236  **Trust Preferred Trustees:** Wilmington Trust Company, solely in its capacity as Property Trustee, Delaware Trustee, Transfer Agent and Registrar for Washington Mutual Preferred Funding Trust I, Washington Mutual Preferred Funding Trust II, Washington Mutual Preferred Funding Trust III and Washington Mutual Preferred Funding Trust IV, Wilmington Trust (Cayman) Ltd., solely in its capacity as Preferred Securities Paying Agent, Securities Registrar and Transfer Agent for Washington Mutual Preferred Funding (Cayman) I, Ltd. and Maples Finance Limited as Original Trustee for Washington Mutual Preferred Funding (Cayman) I Ltd.

1.237  **Trusts:** Collectively, (a) Home Loan Reinsurance Co. United Guaranty Residential Insurance Company Reinsurance Agreement (Acct. No. x6401); (b) Home Loan Reinsurance Co. Genworth Reinsurance Co. Trust Agreement (Acct. No. x6403); (c) Mortgage Guaranty Insurance Corporation/WM MTG Reinsurance Co. Trust; (Acct. No. x2400); (d) Reinsurance Escrow Agreement among WM Mortgage Reinsurance Co. PMI Mortgage Insurance Company and US Bank (Acct. No. x6404); (e) Radian Guaranty Inc. and WM Mortgage Reinsurance Company Agreement, dated March 27, 2001 (Acct. No. x5700); (f) Home Loan Reinsurance Co. Republic Mortgage Co. Reinsurance Agreement, dated December 14, 1998 (Acct. No. x6402); (g) Washington Mutual Custody Account (Acct. No. x6406); and (h) WM Mortgage Reinsurance Company Inc. (Acct. No. x4202).

1.238  **Turnover Action:** The adversary proceeding commenced in the Chapter 11 Cases by the Debtors, styled Washington Mutual, Inc., et al. v. JPMorgan Chase Bank, N.A., Adversary Pro. No. 09-50934 (MFW).

1.239  **Unidentified Intellectual Property:** The trademarks, patents, domain names and copyrighted materials (whether or not the subject of registration) that were used by WMB by license or otherwise, or were available for WMB's use, prior to the Petition Date, but are not listed on Exhibits "W" or "Y" to the Global Settlement Agreement.

1.240  **Unsecured Claim:** A Claim against the Debtors, other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Convenience Claim, a Trustee Claim or a Subordinated Claim; provided, however, that, in the event that the Bankruptcy Court determines, pursuant to a Final Order, that the Dime Warrants constitute Claims, such Claims shall be considered to be Unsecured Claims and, pursuant to such Final Order, shall be treated as General Unsecured Claims in accordance with Class 12 of the Plan or as otherwise determined by the Bankruptcy Court.

1.241  **Vendor Escrow:** The escrow administered by WMI, or its successor in interest, containing Fifty Million Dollars ($50,000,000.00) paid by JPMC pursuant to the terms of the Global Settlement Agreement, which funds shall be used in connection with the satisfaction of Allowed WMI Vendor Claims and, upon payment of all such Claims and all fees and expenses associated with such escrow, which remaining funds shall be distributed equally to WMI and JPMC.

1.242  **Visa Claims:** Any Claim against the Debtors set forth on Schedule 2.15(a) to the Global Settlement Agreement filed in connection with the Visa Shares or any litigation or agreement relating thereto, and the Claims asserted by VISA U.S.A. Inc. in its proof

of claim filed against the Debtors and the Debtors' chapter 11 cases, Claim No. 2483, pertaining to the VISA Strategic Agreement to the extent such Claim constitutes an Allowed JPMC Assumed Liability Claim.

1.243 **Visa Shares:** The 3.147 million Class B shares of Visa Inc. held by WMI and set forth on the Schedules and/or WMI's books and records as of the Petition Date.

1.244 **Voting Record Date:** The date established by the Bankruptcy Court in the Disclosure Statement Order for the purpose of determining the holders of Allowed Claims and Equity Interests entitled to vote on the Plan.

1.245 **WaMu Pension Plan:** That certain WaMu Pension Plan, which plan is intended to satisfy the tax requirements of Section 401 of the IRC and is sponsored by WMI.

1.246 **WMB:** Washington Mutual Bank.

1.247 **WMB Intellectual Property:** The intellectual property listed on Exhibit "X" to the Global Settlement Agreement.

1.248 **WMB Global Note Program:** That certain program, established by WMB in 2005, providing for the issuance of up to $22 billion in debt financing, pursuant to which WMB issued Senior Global Notes and Subordinated Global Notes.

1.249 **WMB Notes Claim:** A WMB Senior Notes Claim or a WMB Subordinated Notes Claim.

1.250 **WMB Senior Notes:** The Senior Global Notes issued by WMB pursuant to the WMB Global Note Program.

1.251 **WMB Senior Notes Claim:** An Unsecured Claim arising from or relating to WMB Senior Notes and with respect to which a proof of Claim was timely filed against the Debtors.

1.252 **WMB Subordinated Notes:** The Subordinated Global Notes issued by WMB pursuant to the WMB Global Note Program.

1.253 **WMB Subordinated Notes Claim:** An Unsecured Claim arising from or relating to WMB Subordinated Notes and with respect to which a proof of Claim was timely filed against the Debtors.

1.254 **WMB Vendor Claim:** Any Claim against the Debtors and their chapter 11 estates filed by a vendor with respect to services, software licenses or goods provided to WMB and its subsidiaries (whether prior or subsequent to JPMC's acquisition of the assets of WMB) pursuant to a contract or written agreement between WMB and/or its subsidiaries and such vendor.

1.255 **WMI:** Washington Mutual, Inc., a Debtor in these Chapter 11 Cases.

1.256 **WMI Accounts:** The accounts as set forth on Exhibit "E" to the Global Settlement Agreement that are not Disputed Accounts.

1.257 **WMI Action:** The litigation commenced by the Debtors against the FDIC, styled Washington Mutual, Inc. and WMI Investment Corp. v. FDIC, Case No. 09-00533, in the United States District Court for the District of Columbia.

1.258 **WMI Entities:** WMI, WMI Investment, Ahmanson Obligation Company, H.S. Loan Corporation, WAMU 1031 Exchange, WM Mortgage Reinsurance Company, Inc., WM Citation Holdings, LLC, WMI Rainier LLC and Washington Mutual Capital Trust 2001.

1.259 **WMI Intellectual Property:** The intellectual property listed on Exhibit "Y" to the Global Settlement Agreement.

1.260 **WMI Investment:** WMI Investment Corp., a Debtor in these Chapter 11 Cases and, as applicable, WMI Investment Corp. as a reorganized entity from and after the Effective Date.

1.261 **WMI Medical Plan:** Washington Mutual, Inc. Flexible Benefits Plan.

1.262 **WMI Medical Plan Claim:** Any Claim against the Debtors and their chapter 11 estates filed by a beneficiary of the WMI Medical Plan, to the extent such Claim constitutes an Allowed JPMC Assumed Liability Claim.

1.263 **WMI Policies:** The BOLI/COLI policies and the proceeds thereof set forth on Exhibit "R" to the Global Settlement Agreement.

1.264 **WMI Rabbi Trust:** The "rabbi trust" listed on Exhibit "Q" to the Global Settlement Agreement, including all assets therein.

1.265 **WMI Vendor Claim:** Any Claim against WMI asserted by a vendor with respect to services, software licenses or goods asserted to have been provided by the counterparty to or for the benefit of WMB or any of its subsidiaries or minority investments operations prior to the Petition Date pursuant to an agreement between WMI and such vendor.

1.266 **WMI/WMB Intercompany Claim:** Any Claim against WMI, WMB, or one of WMB's subsidiaries held by WMI, WMB, or one of WMB's subsidiaries.

1.267 **WMMRC:** WM Mortgage Reinsurance Company, Inc., a Hawaiian domiciled corporation.

1.268 **Other Definitions:** Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, (a) all section, schedule, or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America. The words "herein," "hereof," "hereto," "hereunder," and other words

of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.269 **Allowed Equity Interest:** An Equity Interest in WMI, as reflected on the books and records of WMI or its duly authorized agents and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or an Equity Interest in WMI as to which an objection has been interposed and such Equity Interest has been allowed in whole or in part by a Final Order.

1.270 **LTW Stipulation:** That certain Stipulation and Agreement Between the Debtors and Class Representatives of the LTW Holders Resolving Adversary Proceeding and the LTW Proofs of Claim, dated January 10, 2012.

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES

2.1 **Compromise, Settlement and Sale:** Pursuant to sections 363, 365, 1123(a)(5) and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates, and is expressly conditioned upon the approval and effectiveness of, the sale, free and clear of all Liens, Claims and encumbrances, of the Debtors' rights to and interests in certain of the Plan Contribution Assets and the compromise and settlement by and among the Debtors, JPMC, the FDIC Receiver, and FDIC Corporate, all as set forth in the Global Settlement Agreement. The Global Settlement Agreement is incorporated into this Plan by reference as if fully set forth herein and, subject to the occurrence of the Effective Date and execution of the Global Settlement Agreement, represents a full, final and complete compromise, settlement, and release of, among other matters, the issues in dispute among the Debtors, JPMC, the FDIC Receiver, and FDIC Corporate, including, among other issues, resolution of all Related Actions. Without limiting the foregoing, subsections (a) through (h) below describes certain of the principal provisions of the Global Settlement Agreement, but, except with respect to the releases provided in Section 41.6 hereof, nothing in this Plan shall be construed to, or is intended to, limit or diminish the benefits to be received by, or rights of, any of the parties pursuant to the Global Settlement Agreement. In the event of any inconsistency between the Global Settlement Agreement, the Plan or the Confirmation Order, the documents shall control in the following order of priority: (i) Confirmation Order, (ii) Global Settlement Agreement, and (iii) Plan; provided, however, that, in the event of any inconsistency between these documents with respect to the releases provided in Section 41.6 herein, the documents shall control in the following order of priority: (i) Confirmation Order, (ii) Plan, and (iii) Global Settlement Agreement.

(a) WMI Accounts and Disputed Accounts. In partial consideration for the assets sold pursuant to the Global Settlement Agreement and the releases and other benefits provided to the Released Parties pursuant to this Plan, (1) the JPMC Entities, the FDIC

Receiver, and FDIC Corporate shall (i) waive any and all claims, rights and liabilities with respect to the WMI Accounts and the Disputed Accounts and (ii) take such actions, if any, as may be reasonably requested by WMI, including, without limitation, (A) filing with the Bankruptcy Court such notices or pleadings setting forth the waiver of any and all interest in the WMI Accounts and the Disputed Accounts and (B) seeking dismissals referred to in Section 2.6(b) of the Global Settlement Agreement, (2) the FDIC Receiver and FDIC Corporate shall waive and release any and all rights to seize or set off the WMI Accounts and the Disputed Accounts and any funds contained therein in accordance with Section 9.5 of the Purchase and Assumption Agreement, including, without limitation, by withdrawing, with prejudice, the FDIC Stay Relief Motion, and (3) JPMC shall pay to WMI or such other of the WMI Entities as WMI shall designate, the amounts contained in the Disputed Accounts and the WMI Accounts as of the effective date of the Global Settlement Agreement, net of eighty percent (80%) of the amounts received by WMI during the period from the Petition Date up to and including the date hereof attributable to refunds of Taxes deposited into the Disputed Accounts and the WMI Accounts (including the interest component of any such refunds and interest, if any, earned thereon), free and clear of all Liens, Claims, interests and encumbrances of any Person. In addition, JPMC, as successor to WMB, shall (i) release any security interest in or Lien upon the Admin Account and the monies contained therein and (ii) release and otherwise transfer the Admin Account and the funds contained therein in accordance with the direction of WMI.

(b)     Tax Matters.  In partial consideration for the releases and other benefits provided under the Plan, WMI, the FDIC Receiver, and JPMC shall jointly direct all Tax Authorities to pay refunds of "Pre-2009 Group Taxes" (as defined in the Global Settlement Agreement) to an escrow account, the custodian of which will distribute such Tax Refunds in accordance with the terms and procedures set forth in the Global Settlement Agreement.  If any such Pre-2009 Group Tax refund is paid directly to any party, such party will deposit such refund in the Refund Escrow Account (as defined in the Global Settlement Agreement).

(c)     Transfer of Assets to JPMC.  In further consideration for the satisfaction, settlement, release, and discharge of, and in exchange for, the JPMC Action and the JPMC Claims, and the payment by JPMC of the amounts specified in the Global Settlement Agreement, the WMI Entities, the FDIC Receiver and the Receivership shall sell, transfer, and assign to the JPMC Entities, and the JPMC Entities shall acquire, pursuant to the Plan and sections 363 and 365 of the Bankruptcy Code, any and all right, title and interest any of the WMI Entities, the FDIC Receiver and the Receivership may have in (i) the Trust Preferred Securities, (ii) the WMI Medical Plan, any outstanding checks made out to WMI, including pharmacy rebates in connection with contracts associated with or attributable to the WMI Medical Plan and an amount equal to the pharmacy rebates received by the WMI Entities from and after the Petition Date, currently estimated to be approximately Seven Hundred Seventy-Five Thousand Dollars ($775,000.00), (iii) the JPMC Rabbi Trusts and the JPMC Policies, (iv) the WaMu Pension Plan and the Lakeview Plan and all of the sponsor's interest in the assets contained in any trusts or otherwise associated with such plans (subject to the correction and satisfaction of certain potential defects and remediation obligations, as set forth in the Global Settlement Agreement), (v) the Anchor Litigation, (vi) the Visa Shares and the VISA Strategic Agreement (as defined in the Global Settlement Agreement), (vii) the Transferred Intellectual Property, the WMB Intellectual Property and the Unidentified Intellectual Property, (viii) JPMC Wind Investment Portfolio LLC and (ix) the Bonds, in each case under clauses (i) through (ix)

inclusively, free and clear of all Liens, Claims, interests and encumbrances of any Entity, except for any claim that is an Allowed JPMC Assumed Liability Claim.

(d)    JPMC Claims. The JPMC Allowed Unsecured Claim shall be deemed an Allowed Claim against WMI. The JPMC Allowed Unsecured Claim shall be classified with and treated in the same manner as other Allowed General Unsecured Claims under the Plan, including, without limitation, with respect to distributions pursuant to the Plan; provided, however, that, in partial consideration for the releases and other benefits provided to JPMC pursuant to the Plan, JPMC shall waive any distribution JPMC otherwise would be entitled to receive on account of the JPMC Allowed Unsecured Claim.

(e)    Transfer of Assets to the Debtors. In further consideration for the satisfaction, settlement, release and discharge of, and in exchange for, the Turnover Action and the Rule 2004 Inquiry, and as further consideration for the releases and other benefits provided to JPMC pursuant to this Plan, and as set forth in the Global Settlement Agreement, the JPMC Entities shall sell, transfer, and assign to the WMI Entities, and the WMI Entities shall acquire, pursuant to the Plan and sections 363 and 365 of the Bankruptcy Code, any and all right, title and interest any of the JPMC Entities may have in, among other assets, (i) the WMI Rabbi Trust and the WMI Policies, (ii) the stock of H.S. Loan Corporation, (iii) the Registry Funds and the American Savings Escrow Funds, and (iv) the WMI Intellectual Property, in each case, free and clear of all Liens, Claims, interests and encumbrances of any Entity.

(f)    Additional Consideration to the Debtors. As additional consideration for the asset sale and compromise and settlement embodied in the Global Settlement Agreement, and as further consideration for the releases and other benefits provided to JPMC pursuant to this Plan:

(1)    JPMC shall pay WMI an additional Twenty-Five Million Dollars ($25,000,000.00) for the Visa Shares, WMI shall retain all dividends with respect thereto received prior to the effective date of the Global Settlement Agreement, and JPMC shall assume certain related litigation liabilities (as set forth in the Global Settlement Agreement);

(2)    JPMC shall pay all obligations under the Intercompany Notes in the amounts set forth in Exhibit "V" to the Global Settlement Agreement, and shall forgive all obligations of the WMI Entities to the extent set forth in the Global Settlement Agreement, which Intercompany Notes shall be cancelled upon payment thereof;

(3)    As set forth in more detail in the Global Settlement Agreement, JPMC shall cause its affiliates to continue providing loan servicing with respect to certain loans and the remittal of checks and payments received in connection therewith;

(4)    As set forth in the Global Settlement Agreement and the BKK Settlement Agreement, JPMC shall assume the BKK Liabilities and shall defend the Debtors against and reimburse the Debtors for any

distribution on account of remediation or clean-up costs and expenses contained in the BKK Proofs of Claims and not otherwise covered by the BKK-Related Policies and/or reimbursed by the BKK-Related Carriers, as defined in the Global Settlement Agreement;

(5)    JPMC shall assume the JPMC Assumed Liabilities in connection with the assets it receives pursuant to the Global Settlement Agreement and, on or after the Effective Date, JPMC shall pay or fund the payment of Allowed JPMC Assumed Liability Claims; and

(6)    JPMC shall pay or fund the payment of Allowed WMB Vendor Claims and shall pay the sum of Fifty Million Dollars ($50,000,000.00) to be placed by the Debtors in an escrow and used for satisfaction of Allowed WMI Vendor Claims.

(g)    <u>Additional Consideration to the FDIC</u>. In further consideration for the satisfaction, settlement, release and discharge of, and in exchange for, the FDIC Claim:

(1)    The FDIC Receiver shall receive distributions in accordance with Section 2.4 of the Global Settlement Agreement; and

(2)    The FDIC Receiver, FDIC Corporate and the Receivership shall receive the releases set forth in the Global Settlement Agreement and Article XLI herein.

(h)    <u>Settlement with REIT Series Holders</u>. In consideration for the releases by the REIT Series holders of any and all claims arising out of, related to, or resulting from, among other things, the issuance, sale or assignment of the Trust Preferred Securities, the commitments to or exchange event ordered by the Office of Thrift Supervision or any capital or other commitment, disclosure or non-disclosure with respect thereto, the assignment of the Trust Preferred Securities subsequent thereto, and any and all claims in any way related to the Trust Preferred Securities or the REIT Series, on the Effective Date, JPMC shall pay, or transfer to the Disbursing Agent, for payment to each Releasing REIT Trust Holder its pro rata share of Fifty Million Dollars ($50,000,000.00), determined by multiplying (a) Fifty Million Dollars ($50,000,000.00) times (b) an amount equal to (i) the principal amount of REIT Series held by such Releasing REIT Trust Holder on the Voting Record Date divided by (ii) the outstanding principal amount of all REIT Series (which is Four Billion Dollars ($4,000,000,000.00)); provided, however, that, at the election of JPMC, the amount payable to Releasing REIT Trust Holders pursuant to Section 2.24 of the Global Settlement Agreement may be paid in shares of common stock of JPMC, having an aggregate value equal to the amount of cash to be paid pursuant to Section 2.24 of the Global Settlement Agreement, valued at the average trading price during the thirty (30) day period immediately preceding the Effective Date. While JPMC's maximum liability pursuant to Section 2.24 of the Global Settlement Agreement is Fifty Million Dollars ($50,000,000.00), JPMC's liability shall be reduced to the extent the Releasing REIT Trust Holders comprise less than all of the outstanding REIT Series holders.

(i)    <u>Settlement with WMB Senior Note Holders</u>.  In consideration for the releases to be granted by holders of Allowed WMB Senior Notes Claims and Accepting Non-Filing WMB Senior Note Holders of, among other things, all direct and derivative claims arising from or related to such holders' WMB Senior Notes, as well as any misrepresentation or other similar claim for damages arising from the purchase or sale of such holders' WMB Senior Notes (including, without limitation, any Section 510(b) Subordinated WMB Notes Claims that such holders may have), the Debtors have agreed to provide such holders with those certain BB Liquidating Trust Interests, representing an undivided interest in WMI's share of the Homeownership Carryback Refund Amount, as defined and set forth in Section 2.4 of the Global Settlement Agreement, in an amount equal to Three Hundred Thirty-Five Million Dollars ($335,000,000.00) in the aggregate.  In connection therewith, certain holders of WMB Senior Notes Claims – the Settlement WMB Senior Note Holders – have executed an agreement with the Debtors, pursuant to which such holders have agreed, in exchange for the treatment and distributions to be provided pursuant to the Plan to holders of Allowed WMB Senior Notes Claims, to not sell or otherwise transfer their note holdings without first binding such transferee or assignee to the Plan Support Agreement, to support confirmation of the Plan, and to provide certain releases, as set forth more fully in the Plan Support Agreement.

(j)    <u>Releases</u>.  The releases provided in Article XLI herein are integral to obtaining the value provided under the Global Settlement Agreement and the releases under this Plan constitute an essential component of the compromises reached and are not severable from the other provisions of this Plan.

## ARTICLE III

## PROVISIONS FOR PAYMENT OF
## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

3.1    **Administrative Expense Claims:**  On the later to occur of (i) the Effective Date and (ii) the date on which an Administrative Expense Claim shall become an Allowed Claim, the Disbursing Agent shall (a) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim or (b) satisfy and discharge such Allowed Administrative Expense Claim in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and the Disbursing Agent; <u>provided, however,</u> that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full and performed by the Disbursing Agent in the ordinary course of business in accordance with the terms and subject to the conditions of any agreement governing, instrument evidencing, or other document relating to such transactions; and <u>provided, further,</u> that, if any such ordinary course expense is not billed, or a request for payment is not made, within ninety (90) days after the Effective Date, such ordinary course expense shall be barred and the holder thereof shall not be entitled to a distribution pursuant to the Plan.

3.2    **Professional Compensation and Reimbursement Claims:**  Except as otherwise provided in Section 41.18 hereof, all Entities awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with section 328, 330, or 331 of the Bankruptcy Code or entitled to priorities established pursuant to section 503(b)(2), 503(b)(3),

503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, in the amounts allowed by the Bankruptcy Court (i) on or as soon as reasonably practicable following the later to occur of (a) the Effective Date and (b) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order or (ii) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the Disbursing Agent; provided, however, that, except as provided herein, each professional must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to the Administrative Claim Bar Date. The Disbursing Agent is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

    3.3    **Priority Tax Claims:** Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Priority Tax Claim, distributions in an amount equal to the full amount of such Allowed Priority Tax Claim. At the option and discretion of the Debtors, which option shall be exercised, in writing, on or prior to the commencement of the Confirmation Hearing, such payment shall be made (i) in full, in Cash, on or as soon as reasonably practicable following the later to occur of (a) the Effective Date and (b) the date on which such claim becomes an Allowed Claim, and to the extent that payment is made after the Effective Date, together with interest accrued thereon at the applicable non-bankruptcy rate as of the calendar month in which the Confirmation Order is entered, (ii) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in full, in Cash, in equal quarterly installments commencing on the first (1st) Business Day following the Effective Date and continuing over a period not exceeding five (5) years from and after the Petition Date, together with interest accrued thereon at the applicable non-bankruptcy rate, subject to the sole option of the Disbursing Agent to prepay the entire amount of the Allowed Priority Tax Claim, or (iii) by mutual agreement of the holder of such Allowed Priority Tax Claim and the Disbursing Agent.

    3.4    **Statutory Fees:** All fees payable under section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or as soon as reasonably practicable following the Effective Date.

    3.5    **Administrative Tax Claims:** Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, a governmental unit shall not be required to file, make or submit a request for payment (or any document, including, without limitation, a bill) of an expense described in section 503(b)(1)(B) or (C) of the Bankruptcy Code as a condition of its being an Allowed Administrative Expense Claim, and the Disbursing Agent shall pay in full all such Allowed Administrative Expense Claims, including any interest related thereto, when due.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests are classified as follows:

    4.1    **Class 1**        **Priority Non-Tax Claims**

| 4.2 | Class 2 | **Senior Notes Claims** |
| 4.3 | Class 3 | **Senior Subordinated Notes Claims** |
| 4.4 | Class 4 | **WMI Medical Plan Claims** |
| 4.5 | Class 5 | **JPMC Rabbi Trust/Policy Claims** |
| 4.6 | Class 6 | **Other Benefit Plan Claims** |
| 4.7 | Class 7 | **Qualified Plan Claims** |
| 4.8 | Class 8 | **WMB Vendor Claims** |
| 4.9 | Class 9 | **Visa Claims** |
| 4.10 | Class 10 | **Bond Claims** |
| 4.11 | Class 11 | **WMI Vendor Claims** |
| 4.12 | Class 12 | **General Unsecured Claims** |
| | Class 12A | **Late-Filed Claims** |
| 4.13 | Class 13 | **Convenience Claims** |
| 4.14 | Class 14 | **CCB-1 Guarantees Claims** |
| 4.15 | Class 15 | **CCB-2 Guarantees Claims** |
| 4.16 | Class 16 | **PIERS Claims** |
| 4.17 | Class 17A | **WMB Senior Notes Claims** |
| | Class 17B | **WMB Subordinated Notes Claims** |
| 4.18 | Class 18 | **Subordinated Claims** |
| 4.19 | Class 19 | **Preferred Equity Interests** |
| 4.20 | Class 20 | **Intentionally Left Blank** |
| 4.21 | Class 21 | **Dime Warrants** |
| 4.22 | Class 22 | **Common Equity Interests** |

## ARTICLE V

## PROVISION FOR TREATMENT OF PRIORITY NON-TAX CLAIMS (CLASS 1)

5.1     **Payment of Allowed Priority Non-Tax Claims:**  Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Debtors, on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, the Disbursing Agent shall pay to each holder of an Allowed Priority Non-Tax Claim, in Cash, the full amount of such Allowed Priority Non-Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Priority Non-Tax Claim.

## ARTICLE VI

## PROVISION FOR TREATMENT OF SENIOR NOTES CLAIMS (CLASS 2)

6.1     **Treatment of Senior Notes Claims:**

(a)     _Fixed Rate Notes._  Commencing on the Effective Date, and subject to the rights of election described in Section 6.2 below, each holder of an Allowed Senior Notes Claim relating to a Fixed Rate Note shall receive, in full satisfaction, release and exchange of such holder's Allowed Senior Notes Claim, Intercreditor Interest Claim and Postpetition Interest Claim (which, for the avoidance of doubt, on the Confirmation Date, shall be finally determined

to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person), subject to the Lien or priority rights of the Senior Notes Indenture Trustee, such holder's Pro Rata Share of (i) Creditor Cash and (ii) Liquidating Trust Interests, in an aggregate amount equal to such holder's Allowed Senior Notes Claim and Intercreditor Interest Claim.

(b)     Floating Rate Notes. Commencing on the Effective Date, and subject to the rights of election described in Section 6.2 below, each holder of an Allowed Senior Notes Claim relating to a Floating Rate Note shall receive, in full satisfaction, release and exchange of such holder's Allowed Senior Notes Claim, Intercreditor Interest Claim and Postpetition Interest Claim (which, for avoidance of doubt, on the Confirmation Date, shall be finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person), subject to the Lien or priority rights of the Senior Notes Indenture Trustee, such holder's Pro Rata Share of (i) Creditor Cash and (ii) Liquidating Trust Interests, in an aggregate amount equal to such holder's Allowed Senior Notes Claim, Intercreditor Interest Claim and Remaining Postpetition Interest Claim.

In consideration for, and subject in all respects to the grant and approval of, the third party release being granted by each holder of a Preferred Equity Interest, Dime Warrant and Common Equity Interest executing and delivering a release in accordance with Section 41.6 hereof, on the Effective Date, from the initial distributions of Creditor Cash referred to above and to be made in accordance with Section 31.1(a) of the Plan, each holder of an Allowed Senior Notes Claim, whether relating to a Fixed Rate Note or a Floating Rate Note, shall contribute Cash to Reorganized WMI, for and on behalf of each such holder of a Preferred Equity Interest, Dime Warrant and Common Equity Interest, in an amount equal to Nine Hundred Sixty-Eight Thousandths of one percent (0.968%) of such holder's Allowed Senior Notes Claim (in the aggregate amount for all Allowed Senior Notes Claim, Forty Million Dollars ($40,000,000.00)); and, provided, further, that, for the avoidance of doubt, with respect to the foregoing provision, "Allowed Senior Notes Claim" shall mean the principal amount of such Senior Notes Claim and interest accrued thereon, remaining unpaid and relating to the period up to and including the Petition Date; and, provided, further, that, for the avoidance of doubt, for the applicability of the contractual subordination provisions referred to below, such contributions shall not be recouped through the enforcement of any such contractual subordination provision. Subject to the foregoing sentence, each holder of an Allowed Senior Notes Claim shall be entitled to receive on account of such Allowed Senior Notes Claim and, irrespective of whether all Allowed Claims are paid in full, such holder's Intercreditor Interest Claim and, if applicable, Remaining Postpetition Interest Claim, redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and, subject to the provisions of Section 31.14 of the Plan, Runoff Notes. The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, Intercreditor Interest Claims, Remaining Postpetition Interest Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and

subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H".

6.2    **Rights of Election:**

(a)    Runoff Notes Election. On the Ballot, and subject to the provisions of Section 31.14 of the Plan, each holder of an Allowed Senior Notes Claim shall be provided the right to elect, in its sole and absolute discretion, to receive Runoff Notes, in lieu of some or all of the Creditor Cash that such holder otherwise is entitled to receive on the Effective Date pursuant to the provisions of Section 31.1(a) of the Plan, subject to the Lien or priority rights of the Senior Notes Indenture Trustee. To the extent that, on the Effective Date, a holder of an Allowed Senior Notes Claim receives Runoff Notes, such holder's distribution of Creditor Cash to be received on the Effective Date shall be reduced on a dollar-for-dollar basis by the original principal amount of the Runoff Notes received.

(b)    Reorganized Common Stock Election. On the Ballot, each holder of an Allowed Senior Notes Claim that elected to receive Runoff Notes in accordance with the provisions of Section 6.2(a) of the Plan shall be provided the right to elect, in its sole and absolute discretion, to receive such holder's Pro Rata Share of the Common Stock Allotment in lieu of (i) fifty percent (50%) of such holder's Litigation Proceeds Interest (solely in its capacity as a holder of an Allowed Senior Notes Claim) and (ii) subject to the provisions of Section 31.14 of the Plan, some or all of the Runoff Notes that such holder otherwise is entitled to and has elected to receive pursuant to Section 6.2(a) of the Plan. To the extent a holder of an Allowed Senior Notes Claim receives Reorganized Common Stock pursuant to the foregoing election, such holder's share of the Runoff Notes to which the election was effective shall not be issued and Reorganized WMI shall retain an economic interest in the Litigation Proceeds (and such interest shall not constitute a component of the Liquidating Trust Assets) equal to fifty percent (50%) of the Litigation Proceeds such holder otherwise would have received (solely in its capacity as a holder of an Allowed Senior Notes Claim) (and the holder's rights in respect of distributions from the Liquidating Trust shall be adjusted to the extent such proceeds are received by Reorganized WMI).

Failure by any holder of an Allowed Senior Notes Claim to elect to exercise rights provided in this Section 6.2 on or before the Ballot Date shall constitute a deemed waiver and relinquishment of such rights by such holder. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is waived, in writing, by the Debtors; provided, however, that under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

6.3    **Limitation on Recovery:** Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed Senior Notes Claim in accordance with Section 6.1 of the Plan, in the event that the sum of (i) distributions of Runoff Notes, Creditor Cash, Cash received on account of Liquidating Trust Interests and Reorganized Common Stock in accordance with Sections 6.1 and 6.2 and (ii), redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests, and, subject to the provisions of Section 31.14 of the Plan, Runoff Notes, in accordance with the enforcement, pursuant to section 510(a) of the Bankruptcy Code, of contractual subordination provisions, as set forth in the Subordination Model attached hereto as Exhibit "H", are equal to

or in excess of one hundred percent (100%) of such holder's Allowed Senior Notes Claim, Intercreditor Interest Claim and, with respect to the Floating Rate Notes, Remaining Postpetition Interest Claim, (inclusive of monies tendered by holders of Allowed Senior Notes Claims in connection with the Senior Notes Release Consideration), the Cash or, subject to the provisions of Section 31.14 of the Plan, Runoff Notes received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims or Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H". Notwithstanding anything contained herein to the contrary, for the avoidance of doubt, the subrogation rights with respect to Allowed Senior Notes Claims shall be preserved.

## ARTICLE VII

## PROVISION FOR TREATMENT OF
## SENIOR SUBORDINATED NOTES CLAIMS (CLASS 3)

7.1    **Treatment of Senior Subordinated Notes Claims:** Commencing on the Effective Date, and subject to the rights of election described in Section 7.2 below, each holder of an Allowed Senior Subordinated Notes Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Senior Subordinated Notes Claim, Intercreditor Interest Claim and Postpetition Interest Claim (which, for the avoidance of doubt, on the Confirmation Date shall be finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person), subject to the Lien or priority rights of the Senior Subordinated Notes Indenture Trustee, such holder's Pro Rata Share of (i) Creditor Cash and (ii) Liquidating Trust Interests, in an aggregate amount equal to (a) such holder's Allowed Senior Subordinated Notes Claim and (b) such holder's Intercreditor Interest Claim; provided, however, that any distribution to holders of Allowed Senior Subordinated Notes Claims of (a) Creditor Cash, (b) Cash received on account of Liquidating Trust Interests and (c) Runoff Notes (to the extent elected pursuant to Section 7.2 of the Plan), shall be redistributed, subject to Bankruptcy Rule 3021 and subject to any Lien or priority rights of the Senior Subordinated Notes Indenture Trustee, in accordance with the priorities set forth in the Subordination Model attached hereto as Exhibit "H"; provided, however, that, in consideration for, and subject in all respects to the grant and approval of, the third party release being granted by each holder of a Preferred Equity Interest, Dime Warrant and Common Equity Interest executing and delivering a release in accordance with Section 41.6 hereof, on the Effective Date, from the initial distributions of Creditor Cash referred to above and to be made in accordance with Section 31.1(a) of the Plan, each holder of an Allowed Senior Subordinated Notes Claim shall contribute Cash to Reorganized WMI, for and on behalf of each holder of a Preferred Equity Interest, Dime Warrant and Common Equity Interest, in an amount equal to Two and One-Tenth percent of (2.1%) of such holder's Allowed Senior Subordinated Notes Claim (in the aggregate amount for all Allowed Senior Subordinated Notes Claims, Thirty Five Million Dollars ($35,000,000.00)); and, provided, further, that, for the avoidance of doubt, with respect to the foregoing provision, "Allowed Senior Subordinated Notes Claim" shall mean the principal amount of such Senior Notes Claim and interest accrued thereon, remaining unpaid and relating to the period up to and including the Petition Date; and, provided, further, that,

notwithstanding the applicability of the contractual subordination provisions referred to below, such contributions shall not be recouped through the enforcement of any such contractual subordination provision. Subject to the foregoing sentence, each holder of an Allowed Senior Subordinated Notes Claim shall be entitled to receive on account of such Allowed Senior Subordinated Notes Claim and, irrespective of whether all Allowed Claims are paid in full, such holder's Intercreditor Interest Claim, redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and Runoff Notes. The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, Intercreditor Interest Claims, Remaining Postpetition Interest Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H".

      7.2    **Rights of Election:**

          (a)     Runoff Notes Election. On the Ballot, and subject to the provisions of Section 31.14 of the Plan, each holder of an Allowed Senior Subordinated Notes Claim shall be provided the right to elect, in its sole and absolute discretion, to receive Runoff Notes, in lieu of some or all of the Creditor Cash that such holder otherwise is entitled to receive on the Effective Date pursuant to the provisions of Section 31.14 of the Plan, subject to the Lien or priority rights of the Senior Subordinated Notes Indenture Trustee. To the extent that, on the Effective Date, a holder of an Allowed Senior Subordinated Notes Claim receives Runoff Notes, such holder's distribution of Creditor Cash to be received on the Effective Date shall be reduced on a dollar-for-dollar basis by the original principal amount of the Runoff Notes received.

          (b)     Reorganized Common Stock Election. On the Ballot, each holder of an Allowed Senior Subordinated Notes Claim that elected to receive Runoff Notes in accordance with the provisions of Section 7.2(a) of the Plan shall be provided the right to elect, in its sole and absolute discretion, to receive such holder's Pro Rata Share of the Common Stock Allotment in lieu of (i) fifty percent (50%) of such holder's Litigation Proceeds Interest (solely in its capacity as a holder of an Allowed Senior Subordinated Claim) and (ii) subject to the provisions of Section 31.14 of the Plan, some or all of the Runoff Notes that such holder otherwise is entitled to and has elected to receive pursuant to Section 7.2(a) of the Plan. To the extent that a holder of an Allowed Senior Subordinated Notes Claim receives Reorganized Common Stock pursuant to the foregoing election, such holder's share of the Runoff Notes to which the election was effective shall not be issued and Reorganized WMI shall retain an economic interest in the Litigation Proceeds (and such interest shall not constitute a component of the Liquidating Trust Assets) equal to fifty percent (50%) of the Litigation Proceeds such holder otherwise would have received (solely in its capacity as a holder of an Allowed Senior Subordinated Notes Claim) (and the holder's rights in respect of distributions from the Liquidating Trust shall be adjusted to the extent such proceeds are received by Reorganized WMI).

Failure by any holder of an Allowed Senior Subordinated Notes Claim to elect to exercise rights provided in this Section 7.2 on or before the Ballot Date shall constitute a deemed waiver and

relinquishment of such rights by such holder. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is waived, in writing, by the Debtors; provided, however, that under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

7.3    **Limitation on Recovery**: Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed Senior Subordinated Notes Claim in accordance with Section 7.1 of the Plan, in the event that the sum of (i) distributions of Runoff Notes, Creditor Cash, Cash received on account of Liquidating Trust Interests and Reorganized Common Stock in accordance with Sections 7.1 and 7.2 of the Plan, (ii) redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and Runoff Notes, in accordance with the enforcement, pursuant to section 510(a) of the Bankruptcy Code, of contractual subordination provisions, as set forth in the Subordination Model attached hereto as Exhibit "H", and (iii) redistributions of Cash received on account of Liquidating Trust Interests in accordance with the provisions of Section 6.3 herein are equal to or in excess of one hundred percent (100%) of such holder's Allowed Senior Subordinated Notes Claim and Intercreditor Interest Claim, (inclusive of monies tendered by holders of Allowed Senior Subordinated Notes Claims in connection with the Senior Subordinated Notes Release Consideration), the Cash or, subject to the provisions of Section 31.14 of the Plan, Runoff Notes received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims or Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H". Notwithstanding anything contained herein to the contrary, for the avoidance of doubt, the subrogation rights with respect to Allowed Senior Subordinated Notes Claims shall be preserved.

## ARTICLE VIII

## PROVISION FOR TREATMENT OF WMI MEDICAL PLAN CLAIMS (CLASS 4)

8.1    **Treatment of WMI Medical Plan Claims**: Commencing on the Effective Date, JPMC shall pay or fund the payment of all WMI Medical Plan Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE IX

## PROVISION FOR TREATMENT OF
## JPMC RABBI TRUST/POLICY CLAIMS (CLASS 5)

9.1    **Treatment of JPMC Rabbi Trust/Policy Claims**: On the Effective Date, JPMC shall commence to evaluate each of the JPMC Rabbi Trust/Policy Claims in accordance with the Global Settlement Agreement, the Plan and the Confirmation Order, and, upon determination thereof, shall pay or fund the payment of all JPMC Rabbi Trust/Policy Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE X

## PROVISION FOR TREATMENT OF
## OTHER BENEFIT PLAN CLAIMS (CLASS 6)

10.1    **Treatment of Other Benefit Plan Claims:** Commencing on the Effective Date, JPMC shall pay or fund the payment of all Other Benefit Plan Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE XI

## PROVISION FOR TREATMENT OF QUALIFIED PLAN CLAIMS (CLASS 7)

11.1    **Treatment of Qualified Plan Claims:** Commencing on the Effective Date, JPMC shall pay or fund the payment of all Qualified Plan Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE XII

## PROVISION FOR TREATMENT OF WMB VENDOR CLAIMS (CLASS 8)

12.1    **Treatment of WMB Vendor Claims:** Commencing on the Effective Date, JPMC shall pay or otherwise satisfy all Allowed WMB Vendor Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE XIII

## PROVISION FOR TREATMENT OF VISA CLAIMS (CLASS 9)

13.1    **Treatment of Visa Claims:** Commencing on the Effective Date, JPMC shall pay or fund the payment of all Visa Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE XIV

## PROVISION FOR TREATMENT OF BOND CLAIMS (CLASS 10)

14.1    **Treatment of Bond Claims:** Commencing on the Effective Date, JPMC shall pay or fund the payment of all Bond Claims, in full satisfaction, release and exchange of such Claims.

## ARTICLE XV

## PROVISION FOR TREATMENT OF WMI VENDOR CLAIMS (CLASS 11)

15.1    **Treatment of WMI Vendor Claims:** Commencing on the Effective Date, each holder of an Allowed WMI Vendor Claim shall receive, in full satisfaction, release and exchange of such holder's WMI Vendor Claim, payment in Cash from the Vendor Escrow.

# ARTICLE XVI

## PROVISION FOR TREATMENT OF GENERAL UNSECURED CLAIMS (CLASS 12)

### 16.1    <u>Class 12 – General Unsecured Claims</u>:

(a)    <u>Treatment of General Unsecured Claims</u>.  Commencing on the Effective Date, and subject to the right of election described in Section 16.1(b) below, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed General Unsecured Claim and Postpetition Interest Claim, such holder's Pro Rata Share of (i) Creditor Cash and (ii) Liquidating Trust Interests, in an aggregate amount equal to (a) such holder's Allowed General Unsecured Claim and (b) in the event that all Allowed Claims (other than Subordinated Claims) are paid in full, such holder's Postpetition Interest Claim; provided, however, that, pursuant to the terms of the Global Settlement Agreement, and as partial consideration for the releases set forth in Article XLI herein, upon the Effective Date, JPMC shall be deemed to have waived its right to receive any distribution on account of the JPMC Allowed Unsecured Claim, including, without limitation, the right to elect to receive Runoff Notes, pursuant to Section 16.1(b) below.  The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, Intercreditor Interest Claims, Remaining Postpetition Interest Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H"; provided, however, that such claims shall be subject to, among other things, reduction, offset or disallowance on account of counterclaims, to the extent applicable, including, but not limited to, the right of the Liquidating Trustee to pursue Avoidance Actions.

(b)    <u>Rights of Election</u>.

(i)    <u>Runoff Notes Election</u>.  On the Ballot, and subject to the provisions of Section 31.14 of the Plan, each holder of a General Unsecured Claim shall be provided the right to elect, in its sole and absolute discretion, to receive Runoff Notes in lieu of some or all of the Creditor Cash that such holder otherwise is entitled to receive on the Effective Date pursuant to the provisions of Section 31.1(a) of the Plan.  To the extent that, on the Effective Date, a holder of an Allowed General Unsecured Claim receives Runoff Notes, such holder's distribution of Creditor Cash to be received on the Effective Date shall be reduced on a dollar-for-dollar basis by the original principal amount of the Runoff Notes received.

(ii)    <u>Reorganized Common Stock Election</u>.  On the Ballot, each holder of an Allowed General Unsecured Claim that elected to receive Runoff Notes in accordance with the provisions of Section 16.1(b)(i) of the Plan shall be provided the right to elect, in its sole and absolute discretion, to receive such holder's Pro Rata Share of the Common Stock Allotment, in lieu of (i) fifty percent (50%) of such holder's Litigation Proceeds Interest (solely in its capacity as a holder of an Allowed General Unsecured Claim) and (ii) subject to the provisions of Section 31.14 of the Plan, some or all of the Runoff Notes that such holder

otherwise is entitled to and has elected to receive pursuant to Section 16.1(b)(i) of the Plan. To the extent a holder of an Allowed General Unsecured Claim receives Reorganized Common Stock pursuant to the foregoing election, such holder's share of the Runoff Notes to which the election was effective shall not be issued and Reorganized WMI shall retain an economic interest in the Litigation Proceeds (and such interest shall not constitute a component of the Liquidating Trust Assets) equal to fifty percent (50%) of the Litigation Proceeds such holder otherwise would have received (solely in its capacity as a holder of an Allowed General Unsecured Claim) (and the holder's rights in respect of distributions from the Liquidating Trust shall be adjusted to the extent such proceeds are received by Reorganized WMI).

Failure by any holder of an Allowed General Unsecured Claim to elect to exercise rights provided in this Section 16.1(b) on or before the Ballot Date shall constitute a deemed waiver and relinquishment of such rights by such holder. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is waived, in writing, by the Debtors; provided, however, that under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

      (c)      Allowed Claims of Fifty Thousand Dollars ($50,000.00) or More/Election to be Treated as a Convenience Claim. Notwithstanding the provisions of Section 16.1 of the Plan, any holder of an Allowed General Unsecured Claim, other than a General Unsecured Claim that is a component of a larger General Unsecured Claim, portions of which may be held by such or any other holder of an Allowed Claim, whose Allowed General Unsecured Claim is more than Fifty Thousand Dollars ($50,000.00), and who elects to reduce the amount of such Allowed General Unsecured Claim to Fifty Thousand Dollars ($50,000.00), shall, at such holder's option, be entitled to receive, based on such Allowed General Unsecured Claim as so reduced, distributions pursuant to Section 17.1 hereof. Such election must be made on the Ballot and be received by the Debtors on or prior to the Ballot Date. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

      16.2      **Class 12A – Late-Filed Claims:** Commencing on the Effective Date, and subject to the priorities set forth in the Subordination Model, each holder of an Allowed Late-Filed Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Late-Filed Claim and Postpetition Interest Claim, such holder's Pro Rata Share of Liquidating Trust Interests, in an aggregate amount equal to (a) such holder's Allowed Late-Filed Claim and (b) in the event that all Allowed Claims (other than Subordinated Claims) are paid in full, such holder's Postpetition Interest Claim, which interests shall entitle such holder to distributions from the Liquidating Trust after all Allowed Unsecured Claims are paid in full (but prior to payment of Subordinated Claims). The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H". Holders of Late-Filed

Claims are not entitled to elect to have their Late-Filed Claims treated as Convenience Claims pursuant to Section 16.1(c) hereof.

16.3 **Limitation on Recovery:** Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed General Unsecured Claim or an Allowed Late Filed Claim in accordance with Sections 16.1 and 16.2 of the Plan, as applicable, in the event that the sum of the distributions of Runoff Notes, Creditor Cash, Cash received on account of Liquidating Trust Interests and Reorganized Common Stock in accordance with Sections 16.1 or 16.2 are equal to or in excess of one hundred percent (100%) of such holder's Allowed General Unsecured Claim and Postpetition Interest Claim or Allowed Late-Filed Claim and Postpetition Interest Claim, as the case may be, the Cash or, subject to the provisions of Section 31.14 of the Plan, Runoff Notes received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims or Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H".

## ARTICLE XVII

## PROVISION FOR TREATMENT OF CONVENIENCE CLAIMS (CLASS 13)

17.1 **Treatment of Convenience Claims:** On the later of the Effective Date and the date such Allowed Convenience Claim becomes an Allowed Claim, or as soon thereafter as is practicable, the Disbursing Agent shall pay to each holder of an Allowed Convenience Claim, in Cash, the full amount of such Allowed Convenience Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Convenience Claim.

## ARTICLE XVIII

## PROVISION FOR TREATMENT OF
## CCB-1 GUARANTEES CLAIMS (CLASS 14)

18.1 **Treatment of CCB-1 Guarantees Claims:** Commencing on the Effective Date, and subject to the right of election described in Section 18.2 below, each holder of an Allowed CCB-1 Guarantees Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed CCB-1 Guarantees Claim, Intercreditor Interest Claim and Postpetition Interest Claim (which, for the avoidance of doubt, on the Confirmation Date shall be finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person), subject to the Lien or priority rights of the CCB-1 Trustee, such holder's Pro Rata Share of (i) Creditor Cash and (ii) Liquidating Trust Interests, in an aggregate amount equal to (a) such holder's Allowed CCB-1 Guarantees Claim and (b) such holder's Intercreditor Interest Claim; provided, however, that, notwithstanding the foregoing, the contractual subordination and subrogation rights of Entities who hold CCB-1 Preferred Securities shall be preserved and enforced hereunder pursuant to section 510(a) of the Bankruptcy Code and any proposed distribution on account of the CCB-1 Common Securities of (i) Runoff Notes, (ii) Creditor Cash

and (iii) Cash on account of Liquidating Trust Interests shall be recalculated and then distributed, subject to Bankruptcy Rule 3021 and subject to the Lien and priority rights of the CCB-1 Trustee, to Entities who hold CCB-1 Preferred Securities, or Liquidating Trust Interests on account thereof, until such time as such Entities' Allowed CCB-1 Guarantees Claims, Intercreditor Interest Claims and Postpetition Interest Claims have been satisfied in accordance with the terms and provisions of the trust agreements related to such securities; and, provided, further, that, following such distribution to holders of CCB-1 Common Securities, in accordance with the Global Settlement Agreement, the Receivership shall not retain any such distribution and the Liquidating Trust shall redistribute such distribution in accordance with the priorities set forth in the Subordination Model attached hereto as Exhibit "H"; and, provided, however, that, following the distribution to CCB-1 Preferred Securities referred to above, any remaining distribution to holders of Allowed CCB-1 Guarantees Claims of (a) Creditor Cash, (b) Cash received on account of Liquidating Trust Interests, and (c) Runoff Notes (to the extent elected pursuant to Section 18.2) shall be distributed, subject to Bankruptcy Rule 3021 and subject to the Lien or priority rights of the CCB-1 Trustee, in accordance with the priorities set forth in the Subordination Model attached hereto as Exhibit "H". In addition, in accordance with the Subordination Model attached hereto as Exhibit "H", each holder of an Allowed CCB-1 Guarantees Claim shall be entitled to receive on account of such Allowed CCB-1 Guarantees Claim and, irrespective of whether all Allowed Claims are paid in full, such holder's Intercreditor Interest Claim, redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and Runoff Notes. The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, Intercreditor Interest Claims, Remaining Postpetition Interest Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H".

### 18.2   **Rights of Election:**

(a)   <u>Runoff Notes Election</u>. On the Ballot, and subject to the provisions of Section 31.14 of the Plan, each holder of an Allowed CCB-1 Guarantees Claim shall be provided the right to elect, in its sole and absolute discretion, to receive Runoff Notes, in lieu of some or all of the Creditor Cash that such holder otherwise is entitled to receive on the Effective Date pursuant to the provisions of Section 31.1(a) of the Plan, subject to the Lien or priority rights of the CCB-1 Trustee. To the extent that, on the Effective Date, a holder of an Allowed CCB-1 Guarantees Claim receives Runoff Notes such holder's distribution of Creditor Cash to be received on the Effective Date shall be reduced on a dollar-for-dollar basis by the original principal amount of the Runoff Notes received.

(b)   <u>Reorganized Common Stock Election</u>. On the Ballot, each holder of an Allowed CCB-1 Guarantees Claim that elected to receive Runoff Notes in accordance with the provisions of Section 18.2(a) of the Plan shall be provided the right to elect, in its sole and absolute discretion, to receive such holder's Pro Rata Share of the Common Stock Allotment, in lieu of (i) fifty percent (50%) of such holder's Litigation Proceeds Interest (solely in its capacity as a holder of an Allowed CCB-1 Guarantees Claim) and (ii) subject to the provisions of Section

31.14 of the Plan, some or all of the Runoff Notes that such holder otherwise is entitled to and has elected to receive pursuant to Section 18.2(a) of the Plan. To the extent a holder of an Allowed CCB-1 Guarantees Claim receives Reorganized Common Stock pursuant to the foregoing election, such holder's share of the Runoff Notes to which the election was effective shall not be issued and Reorganized WMI shall retain an economic interest in the Litigation Proceeds (and such interest shall not constitute a component of the Liquidating Trust Assets) equal to fifty percent (50%) of the Litigation Proceeds such holder otherwise would have received (solely in its capacity as a holder of an Allowed CCB-1 Guarantees Claim) (and the holder's rights in respect of distributions from the Liquidating Trust shall be adjusted to the extent such proceeds are received by Reorganized WMI).

Failure by any holder of an Allowed CCB-1 Guarantees Claim to elect to exercise rights provided in this Section 18.2 on or before the Ballot Date shall constitute a deemed waiver and relinquishment of such rights by such holder. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is waived, in writing, by the Debtors; provided, however, that under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

       18.3   **Limitation on Recovery**: Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed CCB-1 Guarantees Claim in accordance with Section 18.1 of the Plan, in the event that the sum of (i) distributions of Runoff Notes, Creditor Cash, Cash received on account of Liquidating Trust Interests and Reorganized Common Stock in accordance with Sections 18.1 and 18.2, (ii) redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and Runoff Notes, in accordance with the enforcement, pursuant to section 510(a) of the Bankruptcy Code, of contractual subordination provisions, as set forth in the Subordination Model attached hereto as Exhibit "H", (iii) redistributions of Cash received on account of Liquidating Trust Interests in accordance with the provisions of Sections 6.3 or 7.3 herein and (iv) distributions from the Receivership are equal to or in excess of one hundred percent (100%) of such holder's Allowed CCB-1 Guarantees Claim and Intercreditor Interest Claim, the Cash or, subject to the provisions of Section 31.14 of the Plan, Runoff Notes received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims or Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H". Notwithstanding anything contained herein to the contrary, for the avoidance of doubt, the subrogation rights with respect to Allowed CCB-1 Guarantees Claims shall be preserved.

## ARTICLE XIX

## PROVISION FOR TREATMENT OF CCB-2 GUARANTEES CLAIMS (CLASS 15)

       19.1   **Treatment of CCB-2 Guarantees Claims**: Commencing on the Effective Date, and subject to the right of election described in Section 19.2 below, each holder of an Allowed CCB-2 Guarantees Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed CCB-2 Guarantees Claim, Intercreditor Interest Claim and Postpetition

Interest Claim (which, for the avoidance of doubt, on the Confirmation Date shall be finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person), subject to the Lien or priority rights of the CCB-2 Trustees, such holder's Pro Rata Share of (i) Creditor Cash and (ii) Liquidating Trust Interests, in an aggregate amount equal to (a) such holder's Allowed CCB-2 Guarantees Claim and (b) such holder's Intercreditor Interest Claim; provided, however, that, notwithstanding the foregoing, the contractual subordination and subrogation rights of Entities who hold CCB-2 Preferred Securities shall be preserved and enforced hereunder pursuant to section 510(a) of the Bankruptcy Code and any proposed distribution on account of the CCB-2 Common Securities of (i) Runoff Notes, (ii) Creditor Cash and (iii) Cash on account of Liquidating Trust Interests shall be recalculated and then distributed, subject to Bankruptcy Rule 3021 and subject to the Lien and priority rights of the CCB-2 Trustees, to Entities who hold CCB-2 Preferred Securities, or Liquidating Trust Interests on account thereof, until such time as such Entities' Allowed CCB-2 Guarantees Claims and Postpetition Interest Claims have been satisfied in accordance with the terms and provisions of the trust agreements related to such securities; and, provided, further, that, following such distribution to holders of the CCB-2 Common Securities, in accordance with the Global Settlement Agreement, the Receivership shall not retain any such distribution and the Liquidating Trustee shall redistribute such distributions in accordance with the priorities set forth in the Subordination Model attached hereto as Exhibit "H"; and provided, further, that, following the distribution to CCB-2 Preferred Securities referred to above, any remaining distribution to holders of Allowed CCB-2 Guarantees Claims of (a) Creditor Cash, (b) Cash received on account of Liquidating Trust Interests, and (c) Runoff Notes (to the extent elected pursuant to Section 19.2), shall be distributed, subject to Bankruptcy Rule 3021 and subject to the Lien or priority rights of the CCB-2 Trustees, in accordance with the priorities set forth in the Subordination Model attached hereto as Exhibit "H". In addition, in accordance with the Subordination Model attached hereto as Exhibit "H", each holder of an Allowed CCB-2 Guarantees Claim shall be entitled to receive on account of such Allowed CCB-2 Guarantees Claim and, irrespective of whether all Allowed Claims are paid in full, such holder's Intercreditor Interest Claim, redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and Runoff Notes. The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, Intercreditor Interest Claims, Remaining Postpetition Interest Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H".

19.2    **Rights of Election:**

(a)    Runoff Notes Election. On the Ballot, and subject to the provisions of Section 31.14 of the Plan, each holder of an Allowed CCB-2 Guarantees Claim shall be provided the right to elect, in its sole and absolute discretion, to receive Runoff Notes, in lieu of some or all of the Creditor Cash that such holder otherwise is entitled to receive on the Effective Date pursuant to the provisions of Section 31.1(a) of the Plan, subject to the Lien or

priority rights of the CCB-2 Trustees. To the extent that, on the Effective Date, a holder of an Allowed CCB-2 Guarantees Claim receives Runoff Notes, such holder's distribution of Creditor Cash to be received on the Effective Date shall be reduced on a dollar-for-dollar basis by the original principal amount of the Runoff Notes received.

        (b)    <u>Reorganized Common Stock Election</u>. On the Ballot, each holder of an Allowed CCB-2 Guarantees Claim that elected to receive Runoff Notes in accordance with the provisions of Section 19.2(a) of the Plan shall be provided the right to elect, in its sole and absolute discretion, to receive such holder's Pro Rata Share of the Common Stock Allotment, in lieu of (i) fifty percent (50%) of such holder's Litigation Proceeds Interest (solely in its capacity as a holder of an Allowed CCB-2 Guarantees Claim) and (ii) subject to the provisions of Section 31.14 of the Plan, some or all of the Runoff Notes that such holder otherwise is entitled to and has elected to receive pursuant to Section 19.2(a) of the Plan. To the extent a holder of an Allowed CCB-2 Guarantees Claim receives Reorganized Common Stock pursuant to the foregoing election, such holder's share of the Runoff Notes to which the election was effective shall not be issued and Reorganized WMI shall retain an economic interest in the Litigation Proceeds (and such interest shall not constitute a component of Liquidating Trust Assets) equal to fifty percent (50%) of the Litigation Proceeds such holder otherwise would have received (solely in its capacity as a holder of an Allowed CCB-2 Guarantees Claim) (and the holder's rights in respect of distributions from the Liquidating Trust shall be adjusted to the extent such proceeds are received by Reorganized WMI).

Failure by any holder of an Allowed CCB-2 Guarantees Claim to elect to exercise rights provided in this Section 19.2 on or before the Ballot Date shall constitute a deemed waiver and relinquishment of such rights by such holder. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is waived, in writing, by the Debtors; <u>provided</u>, <u>however</u>, that under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

        19.3    **Limitation on Recovery**: Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed CCB-2 Guarantees Claim in accordance with Section 19.1 of the Plan, in the event that the sum of (i) distributions of Runoff Notes, Creditor Cash, Cash received on account Liquidating Trust Interests and Reorganized Common Stock in accordance with Sections 19.1 and 19.2, (ii) redistributions of Creditor Cash, Cash received on account of Liquidating Trust Interests and Runoff Notes, in accordance with the enforcement, pursuant to section 510(a) of the Bankruptcy Code, of contractual subordination provisions, as set forth in the Subordination Model attached hereto as Exhibit "H", (iii) redistributions of Cash received on account of Liquidating Trust Interests in accordance with the provisions of Sections 6.3 or 7.3 and (iv) distributions from the Receivership are equal to or in excess of one hundred percent (100%) of such holder's Allowed CCB-2 Guarantees Claim and Intercreditor Interest Claim, the Cash or, subject to the provisions of Section 31.14 of the Plan, Runoff Notes received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims or Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H". Notwithstanding anything contained herein to the contrary, for the

avoidance of doubt, the subrogation rights with respect to Allowed CCB-2 Guarantees Claims shall be preserved.

## ARTICLE XX

## PROVISION FOR TREATMENT OF PIERS CLAIMS (CLASS 16)

20.1 **Treatment of PIERS Claims:** Commencing on the Effective Date, each holder of an Allowed PIERS Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed PIERS Claim and Postpetition Interest Claim (which, for the avoidance of doubt, on the Confirmation Date shall be finally determined to not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross claim, defense, disallowance, impairment, objection, or challenge under applicable law or regulation by any person), subject to the Lien or priority rights of the PIERS Trustee, such holder's Pro Rata Share of (i) Runoff Notes (subject to the provisions of Section 31.14 of the Plan and to the extent remaining after distribution to holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Allowed Senior Subordinated Notes Claims, Allowed CCB-1 Guarantees Claims, and Allowed CCB-2 Guarantees Claims), (ii) Creditor Cash and (iii) Liquidating Trust Interests, in an aggregate amount equal to (a) such holder's Allowed PIERS Claim and (b) in the event that all Allowed Claims (other than Subordinated Claims) are paid in full, such holder's Postpetition Interest Claim; provided, however, that, notwithstanding the foregoing, the contractual subordination and subrogation rights of Entities who hold PIERS Preferred Securities shall be preserved and enforced hereunder pursuant to section 510(a) of the Bankruptcy Code and any proposed distribution on account of the PIERS Common Securities of (i) Runoff Notes, (ii) Creditor Cash and (iii) Cash on account of Liquidating Trust Interests shall be recalculated and then distributed, subject to Bankruptcy Rule 3021 and subject to the Lien and priority rights of the PIERS Trustee, to Entities who hold PIERS Preferred Securities, or Liquidating Trust Interests on account thereof, until such time as such Entities' Allowed PIERS Claims and Postpetition Interest Claims have been satisfied in accordance with the terms and provisions of the PIERS Trust Agreement; and, provided, further, that, following such distributions to holders of the PIERS Preferred Securities, WMI shall not retain any distribution on account of the PIERS Common Securities, including, without limitation, the Runoff Notes; and, provided, further, that, following the distribution to PIERS Preferred Securities referred to above, any remaining distribution of (a) Creditor Cash, (b) Cash received on account of Liquidating Trust Interests, and (c) Runoff Notes, shall be distributed, subject to Bankruptcy Rule 3021 and subject to the Lien or priority rights of the PIERS Trustee, in accordance with the priorities set forth in the Subordination Model attached hereto as Exhibit "H". The relative priorities among holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and Allowed Late-Filed Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, Intercreditor Interest Claims, Remaining Postpetition Interest Claims and Postpetition Interest Claims, including, without limitation, on account of contractual subordination and subrogation provisions, are set forth in more detail in the Subordination Model attached hereto as Exhibit "H"

20.2 **Reorganized Common Stock Election:** On the Ballot, each holder of an Allowed PIERS Claim shall be provided the right to elect, in its sole and absolute discretion, to receive such holder's Pro Rata Share of the Common Stock Allotment in lieu of (i) fifty percent (50%) of such holder's Litigation Proceeds Interest (solely in its capacity as a holder of an Allowed PIERS Claim) and (ii) subject to the provisions of Section 31.14 of the Plan, some or all of the Runoff Notes that such holder otherwise is entitled to receive pursuant to Section 20.1 of the Plan. To the extent a holder of an Allowed PIERS Claim receives Reorganized Common Stock pursuant to the foregoing election, such holder's share of the Runoff Notes to which the election was effective shall not be issued and Reorganized WMI shall retain an economic interest in the Litigation Proceeds equal to fifty percent (50%) of the Litigation Proceeds (and such interest shall not constitute a component of the Liquidating Trust Assets) such holder otherwise would have received (solely in its capacity as a holder of an Allowed PIERS Claim) (and the holder's rights in respect of distributions from the Liquidating Trust shall be adjusted to the extent such proceeds are received by Reorganized WMI).

Failure by any holder of an Allowed PIERS Claim to elect to exercise rights provided in this Section 20.2 on or before the Ballot Date shall constitute a deemed waiver and relinquishment of such rights by such holder. Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is waived, in writing, by the Debtors; provided, however, that under no circumstance may such waiver by the Debtors occur on or after the Effective Date.

20.3 **Limitation on Recovery:** Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed PIERS Claim in accordance with Section 20.1 of the Plan, in the event that the sum of (i) distributions of Runoff Notes, Creditor Cash, Cash received on account of Liquidating Trust Interests and Reorganized Common Stock in accordance with Sections 20.1 and 20.2 of the Plan and (ii) redistributions of Cash received on account of Liquidating Trust Interests in accordance with the provisions of Sections 6.3, 7.3, 18.3, or 19.3 are equal to or in excess of one hundred percent (100%) of such holder's Allowed PIERS Claim and Postpetition Interest Claim, the Cash or, subject to the provisions of Section 31.14 of the Plan, Runoff Notes received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of Allowed Claims or Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H". Notwithstanding anything contained herein to the contrary, for the avoidance of doubt, the subrogation rights of holders of Allowed PIERS Claims shall be preserved.

## ARTICLE XXI

## PROVISION FOR TREATMENT OF WMB NOTES CLAIMS AND NON-FILING WMB SENIOR NOTE HOLDERS (CLASS 17)

21.1 **Treatment of WMB Notes Claims:**

(a) Class 17A – WMB Senior Notes Claims. Class 17A shall consist of WMB Senior Notes Claims. Commencing on the Effective Date, each holder of an Allowed WMB Senior Notes Claim shall receive, in full satisfaction, release and exchange of such

holder's Allowed WMB Senior Notes Claim, such holder's Pro Rata Share of BB Liquidating Trust Interests (which interests, in the aggregate, represent an undivided interest in WMI's share of the Homeownership Carryback Refund Amount, as defined and set forth in Section 2.4 of the Global Settlement Agreement, in an amount equal to Three Hundred Thirty-Five Million Dollars ($335,000,000.00)); provided, however, that, notwithstanding the foregoing, but subject to the provisions of Section 41.18 hereof, the Settlement WMB Senior Note Holders shall have first priority to recover Cash distributions made on account of the BB Liquidating Trust Interests up to an aggregate amount of Ten Million Dollars ($10,000,000.00), to compensate for the legal fees and expenses incurred by the Settlement WMB Senior Note Holders' and other WMB Senior Note Holders' retention of Wilmer Cutler Pickering Hale & Dorr LLP, Pachulski Stang Ziehl & Jones LLP, and Boies, Schiller & Flexner LLP in connection with the Debtors' Chapter 11 Cases. Each holder of a WMB Senior Notes Claim that, in accordance with the Original Disclosure Statement Order, elected to check the box on the Class 17A Ballot labeled "Grant Plan Section 43.6 Release" in connection with the Sixth Amended Plan and, by having checked such box: (i) solely with respect to the Plan, such holder's WMB Senior Notes Claim shall be deemed an Allowed WMB Senior Notes Claim in an amount equal to the aggregate face value and interest accrued as of the Petition Date with respect to all WMB Senior Notes held by such holder as of October 25, 2010; provided, however, that, notwithstanding the foregoing, such amount shall be only for purposes of voting and calculating each holder's "Pro Rata Share" of BB Liquidating Trust Interests, and shall not in any way increase the amount to be distributed to holders of Allowed WMB Senior Notes Claims and Accepting Non-Filing WMB Senior Note Holders in excess of Three Hundred Thirty-Five Million Dollars ($335,000,000.00); (ii) the Debtors, the Liquidating Trustee, and all other parties in interest shall be deemed to have waived and released any and all objections, defenses, rights to setoff or recoupment, and rights to subordinate or recharacterize with respect to such Allowed WMB Senior Notes Claim; and (iii) the holder of such Allowed WMB Senior Notes Claim shall consent to provide on its behalf and with respect to its Allowed WMB Senior Notes Claim the releases provided in Section 41.6 of the Plan, including, without limitation, a release of the Debtors, the Reorganized Debtors, and the Liquidating Trustee from all direct and derivative claims arising from or related to such holder's Allowed WMB Senior Notes Claim, as well as any misrepresentation or other similar claim for damages arising from the purchase or sale of such holder's Allowed WMB Senior Notes Claim (including, without limitation, any Section 510(b) Subordinated WMB Notes Claims that such holder may have); provided, however, that the foregoing is not intended, nor shall it be construed, to release (i) the Debtors from their obligations pursuant to the Plan and (ii) the FDIC Receiver or the Receivership with respect to distributions to be made from the Receivership on account of WMB Senior Notes. In the event that, in accordance with the Original Disclosure Statement Order, the holder of a WMB Senior Notes Claim did not check the box on the Class 17A Ballot labeled "Grant Plan Section 43.6 Release" in connection with the Sixth Amended Plan, the Debtors, the Liquidating Trustee, and all parties in interest shall reserve and maintain all of their respective rights to dispute such WMB Senior Notes Claim, including, without limitation, on the basis that the Debtors have no liability with respect thereto, the Claim is subject to other defenses, setoff, or recoupment, and/or the Claim is subject to equitable or mandatory subordination pursuant to section 510 of the Bankruptcy Code; provided, however, that, to the extent that such WMB Senior Notes Claim is determined pursuant to a Final Order of the Bankruptcy Court to be an Allowed Claim, (i) such Claim shall be deemed an Allowed WMB Senior Notes Claim, (ii) the holder of such Allowed WMB Senior Notes Claim shall be

entitled to receive its Pro Rata Share of the BB Liquidating Trust Interests, and (iii) such holder shall be deemed to have consented to the releases provided in Section 41.6 of the Plan, including, without limitation, a release of the Debtors, the Reorganized Debtors, the Liquidating Trustee, and each of their respective Related Persons from any and all direct and derivative claims arising from or related to such holder's Allowed WMB Senior Notes Claim, as well as any misrepresentation or other similar claim for damages arising from the purchase or sale of such holder's Allowed WMB Senior Notes Claim (including, without limitation, any Section 510(b) Subordinated WMB Notes Claims that such holder may have). Payments made by WMI pursuant to this Section 21.1(a) shall be treated as payments made on account of the WMB Senior Notes held by holders of Allowed WMB Senior Notes Claims, and shall reduce the principal amount of such notes (and thus the maximum recovery permitted against the Receivership). The FDIC Receiver acknowledges that amounts distributed to the holders of Allowed WMB Senior Notes Claims under the Plan shall not be credited against or otherwise reduce their claims against the Receivership solely for purposes of determining the holders' relative participation in distributions (unless and until each holder has recovered, in the aggregate, through distributions pursuant to the Plan and from the Receivership, the full amount of its claim). For the avoidance of doubt, all of the $335 million allocated for payment to holders of Allowed WMB Senior Notes Claims and Accepting Non-Filing WMB Senior Note Holders, as provided in Sections 21.1(a) and (b) of the Plan, shall be paid either to counsel to or to holders of Allowed WMB Senior Notes Claims and Accepting Non-Filing WMB Senior Note Holder, and none of the foregoing amounts shall revert either to the Debtors or the Reorganized Debtors, or be payable to creditors in any other Class under the Plan.

(b)    Non-Filing WMB Senior Note Holders. Each Non-Filing WMB Senior Note Holder that, in accordance with the Original Disclosure Statement Order, elected to check the box on the Non-Filing WMB Senior Note Holder Election Form labeled "Grant Plan Section 43.6 Release" in connection with the Sixth Amended Plan and, by having checked such box: (i) such holder shall be deemed to be an Accepting Non-Filing WMB Senior Note Holder, (ii) such holder shall be entitled to receive its Pro Rata Share of BB Liquidating Trust Interests, and (iii) such holder shall consent to provide on its behalf and with respect to its WMB Senior Notes the releases provided in Section 41.6 of the Plan, including, without limitation, a release of the Debtors, the Reorganized Debtors, and the Liquidating Trustee from all direct and derivative claims arising from or related to such holder's WMB Senior Notes, as well as any misrepresentation or other similar claim for damages arising from the purchase or sale of such holders (WMB Senior Notes); provided, however, that the foregoing is not intended, nor shall it be construed, to release (i) the Debtors from their obligations pursuant to the Plan and (ii) the FDIC Receiver or the Receivership with respect to distributions to be made from the Receivership on account of WMB Senior Notes. Payments made by WMI pursuant to this Section 21.1(b) shall be treated as payments made on account of the WMB Senior Notes held by Accepting Non-Filing WMB Senior Note Holders, and shall reduce the principal amount of such notes (and thus the maximum recovery permitted against the Receivership). The FDIC Receiver acknowledges that amounts distributed to Accepting Non-Filing WMB Senior Note Holders under the Plan shall not be credited against or otherwise reduce their claims against the Receivership solely for purposes of determining the holders' relative participation in distributions (unless and until each holder has recovered, in the aggregate, through distributions pursuant to the Plan and from the Receivership, the full amount of its claim). Notwithstanding the foregoing, and irrespective of whether a Non-Filing WMB Senior Note Holder receives a

distribution of BB Liquidating Trust Interests pursuant to this Section (b), no Non-Filing WMB Senior Note Holder shall be deemed to hold a Claim against the Debtors with respect to such holder's WMB Senior Notes.

(c)    Class 17B – WMB Subordinated Notes.  On the Effective Date, and in consideration for the distribution to be made to the FDIC Receiver pursuant to the Global Settlement Agreement, all WMB Subordinated Notes Claims, to the extent that they are not Section 510(b) Subordinated WMB Notes Claims, shall be deemed disallowed, and holders thereof shall not receive any distribution from the Debtors.

(d)    Right to Recovery.  WMB Senior Notes Claims and WMB Subordinated Notes Claims are not superior in right of recovery to Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, Allowed General Unsecured Claims, or Allowed Late Filed Claims, and the holders of WMB Senior Notes Claims and WMB Subordinated Notes Claims may not seek recourse, payment, turnover, indemnity, damages, setoff, pay-over, or other compensation from holders of any Allowed Claims, including, without limitation, Senior Notes Claims, Senior Subordinated Notes Claims, CCB-1 Guarantees Claims, CCB-2 Guarantees Claims, PIERS Claims, General Unsecured Claims, or Late-Filed Claims, on account of WMB-issued obligations.

## ARTICLE XXII

## PROVISION FOR TREATMENT OF SUBORDINATED CLAIMS (CLASS 18)

22.1    **Treatment of Subordinated Claims:**  Commencing on the Effective Date, and in the event that all Allowed Claims and Postpetition Interest Claims in respect of Allowed Claims are paid in full, each holder of an Allowed Subordinated Claim shall receive, in full satisfaction, release and exchange of such holder's Allowed Subordinated Claim and Postpetition Interest Claim, such holder's Pro Rata Share of, Liquidating Trust Interests in an aggregate amount equal to such holder's Allowed Subordinated Claim and Postpetition Interest Claim.

22.2    **Limitation on Recovery:**  Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to a holder of an Allowed Subordinated Claim in accordance with Section 22.1 of the Plan, in the event that the sum of Cash received on account of Liquidating Trust Interests in accordance with Section 22.1 are equal to or in excess of one hundred percent (100%) of such holder's Allowed Subordinated Claim and Postpetition Interest Claim, the Cash received on account of Liquidating Trust Interests that is distributable to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to holders of the Equity Interests or the Disbursing Agent for and on behalf of holders of Disputed Claims in accordance with the Subordination Model attached hereto as Exhibit "H".

## ARTICLE XXIII

### PROVISION FOR TREATMENT OF PREFERRED EQUITY INTEREST (CLASS 19)

23.1    **Treatment of Preferred Equity Interests:**  Commencing on the Effective Date, and subject to the execution and delivery of a release in accordance with the provisions of Section 41.6 of the Plan, each holder of a Preferred Equity Interest, including, without limitation, each holder of a REIT Series, shall be entitled to receive such holder's Pro Rata Share of seventy-five percent (75%) of (a) subject to the right of election provided in Sections 6.2(b), 7.2(b), 16.1(b)(ii), 18.2(b), 19.2(b) and 20.2(b) of the Plan, the Reorganized Common Stock, and (b) in the event that all Allowed Claims and Postpetition Interest Claims in respect of Allowed Claims are paid in full (including with respect to Allowed Subordinated Claims), any Liquidating Trust Interests to be redistributed; provided, however, that, in the event that, at the Confirmation Hearing and in the Confirmation Order, the Bankruptcy Court determines that a different percentage should apply, the foregoing percentage shall be adjusted in accordance with the determination of the Bankruptcy Court and be binding upon each holder of a Preferred Equity Interest. In addition, and separate and distinct from the distribution to be provided to holders of the Preferred Equity Interests from the Debtors, pursuant to the Global Settlement Agreement, and in exchange for the releases set forth in the Global Settlement Agreement and in Article XLI herein, on the Effective Date, JPMC shall pay, or transfer to the Disbursing Agent, for payment to each Releasing REIT Trust Holder its pro rata share of Fifty Million Dollars ($50,000,000.00), determined by multiplying (a) Fifty Million Dollars ($50,000,000.00) times (b) an amount equal to (i) the principal amount of REIT Series held by such Releasing REIT Trust Holder on the voting record date with respect to the Sixth Amended Plan divided by (ii) the outstanding principal amount of all REIT Series (which is Four Billion Dollars ($4,000,000,000.00)); provided, however, that the release of claims against the "Releasees" delivered in connection with the solicitation of acceptances and rejections to the Sixth Amended Plan shall be deemed binding and effective for each Releasing REIT Trust Holder; and, provided, further, that, at the election of JPMC, the amount payable to Releasing REIT Trust Holders pursuant to this Section 23.1 and Section 2.24 of the Global Settlement Agreement may be paid in shares of common stock of JPMC, having an aggregate value equal to the amount of cash to be paid pursuant to this Section 23.1 and Section 2.24 of the Global Settlement Agreement, valued at the average trading price during the thirty (30) day period immediately preceding the Effective Date. While JPMC's maximum liability pursuant to this Section 23.1 and Section 2.24 of the Global Settlement Agreement is Fifty Million Dollars ($50,000,000.00), JPMC's liability shall be reduced to the extent the Releasing REIT Trust Holders comprise less than all of the outstanding REIT Series holders.

23.2    **Cancellation of REIT Series:**  Notwithstanding the provisions of Section 23.1 hereof, on the Effective Date, all REIT Series shall be deemed extinguished and the certificates and all other documents representing such Equity Interests shall be deemed cancelled and of no force and effect. For the avoidance of doubt, this Section 23.2 shall have no effect on, and shall not result in the extinguishment or cancellation of, the Trust Preferred Securities and, in accordance with the Global Settlement Agreement, JPMC or its designee is the sole legal, equitable and beneficial owner of the Trust Preferred Securities for all purposes.

23.3  **Cancellation of Preferred Equity Interests**:  Notwithstanding the provisions of Section 23.1 hereof, on the Effective Date, all non-REIT Series Preferred Equity Interests shall be deemed extinguished and the certificates and all other documents representing such Equity Interests shall be deemed cancelled and of no force and effect.

## ARTICLE XXIV

### PROVISION FOR TREATMENT OF DIME WARRANTS (CLASS 21)

24.1  **Treatment of Dime Warrants**:  Commencing on the Effective Date, and subject to the execution and delivery of a release in accordance with the provisions of Section 41.6 of the Plan, each holder of Dime Warrants shall be entitled to receive such holder's Pro Rata Share of distributions to be made in accordance with the terms and provisions of the LTW Stipulation.

24.2  **Cancellation of Dime Warrants**:  Notwithstanding the provisions of Section 24.1 hereof, on the Effective Date, all Dime Warrants shall be deemed extinguished and the certificates and all other documents representing such Equity Interests shall be deemed cancelled and of no force and effect.

## ARTICLE XXV

### PROVISION FOR TREATMENT OF COMMON EQUITY INTERESTS (CLASS 22)

25.1  **Treatment of Common Equity Interests**:  Commencing on the Effective Date, and subject to the execution and delivery of a release in accordance with the provisions of Section 41.6 of the Plan, each holder of Common Equity Interests shall be entitled to receive such holder's Pro Rata Share of twenty-five percent (25%) of (a) subject to (i) the right of election provided in Sections 6.2(b), 7.2(b), 16.1(b)(ii), 18.2(b), 19.2(b) and 20.2(b) of the Plan and (ii) the rights of holders of Dime Warrants pursuant to the LTW Stipulation, the Reorganized Common Stock and (b) in the event that all Allowed Claims and Postpetition Interest Claims in respect of Allowed Claims are paid in full (including with respect to Allowed Subordinated Claims), any Liquidating Trust Interests to be redistributed; provided, however, that, in the event at the Confirmation Hearing and in the Confirmation Order, the Bankruptcy Court determines that a different percentage should apply, the foregoing percentage shall be adjusted in accordance with the determination of the Bankruptcy Court and be binding upon each holder of a Common Equity Interest.

25.2  **Cancellation of Common Equity Interests**:  Notwithstanding the provisions of Section 25.1 hereof, on the Effective Date, all Common Equity Interests shall be deemed extinguished and the certificates and all other documents representing such Equity Interests shall be deemed cancelled and of no force and effect.

## ARTICLE XXVI

## PROVISION FOR TREATMENT OF DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS

26.1 __Objections to Claims; Prosecution of Disputed Claims and Disputed Equity Interests:__  The Liquidating Trustee shall object to, and shall assume any pending objection filed by the Debtors to, the allowance of Claims and Equity Interests filed with the Bankruptcy Court with respect to which it disputes liability, priority or amount, including, without limitation, objections to Claims and Equity Interests that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto. All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that the Liquidating Trustee shall have the authority to file, settle, compromise or withdraw any objections to Claims or Equity Interests. Unless otherwise ordered by the Bankruptcy Court, to the extent not already objected to by the Debtors, the Liquidating Trustee shall file and serve all objections to Claims and Equity Interests as soon as practicable, but, in each instance, not later than one hundred eighty (180) days following the Effective Date or such later date as may be approved by the Bankruptcy Court.

26.2 __Estimation of Claims:__  On and after the Effective Date, and unless otherwise limited by an order of the Bankruptcy Court, the Liquidating Trustee may at any time request the Bankruptcy Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to or sought to estimate such Claim, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, the Liquidating Trustee may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another; provided, however, that in no event shall any such procedure increase or expand payment or performance from JPMC for any JPMC Assumed Liabilities.

26.3 __Payments and Distributions on Disputed Claims and Disputed Equity Interests:__

(a) __Disputed Claims Holdback.__  From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Bankruptcy Court, the Liquidating Trustee shall retain, for the benefit of each holder of a Disputed Claim, Creditor Cash (which the Disbursing Agent shall transfer to the Liquidating Trustee), Liquidating Trust Interests, and, to the extent elected by such holder,

Runoff Notes and Reorganized Common Stock, and any dividends, gains or income attributable in respect of any of the foregoing, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above. Any Creditor Cash, Liquidating Trust Interests, Runoff Notes and Reorganized Common Stock retained and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash and distributed in Liquidating Trust Interests, Runoff Notes or Reorganized Common Stock in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Creditor Cash and any dividends, gains or income paid on account of the Liquidating Trust Interests, Runoff Notes and the Reorganized Common Stock (if any) retained for the benefit of holders of Disputed Claims shall be retained by the Liquidating Trust for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. To the extent that the Liquidating Trust retains Runoff Notes or Reorganized Common Stock on behalf of Disputed Claim holders, until such time as such stock is distributed, the Liquidating Trustee shall exercise voting or consent rights with respect to such stock; provided, however, that the Liquidating Trustee shall be obligated to vote or consent, as the case may be, as to such stock in the same proportion as all other holders of issued and distributed Reorganized Common Stock have voted or consented, in each case on an issue-by-issue basis.

(b)     Allowance of Disputed Claims.  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that has accrued on the amount of Creditor Cash, Liquidating Trust Interests, Runoff Notes and Reorganized Common Stock so retained (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order, but in no event more than ninety (90) days thereafter. The balance of any Creditor Cash, Liquidating Trust Interests, Runoff Notes and Reorganized Common Stock previously retained but not distributed to a Disputed Claim holder shall be included in future calculations of Cash, Liquidating Trust Interests, Runoff Notes and Reorganized Common Stock, respectively, to holders of Allowed Claims.

(c)     Tax Treatment of Retained Assets on Account of Disputed Claims. The Liquidating Trustee shall treat any Assets retained pursuant to this Section 26.3 as part of the Liquidating Trust Claims Reserve.

(d)     Disputed Equity Escrow.  From and after the Effective Date, (i) until such time as the Dime Warrant Litigation is determined, pursuant to a Final Order, or a compromise and settlement is approved by the Bankruptcy Court with respect to the Dime

Warrant Litigation, there shall be held in the Disputed Equity Escrow by the Liquidating Trustee, as escrow agent, for the benefit of each holder of a Dime Warrant, Reorganized Common Stock, and any dividends, gains or income attributable in respect of such Reorganized Common Stock, in an amount equal to the Pro Rata Share of Reorganized Common Stock that would have been made to the holders of Dime Warrants if such Dime Warrants were Allowed Equity Interests; and (ii) until such time, or from time to time, as each Disputed Equity Interest has been compromised and settled or allowed or disallowed by Final Order of the Bankruptcy Court, there shall be held in the Disputed Equity Escrow by the Liquidating Trustee, as escrow agent, for the benefit of each holder of a Disputed Equity Interest, Reorganized Common Stock and any dividends, gains or income attributable in respect of such Reorganized Common Stock, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Equity Interest if it were an Allowed Equity Interest. To the extent that the Liquidating Trustee retains any such Reorganized Common Stock, until such time as such stock is distributed, the Liquidating Trustee shall exercise voting or consent rights with respect to such stock; provided, however, that the Liquidating Trustee shall be obligated to vote or consent, as the case may be, as to such stock in the same proportion as all other holders of issued and distributed Reorganized Common Stock have voted or consented, in each case on an issue-by-issue basis. Apart from the Liquidating Trustee serving as escrow agent, the Disputed Equity Escrow shall be separate and distinct from the Liquidating Trust (and the Liquidating Trust Claims Reserve), and the assets therein shall not comprise part of the Liquidating Trust Assets.

(e)     Determinations With Respect to Disputed Equity Interests. At such time as it is determined, pursuant to a Final Order, that (1) the holders of the Dime Warrants hold Allowed Claims, and such Allowed Claims are not otherwise subordinated to the level of Common Equity Interests in accordance with section 510 of the Bankruptcy Code, the Liquidating Trustee, as escrow agent, shall distribute to the holders of Common Equity Interests entitled to receive a distribution in accordance with the provisions of Section 25.1 hereof, on a pro rata basis, the shares of the Reorganized Common Stock, together with any dividends, gains or income attributable thereto, in the Disputed Equity Escrow and (2) the holders of Dime Warrants hold Equity Interests or Allowed Claims, and Allowed Claims are otherwise subordinated to the level of Common Equity Interests in accordance with section 510 of the Bankruptcy Code, the Liquidating Trustee, as escrow agent, shall distribute to the holders of Dime Warrants the shares of Reorganized Common Stock, together with any dividends, gains or income attributable thereto in the Disputed Equity Escrow. At such time as any other Disputed Equity Interest becomes, in whole or in part, an Allowed Equity Interest, the Liquidating Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any dividends, gains or income attributable thereto. To the extent a Disputed Equity Interest is disallowed, in whole or in part, the Liquidating Trustee, as escrow agent, shall distribute to the holders of Common Equity Interests entitled to receive a distribution in accordance with the provisions of Sections 24.1 and 25.1 of the Plan, on a pro rata basis, the shares of Reorganized Common Stock, together with any dividends, gains or income attributable thereto, allocable to such Disputed Equity Interest. to the extent of such disallowance. Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court with respect to the Dime Warrant Litigation becomes a Final Order, but in no event more than ninety (90) days thereafter.

(f)     Tax Treatment of Disputed Equity Escrow.

(1)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee, as escrow agent, of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) treat the Disputed Equity Escrow as "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections), and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Liquidating Trustee, the Debtors, and the holders of Dime Warrants and Disputed Equity Interests) shall report for United States federal, state and local income tax purposes consistently wit the foregoing.

(2)     The Liquidating Trustee, as escrow agent, shall be responsible for payment, out of the assets of the Disputed Equity Escrow, of any Taxes imposed on the escrow or its assets.  In the event, and to the extent, any Cash in the Disputed Equity Escrow is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets of the escrow (including any income that may arise upon the distribution of the assets in the escrow), assets of the escrow may be sold to pay such Taxes.

(3)     The Liquidating Trustee, as escrow agent, may request an expedited determination of Taxes of the Disputed Equity Escrow under section 505(b) of the Bankruptcy Code for all Tax Returns for all taxable periods through the termination of the escrow.

(4)     The Liquidating Trustee, as escrow agent, shall have the same rights and powers, subject to the same limitations, with respect to withholding on distributions of the assets of the Disputed Equity Escrow as the Liquidating Trustee possesses with respect to the Liquidating Trust, as provided in Section 27.14(c) of the Plan.

## ARTICLE XXVII

## THE LIQUIDATING TRUST

27.1     **Execution of Liquidating Trust Agreement**:  On or before the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement, and shall take all other necessary steps to establish the Liquidating Trust and the Liquidating Trust Interests therein, which shall be for the benefit of the Liquidating Trust Beneficiaries, as provided in Sections 6.1, 7.1, 16.1, 16.2, 18.1, 19.1, 20.1 and 22.1, and, in certain circumstances, 23.1, 24.1 and 25.1 of the Plan, whether their Claims are Allowed before, on or after the Effective Date.  The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and

authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

27.2    **Purpose of the Liquidating Trust**: The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

27.3    **Liquidating Trust Assets**: The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Debtors shall transfer all of the Liquidating Trust Assets to the Liquidating Trust. The Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in the Plan or the Liquidating Trust Agreement. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their predecessors, successors and assigns, and each other Entity released pursuant to Section 41.5 herein shall be discharged and released from all liability with respect to the delivery of such distributions. In addition, the Liquidating Trust shall assume all of WMI's rights and obligations pursuant to Section 2.4 of the Global Settlement Agreement, and WMI shall have no further liability or obligations thereunder, to the extent that the transfer to the Liquidating Trust shall not impose any additional obligations or liabilities on JPMC.

27.4    **Administration of the Liquidating Trust**: The Liquidating Trust shall be administered by the Liquidating Trustee according to the Liquidating Trust Agreement and the Plan. In the event of any inconsistency between the Plan and the Liquidating Trust Agreement, the Liquidating Trust Agreement shall govern.

27.5    **The Liquidating Trustee**: In the event the Liquidating Trustee dies, is terminated, or resigns for any reason, the Trust Advisory Board shall designate a successor; provided, however, that under no circumstance shall the Liquidating Trustee be a director or officer with respect to any Affiliate of the Liquidating Trust.

27.6    **Role of the Liquidating Trustee**: In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, and subject to the terms of the Confirmation Order, the Plan and the Liquidating Trust Agreement, and the oversight of the Trust Advisory Board, the Liquidating Trustee shall, among other things, have the following rights, powers and duties, in each case subject to the Global Settlement Agreement: (i) to hold, manage, convert to Cash, and distribute the Liquidating Trust Assets, including prosecuting and resolving the Claims belonging to the Liquidating Trust, (ii) to hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, (iii) in the Liquidating Trustee's reasonable business judgment, to investigate, prosecute, settle and/or abandon rights, causes of action, or litigation of the Liquidating Trust, including, without limitation, Avoidance Actions, (iv) to monitor and enforce the implementation of the Plan, (v) to file all tax and regulatory forms, returns, reports, and other documents required with respect to the Liquidating Trust, (vi) in the Liquidating Trustee's reasonable business judgment, to object to Claims, and manage, control, prosecute, and/or settle on behalf of the Liquidating Trust, objections to Claims on account of which the Liquidating Trustee (as Disbursing Agent) will be

responsible (if Allowed) for making distributions under the Plan, (vii) to take all actions necessary and create any document necessary to implement the Plan, (viii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority, (ix) to act as a signatory to the Debtors for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtors' assets, and (x) to take all necessary actions and file all appropriate motions to obtain an order closing the Chapter 11 Cases. In all circumstances, the Liquidating Trustee shall comply with all of the Debtors' obligations under the Global Settlement Agreement and in accordance with applicable law, and otherwise shall act in the best interests of all Liquidating Trust Beneficiaries and in furtherance of the purpose of the Liquidating Trust. Under no circumstance may the Liquidating Trustee serve on the Board of Directors of any Affiliate of the Liquidating Trust.

### 27.7    Liquidating Trustee's Tax Power for Debtors:

(a)    Following the Effective Date, the Liquidating Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all Tax Returns required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds for all taxable periods ended on or before December 31, 2009.

(b)    For all taxable periods ended on or before December 31, 2009, the Liquidating Trustee shall have full and exclusive authority and responsibility in respect of all Taxes of the Debtors (including, without limitation, as the common parent or other agent of any consolidated, combined or unitary tax group of which the Debtors were the agent), to the same extent as if the Liquidating Trustee was the Debtor-in-Possession. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Liquidating Trustee to correspond with any Authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer Tax payments and Tax Returns.

(c)    In furtherance of the transfer of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date, the Liquidating Trust shall be entitled to all Tax Refunds of the Debtors (and the Liquidating Trust bears responsibility for (i) all Tax liabilities of the Debtors for taxable years ended on or before December 31, 2009, to the extent not discharged by the Plan or provided for payment in the Plan or the Global Settlement Agreement and (ii) WMI's obligations pursuant to Section 2.4 of the Global Settlement Agreement), it being understood that the Liquidating Trustee only shall have whatever rights WMI itself has pursuant to the terms of the Global Settlement Agreement and the Liquidating Trustee shall be contractually bound to all restrictions in the Global Settlement Agreement with respect to tax filings.

### 27.8    Transferability of Liquidating Trust Interests:    The Liquidating Trust Interests shall not be transferable or assignable except by will, intestate succession or operation of law.

### 27.9    Cash:    The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a liquidating trust

within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

27.10  **Distribution of Liquidating Trust Assets:**  The Liquidating Trustee shall distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a quarterly basis, all unrestricted Cash on hand (including any Cash received from the Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 27.10), except (i) Cash reserved pursuant to the Liquidating Trust Agreement to fund the activities of the Liquidating Trust, (ii) such amounts as are allocable to or retained on account of Disputed Claims in accordance with Section 26.3 of the Plan, and (iii) such additional amounts as are reasonably necessary to (A) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (B) pay reasonable incurred or anticipated expenses (including, but not limited to, any Taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (C) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan, the Global Settlement Agreement, or the Liquidating Trust Agreement; provided, however, that, and subject to the distribution of Runoff Notes as may be required in accordance with the provisions of Section 31.14 of the Plan, the Liquidating Trustee shall not be required to make a distribution pursuant to this Section 27.10 if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee, with the consent of the Trust Advisory Board, in accordance with applicable law, and so long as such aggregate amount is less than Twenty-Five Million Dollars ($25,000,000.00); and, provided, further, that the Liquidating Trustee, with the consent of the Trust Advisory Board, may decide to forego the first quarterly distribution to those holders of Liquidating Trust Interests with respect to which the Liquidating Trustee, in its reasonable judgment, is not administratively prepared to make such distribution, in which case, such distribution shall be made to such holders as soon as practicable after the Liquidating Trustee is administratively prepared to do so.

27.11  **Costs and Expenses of the Liquidating Trust:**  The reasonable costs and expenses of the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and its retained professionals, shall be paid out of the Liquidating Trust Assets. Fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Liquidating Trust.

27.12  **Compensation of the Liquidating Trustee:**  The individual(s) serving as or comprising the Liquidating Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar roles, the payment of which shall be subject to the approval of the Bankruptcy Court.

27.13  **Retention of Professionals/Employees by the Liquidating Trustee:** The Liquidating Trustee may retain and compensate attorneys, other professionals, and employees to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. The Liquidating Trustee may assume existing contracts and/or leases that WMI is party to, including, without limitation, employment agreements, or may enter into new arrangements on substantially similar terms. Without limiting

the foregoing, the Liquidating Trustee may retain any professional that represented parties in interest in the Chapter 11 Cases.

### 27.14   Federal Income Tax Treatment of the Liquidating Trust:

(a)   <u>Liquidating Trust Assets Treated as Owned by Creditors</u>.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the Liquidating Trust Beneficiaries and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Liquidating Trust Claims Reserve, followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Liquidating Trust Claims Reserve) in exchange for Liquidating Trust Interests.  Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to the Liquidating Trust Claims Reserve, discussed below).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)   <u>Tax Reporting</u>.

(1)   The Liquidating Trustee shall file Tax Returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 27.14.  The Liquidating Trustee also will annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(2)   On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Tax Refunds as of the Effective Date.  The Liquidating Trustee will then in good faith value all other Liquidating Trust Assets, and shall make all such values (including the Tax Refund values) available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(3)     Allocations of Liquidating Trust taxable income among the Liquidating Trust Beneficiaries (other than taxable income allocable to the Liquidating Trust Claims Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Liquidating Trust Claims Reserve) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(4)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(5)     The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any Taxes imposed on the trust or its assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims (including any income that may arise upon the distribution of the assets of the Liquidating Trust Claims Reserve), such Taxes may be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(6)     The Liquidating Trustee may request an expedited determination of Taxes of the Liquidating Trust, including the Liquidating Trust Claims Reserve, or the Debtors under section 505(b) of the Bankruptcy Code for all Tax Returns filed for, or on behalf of, the Liquidating Trust or the Debtors for all taxable periods through the dissolution of the Liquidating Trust.

(c)     <u>Tax Withholdings by Liquidating Trustee</u>.  The Liquidating Trustee may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of Liquidating Trust Interests.  All such amounts withheld and paid to the appropriate Tax Authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of Liquidating Trust Interests for all purposes of the Liquidating Trust Agreement.  The Liquidating Trustee shall be authorized to collect such tax information from the holders of Liquidating Trust Interests (including, without limitation, social security numbers or other tax identification numbers) as in its sole discretion the Liquidating Trustee deems necessary to effectuate the Plan, the Confirmation Order, and the Liquidating Trust Agreement.  In order to receive distributions under the Plan, all holders of Liquidating Trust Interests (including, without limitation, (i) holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, Allowed General Unsecured Claims, Allowed Late-Filed Claims, Allowed WMB Senior Notes Claims, Allowed Preferred Equity Interests, Allowed Common Equity Interests and holders of Dime Warrants and (ii) Accepting Non-Filing WMB Senior Note Holders, who, in each case, deliver a release in accordance with the provisions of Section 41.6 of the Plan) shall be required to identify themselves to the Liquidating Trustee and provide tax information and the specifics of their holdings, to the extent the Liquidating Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Liquidating Trustee for these purposes.  This identification requirement generally applies to all holders, including those who hold their securities in street name.  The Liquidating Trustee may refuse to make a distribution to any holder of a Liquidating Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered, and may treat such holder's Liquidating Trust Interests as disputed; provided, however, that, if such information is not furnished to the Liquidating Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to the holder of such Liquidating Trust Interest; and, provided, further, that, upon the delivery of such information by a holder of a Liquidating Trust Interest, the Liquidating Trustee shall make such distribution to which the holder of the Liquidating Trust Interest is entitled, without additional interest occasioned by such holder's delay in providing tax information; and, provided, further that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Liquidating Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Liquidating Trustee for such liability (to the extent such amounts were actually distributed to such holder).

(d)     <u>Dissolution</u>.  The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, upon the earlier to occur of (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and the Liquidating Trust Agreement, (ii) the Liquidating Trustee determines, with the consent of the Trust Advisory

Board, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, and (iii) all distributions required to be made by the Liquidating Trustee under the Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee and the Trust Advisory Board that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Reorganized Debtors, the Liquidating Trust, and any insider of the Liquidating Trustee, and (iii) dissolve the Liquidating Trust.

   27.15  **Indemnification of Liquidating Trustee:**  The Liquidating Trustee or the individual(s) comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's employees, agents and professionals, shall not be liable to the Liquidating Trust Beneficiaries for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct or gross negligence. Any indemnification claim of the Liquidating Trustee (and the other parties entitled to indemnification under this subsection) shall be satisfied solely from the Liquidating Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the Liquidating Trust Interests and any other claim to or interest in such assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

   27.16  **Privileges and Obligation to Respond to Ongoing Investigations:**  All Privileges shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver, and shall vest in the Liquidating Trustee solely in its capacity as such (and any other individual the Liquidating Trustee, with the consent of the Trust Advisory Board, may designate, as well as any other individual designated in the Liquidating Trust Agreement). Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant notwithstanding the fact that the Debtors, the Liquidating Trustee, the FDIC Receiver and JPMC are joint holders of certain attorney-client privileges, work product protections, or other immunities or protections from disclosure), no Privileges shall be waived by disclosure to the Liquidating Trustee and the Trust Advisory Board of the Debtors' information subject to attorney-client privileges, work product

protections, or other immunities or protections from disclosure, or by disclosure among the Debtors, the Liquidating Trustee, the Trust Advisory Board, the FDIC Receiver, and/or JPMC of information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure jointly held by the Debtors, the Trust Advisory Board, the FDIC Receiver, the Liquidating Trustee and/or JPMC. The Liquidating Trustee shall be obligated to respond, on behalf of the Debtors, to all Information Demands. The FDIC Receiver and JPMC shall take reasonable steps to cooperate with the Liquidating Trustee in responding to Information Demands, and such cooperation shall include, for example, taking all steps necessary to maintain and avoid waiver of any and all Privileges (including, without limitation, any Privileges that are shared jointly among or between any of the parties). The Liquidating Trustee, with the consent of the Trust Advisory Board, may waive Privileges that are held solely by the Debtors and/or the Liquidating Trust, but not jointly held with the FDIC Receiver and/or JPMC, in the event and to the extent the Liquidating Trustee, with the consent of the Trust Advisory Board, determines in good faith that doing so is in the best interests of the Liquidating Trust and its beneficiaries. The Liquidating Trustee, the Trust Advisory Board, the FDIC Receiver and JPMC may disclose information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure that are jointly held with the FDIC Receiver and/or JPMC only (i) upon written permission from the Liquidating Trustee, the FDIC Receiver and JPMC, as the case may be; (ii) pursuant to an order of a court of competent jurisdiction, subject to the procedure described in the next sentence insofar as it applies; or (iii) as otherwise required by law, subject to the procedure described in the next sentence insofar as it applies. If the Liquidating Trustee, the Trust Advisory Board, the FDIC Receiver or JPMC receives a request from a third party to disclose information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure that are jointly held with the Liquidating Trustee, the Trust Advisory Board, the FDIC Receiver and/or JPMC, the party or parties who receives such request will (w) pursue all reasonable steps to maintain the applicable privileges or protections from disclosure, including, if necessary, to maintain the privileges or protections from disclosure by seeking a protective order against and/or otherwise objecting to the production of such material, (x) notify the Liquidating Trustee, the Trust Advisory Board, FDIC Receiver and/or JPMC, as the case may be, (y) allow the Liquidating Trustee, the Trust Advisory Board, the FDIC Receiver and/or JPMC, as the case may be, reasonable time under the circumstances to seek a protective order against and/or otherwise object to the production of such material, and (z) unless required by law, not disclose the materials in question unless and until any objection raised by the Liquidating Trustee, the Trust Advisory Board, the FDIC Receiver and/or JPMC is resolved in favor of disclosure.

## ARTICLE XXVIII

## PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY THE DEBTORS

28.1 **Prosecution of Claims:** Except as settled and released herein, from and after the Effective Date, the Liquidating Trustee shall have the exclusive right and power to litigate any Claim or Cause of Action that constituted an Asset of the Debtors or Debtors in Possession, including, without limitation, any avoidance or recovery action under section 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code and any other cause of action, right to payment, or claim that may be pending on the Effective Date or instituted by the Debtors, Debtors in Possession or the Liquidating Trust thereafter, to a Final Order, and the

Liquidating Trustee may compromise and settle such claims, upon approval of the Bankruptcy Court. The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be transferred to the Liquidating Trust for distribution in accordance with the Plan and the Liquidating Trust Agreement.

## ARTICLE XXIX

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

29.1    **Impaired Classes to Vote:**  Each holder, as of the Voting Record Date, of a Claim or Equity Interest in an impaired Class not otherwise deemed to have rejected or accepted the Plan in accordance with Sections 30.3 and 30.4 of the Plan shall be entitled to vote separately to accept or reject the Plan.

29.2    **Acceptance by Class of Creditors:**  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

29.3    **Cramdown:**  In the event that any impaired Class of Claims or Equity Interests shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) subject to the consent of the Creditors' Committee, the Equity Committee and AAOC and, in the event it affects any of JPMC's rights, obligations or liabilities, JPMC, amend the Plan.

## ARTICLE XXX

## IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

30.1    **Impaired and Unimpaired Classes:**  Claims in Classes 1, 4, and 7 are not impaired under the Plan. Claims and Equity Interests in Classes 2, 3, 5, 6, 8, 9, 10, 11, 12, 12A and 13 through 22 are impaired under the Plan.

30.2    **Impaired Classes Entitled to Vote on Plan:**  The Claims and Equity Interests in Classes 2, 3, 5, 6, 8, 9, 10, 11, 12, 12A, 13 through 16, 17A, and 18 through 22 are impaired and receiving distributions pursuant to the Plan, and are therefore entitled to vote to accept or reject the Plan; provided, however, that, in accordance with the Original Disclosure Statement Order, entitlement to vote in Class 19 does not include the right to elect to receive any portion of the payment provided for by JPMC in Section 23.1 of the Plan.

30.3    **Claims and Equity Interests Deemed to Reject:**  The Claims in Class 17B are not entitled to receive any distribution or retain their Claims pursuant to the Plan, are deemed to reject the Plan, and are not entitled to accept or reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code.