30.4    **Claims Deemed to Accept**: The Claims in Classes 1, 4 and 7 are not impaired pursuant to the Plan, are deemed to accept the Plan, and are not entitled to accept or reject the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

30.5    **Controversy Concerning Impairment**: In the event of a controversy as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### ARTICLE XXXI

### PROVISIONS GOVERNING DISTRIBUTIONS

31.1    **Time and Manner of Distributions**: Except as otherwise provided herein, distributions under the Plan shall be made to each holder of an Allowed Claim or Equity Interest as follows:

(a)    Initial Distributions of Creditor Cash and Runoff Notes . Within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Senior Notes Claim, an Allowed Senior Subordinated Notes Claim, an Allowed General Unsecured Claim, an Allowed CCB-1 Guarantees Claim, an Allowed CCB-2 Guarantees Claim, or an Allowed PIERS Claim, such Creditor's share, if any, of Creditor Cash and Runoff Notes, as determined pursuant to Article VI, Article VII, Article VIII, Article XVI, Article XVIII, Article XIX, and Article XX hereof.

(b)    Allocation of Liquidating Trust Interests. Within ten (10) Business Days after creation of the Liquidating Trust, the Disbursing Agent shall allocate, or cause to be allocated, (i) to the Liquidating Trustee on behalf of holders of Disputed Claims, (ii) to each holder of an Allowed Senior Notes Claim, an Allowed Senior Subordinated Notes Claim, an Allowed General Unsecured Claim, an Allowed CCB-1 Guarantees Claim, an Allowed CCB-2 Guarantees Claim, an Allowed PIERS Claim, an Allowed Late-Filed Claim, an Allowed WMB Senior Notes Claim, and Postpetition Interest Claims in respect of the foregoing, and (iii) to each Accepting Non-Filing WMB Senior Note Holder, such holder's share, if any, of Liquidating Trust Interests, as determined pursuant to Article VI, Article VII, Article VIII, Article XVI, Article XVIII, Article XIX, and Article XX hereof. In addition, in the event that all Allowed Claims and Postpetition Interest Claims are paid in full, the Liquidating Trust Interests shall be redistributed to holders of Subordinated Claims and, after such Allowed Claims and Postpetition Interest Claims are paid in full, holders of Preferred Equity Interests, Dime Warrants and Common Equity Interests as set forth in Sections 23.1, 24.1 and 25.1 of the Plan.

(c)    Distribution of Cash to Holders of Certain Other Claims. Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Administrative Expense Claim, an Allowed Priority Tax Claim (to the extent applicable), an Allowed Priority Non-Tax Claim, an Allowed WMI Vendor Claim, an Allowed Convenience Claim, or an Allowed Trustee Claim, such holder's share of Cash, as determined pursuant to Article III, Article V, Article XV, Article XVII and Section 31.12 hereof.

(d)    <u>Distribution of Reorganized Common Stock</u>.  Subject to the provisions of Sections 26.3 and 31.14 of the Plan, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of a Preferred Equity Interest, Dime Warrant (to the extent that holders of Dime Warrants are determined, pursuant to a Final Order, to hold Equity Interests or Allowed Claims subordinated to the level of Common Equity Interests in accordance with section 510 of the Bankruptcy Code), Allowed Common Equity Interests and each holder exercising a right of election pursuant to Sections 6.2(b), 7.2(b), 16.1(b)(ii), 18.2(b), 19.2(b), 20.2 and 31.14 of the Plan, such holder's share of Reorganized Common Stock.

31.2    **Timeliness of Payments:**  Any payment or distribution to be made pursuant to the Plan shall be deemed to be timely made if made within ten (10) days after the date specified in the Plan.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due, including, without limitation, deeming distributions made pursuant to Section 31.1(a) hereof to have been made on the Effective Date.

31.3    **Distributions by the Disbursing Agent:**  All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entities entitled to receive the same.  The Disbursing Agent shall not hold an economic or beneficial interest in such property.

31.4    **Manner of Payment under the Plan:**  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the payor, by check drawn on a domestic bank or by wire transfer from a domestic bank; <u>provided, however</u>, that no Cash payment shall be made to a holder of an Allowed Claim or Equity Interest until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

31.5    **Delivery of Distributions:**  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in Section 31.4 hereof, distributions and deliveries to holders of Allowed Claims or Equity Interests shall be made at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim or Equity Interests filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address; <u>provided, however</u>, that initial distributions of Creditor Cash by the Disbursing Agent for the benefit of holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and REIT Series, as applicable, shall be made to the appropriate Trustee (or such Trustee's designee) under the respective governing documents for such obligations, with the REIT Series distributions to be made to the Trust Preferred Trustees for distribution to holders of the REIT Series.  Each such Trustee (or such Trustee's designee) shall, in turn, in accordance with the Plan, distribute and deliver Creditor Cash, as applicable, to those holders in whose name Senior Notes, Senior Subordinated Notes, CCB-1 Common Securities, CCB-1 Preferred Securities, CCB-2 Common Securities, CCB-2 Preferred Securities, PIERS Common Securities, PIERS Preferred Securities, and REIT Series representing Allowed Claims are registered, in the

applicable Trustees' books and records, on the Distribution Record Date, in the manner provided for in the applicable Indenture and other governing documents. The Trustees may conclusively rely upon the distribution instructions received from the Debtors or their agents with respect to contra-CUSIP positions and escrow positions set up by the Debtors or their agents with the Depository Trust Company, and the Trustees shall close and terminate the original CUSIPS after making initial distributions of Creditor Cash and shall have no further distribution obligations thereafter. The Trustees shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Court. The Trustees shall only be required to make the distributions and deliveries described in this Section 31.5 and shall be only required to make such distributions and deliveries in accordance with the terms of the Confirmation Order and the Plan and shall have no liability for actions taken in accordance with the Confirmation Order, the Plan or in reliance upon information provided to the Trustees in accordance with the Confirmation Order, the Plan or in connection with distributions to be made hereunder and thereunder, except for liabilities resulting from their own gross negligence or willful misconduct. Initial distributions of Reorganized Common Stock and Liquidating Trust Interests by the Disbursing Agent for the benefit of holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and REIT Series, as applicable, will be made by the Disbursing Agent directly to such holders, upon consent of the applicable Trustee, which consent shall not be unreasonably withheld. Subsequent distributions to holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed CCB-1 Guarantees Claims, Allowed CCB-2 Guarantees Claims, Allowed PIERS Claims, and REIT Series on account of Liquidating Trust Interests (or such holders' transferees) that have identified themselves to the Liquidating Trustee, to the extent the Liquidating Trustee deems appropriate, will be the responsibility of the Liquidating Trustee as Disbursing Agent. Notwithstanding the foregoing, all distributions are subject to the Lien and priority rights of the Trustees. The Debtors, their agents and servicers, the Disbursing Agent and the Trustees shall have no obligation to recognize any transfer of Senior Notes Claims, Senior Notes, Senior Subordinated Notes Claims, Senior Subordinated Notes, CCB-1 Guarantees Claims, CCB-1 Guarantees, CCB-1 Common Securities, CCB-1 Preferred Securities, CCB-2 Guarantees Claims, CCB-2 Guarantees, CCB-2 Common Securities, CCB-2 Preferred Securities, PIERS Claims, PIERS Common Securities, PIERS Preferred Securities, REIT Series, Preferred Equity Interests, Dime Warrants and Common Equity Interests occurring after the Distribution Record Date.

### 31.6    Undeliverable/Reserved Distributions:

(a)    (1)    Holding of Undeliverable Distributions by the Disbursing Agent. If any distribution to any holder is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified, in writing, of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable. All Entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or Equity Interest.

(2)    Holding of Undeliverable Distributions by the Liquidating Trustee. In connection with distributions to be made pursuant to the

Liquidating Trust Agreement, an "undeliverable" distribution shall include, without limitation, a check that is sent to a holder in respect of a distribution to such holder, which check has not been negotiated within six (6) months following the issuance thereof. Subject to the provisions of Section 31.6(c) of the Plan, if any distribution to a holder of a Liquidating Trust Interest is undeliverable, no additional distribution shall be made to such holder unless and until the Liquidating Trustee (or its duly authorized agent) is notified, in writing, of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Liquidating Trustee (or its duly authorized agent) until such time as a distribution becomes deliverable or as set forth in Section 31.6(b) of the Plan. All Entities ultimately receiving an undeliverable distribution shall not be entitled to any interest or other accruals of any kind on account of the delay in payment resulting from the undeliverable status of such distribution. Except as required by law, the Liquidating Trustee (or its duly authorized agent) shall not be required to attempt to locate any holder of a Liquidating Trust Interest.

(b)    Failure to Claim Undeliverable Distributions. If (i) a check is sent, by either the Disbursing Agent or the Liquidating Trustee, to a holder in respect of distributions and such check is not negotiated within six (6) months following the date on which such check was issued, or (ii) any other form of distribution to a holder is otherwise undeliverable, the Disbursing Agent or the Liquidating Trustee, as the case may be, (or their duly authorized agent) shall, on or prior to the date that is one hundred eighty (180) days from (i) the Effective Date, with respect to all Allowed Claims as of the Effective Date, and (ii) the date that a distribution is made with respect to any Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date, file a list with the Bankruptcy Court setting forth the names of those Entities for which distributions have been made hereunder that have not been negotiated or have been returned as undeliverable as of the date thereof. Any holder of an Allowed Claim or Equity Interest on such list that does not identify itself and assert its rights pursuant to the Plan to receive a distribution within one (1) year from the date so listed shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan, against the Reorganized Debtors, the Liquidating Trust, the Liquidating Trustee, the Trustees, or their respective professionals, agents, or property. In such case, the Liquidating Trustee is authorized to permanently remove such holder and its corresponding Claim and/or Trust Interest from such trustee's books and records and any consideration held for distribution on account of such Allowed Claim or Equity Interest shall revert to such trustee for redistribution to holders of Liquidating Trust Interests in accordance with the terms and provisions hereof.

(c)    Reserve Pending Delivery of Third Party Release. Notwithstanding anything contained herein to the contrary, in the event that a holder of a Claim entitled to a distribution hereunder fails to execute and deliver prior to the Ballot Date the third party release required in accordance with the provisions of Section 41.6 of the Plan (other than (a) holders that affirmatively elect to opt out of granting the releases provided in Section 41.6 and (b) holders of Claims in Class 17A and Non-Filing WMB Senior Note Holders), (i) from and after the Effective Date, the Disbursing Agent or the Liquidating Trustee, as the case may be,

shall reserve amounts of Creditor Cash and Liquidating Trust Interests (but not Runoff Notes) otherwise to be distributed to such holder, (ii) provided that a third party release is not executed and delivered by such holder to the Liquidating Trustee prior to the three (3), six (6) and nine (9) month anniversary of the Effective Date, on or prior to the fifth (5th) Business Day following any such date, the Liquidating Trustee shall serve a notice (together with a form of release) upon such holder, either directly or indirectly through such holder's nominee, informing such holder of such reserved distribution and the requirement of such holder to execute and deliver such third party release to the appropriate trustee prior to delivery of such reserved distribution, and (iii) in the event that, on or prior to the one (1) year anniversary of the Effective Date, such holder fails to execute and deliver such third party release to the appropriate trustee, then, such trustee shall be deemed authorized to permanently remove such holder and its corresponding Claim from such trustee's books and records and any consideration held for distribution on account of such Allowed Claim shall revert to the Liquidating Trustee for redistribution to holders of Liquidating Trust Interests in accordance with the terms and provisions hereof. Without in any way limiting the foregoing, release elections, whether submitted in accordance with this Section 31.6(c) or otherwise, will not be accepted during the period between the Ballot Date and the Effective Date, and any release election submitted during such period shall not be recognized and shall be deemed null and void. In the event that a holder of a Claim seeks to receive and execute a release form in accordance with this provision at any time from and after the Effective Date, but other than pursuant to the periodic notices to be distributed as set forth above, then such holder may, following the Effective Date, submit a request, in writing, to the appropriate trustee to receive a release form, and the appropriate trustee will send such form to such requesting holder on or prior to the fifth (5th) Business Day following the date such trustee receives such request; provided, however, that under no circumstances shall requests for such release form from holders of Claims in Class 17A and Non-Filing WMB Senior Note Holders be honored by the Liquidating Trustee.

        31.7   **Withholding and Reporting Requirements:** Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or Tax Authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Equity Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding Tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder. If the holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution.

        31.8   **Time Bar to Cash Payments:** Checks issued by the Disbursing Agent on account of Allowed Claims or Equity Interests shall be null and void if not negotiated within

ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim or Equity Interest with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of (i) the first (1st) anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim or Equity Interest. After such date, all Claims and Equity Interests in respect of voided checks shall be discharged and forever barred and the Disbursing Agent shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims and Equity Interests in accordance with the terms and provisions hereof.

31.9   **Distributions After Effective Date:** Distributions made after the Effective Date to (a) holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, (b) holders of Claims that fail to execute and deliver a third party release prior to the Effective Date, but later do so, and (c) holders of Dime Warrants to the extent the Dime Warrants are determined, pursuant to a Final Order, to hold Equity Interests or Allowed Claims which are subordinated to the level of Common Equity Interests in accordance with section 510 of the Bankruptcy Code, shall be deemed to have been made in accordance with the terms and provisions of Article XXXI of the Plan.

31.10   **Setoffs:** Except as otherwise provided in the Plan or in the Confirmation Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and causes of action of any nature that one or more of the Debtors, Debtors in Possession, or the Reorganized Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors in Possession, or the Reorganized Debtors of any such claims, rights, and causes of action that the Debtors, Debtors in Possession, or the Reorganized Debtors may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment.

31.11   **Allocation of Plan Distributions Between Principal and Interest:** To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

31.12   **Payment of Trustee Fees and Expenses:** Upon the entry of an order of the Bankruptcy Court authorizing payment thereof, upon notice and a hearing, the Disbursing Agent, unless otherwise stayed, shall pay the Trustee Claims; provided, however, that, with respect to the allowance of Trustee Claims for which an order of the Bankruptcy Court had been entered prior to the Effective Date the Disbursing Agent shall pay such Trustee Claims as soon as practicable after the Effective Date. To the extent that the Disbursing Agent fails to pay any

Trustee Claim in full, whether as a result of the Bankruptcy Court's determination as to whether the Trustee Claim or the amount thereof is reasonable, or a Trustee's determination not to request payment therefor, such Trustee shall have the right to assert its Lien and priority rights pursuant to the applicable Indenture or Guarantee Agreement for payment of any unpaid amount upon any payment or other distribution to be made in accordance with the provisions contained herein. Notwithstanding the foregoing, the Disbursing Agent shall be responsible and, upon presentation of supporting documentation in form and substance satisfactory to the Disbursing Agent, shall satisfy the Trustee Distribution Expenses; provided, however, that, under no circumstance shall the Disbursing Agent be responsible for any indemnification obligation, cost, or expense of any of the Trustees associated with the gross negligence or willful misconduct of a Trustee in making any such distribution. To the extent not liquidated and Allowed as of the Effective Date, Trustee Claims shall remain an obligation of the Liquidating Trust pending termination of the Liquidating Trust; provided, however, that neither a reserve shall be created nor a distribution shall be made in respect thereof without entry of an order of the Bankruptcy Court authorizing such reserve to be created or distribution to be made.

31.13  **Distribution Record Date:** For purposes of distributions, on the Distribution Record Date, registers of the respective Trustees shall be closed and the Trustees shall have no obligation to recognize, and shall not recognize, any transfers of Claims arising under or related to the Indentures or the Guarantee Agreements occurring from and after the Distribution Record Date.

31.14  **Runoff Notes:** Notwithstanding anything contained in the Plan to the contrary, in accordance with Section 31.1(a) of the Plan, and subject to the provisions set forth in subsections of this Section 31.14, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute Runoff Notes to those holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims, Allowed General Unsecured Claims, Allowed CCB-1 Guarantees Claims and Allowed CCB-2 Guarantees Claims that elected to receive Runoff Notes in lieu of distributions of Creditor Cash on the Effective Date.

(a)     In the event that elections to receive Runoff Notes in accordance with Sections 6.2(a), 7.2(a), 16.1(b)(i), 18.2(a) and 19.2(a) of the Plan are made in an aggregate original principal amount greater than One Hundred Forty Million Dollars ($140,000,000.00), such elections shall be reduced pro rata such that the aggregate original principal amount elected is equal to One Hundred Forty Million Dollars ($140,000,000.00); provided, however, that, in the event that, (i) elections to receive Runoff Notes in accordance with Sections 6.2(a), 7.2(a), 16.1(b)(i), 18.2(a) and 19.2(a) of the Plan are made in an aggregate original principal amount equal to or greater than One Hundred Thirty Million Dollars ($130,000,000.00) and (ii) Runoff Notes are tendered in election for the Common Stock Allotment in an aggregate amount less than the Runoff Threshold, such elections to receive Runoff Notes shall be reduced pro rata by an amount necessary to permit the deemed elections contemplated by Section 31.14(d) to occur.

(b)     In the event that less than all of the original principal amount of Runoff Notes have been distributed in lieu of Creditor Cash on the Effective Date, the balance thereof shall constitute Liquidating Trust Assets, and such Runoff Notes and the proceeds thereof shall be distributed to beneficial holders of Liquidating Trust Interests in accordance with the provisions of Article XXVII of the Plan.

(c)    In the event that, pursuant to elections of Reorganized Common Stock in lieu of Runoff Notes, elections are made with respect to Runoff Notes having an aggregate original principal amount in excess of the Runoff Threshold, such elections shall be reduced pro rata by the amount of such excess so that each holder making such election shall receive shares of Reorganized Common Stock equal to its Pro Rata Share of the Common Stock Allotment.

(d)    In the event that holders of Claims with the right of elections pursuant to Sections 6.2(a), 7.2(a), 16.1(b)(ii), 18.2(a) and 19.2(a) of the Plan decline to tender, in the aggregate, Runoff Notes in the original principal amount necessary to reach the Runoff Threshold, each of AAOC, severally and not jointly, shall be deemed to have elected to receive its Pro Rata Share of the Common Stock Allotment in lieu of (i) Runoff Notes (based upon an allocation developed in their sole and absolute discretion) that they would otherwise receive on the Effective Date in their capacity as a holder of Allowed PIERS Claims, in the aggregate amount as is necessary to reach the Runoff Threshold; provided, however, that, to the extent that any of AAOC would not receive Runoff Notes on the Effective Date in its capacity as a holder of Allowed PIERS Claims in an amount sufficient to reach its allocable share of the Runoff Threshold, such AAOC Entity will instead be deemed to have elected to receive such amount of Runoff Notes (based upon an allocation developed in their sole and absolute discretion) in lieu of distributions of Creditor Cash on the Effective Date on account of its Allowed Senior Subordinated Notes Claims, and (ii) fifty percent (50%) of such holders' Litigation Proceeds Interest in their capacity as holders of Allowed PIERS Claims.

Upon the earlier to occur of (x) the determination of the Trust Advisory Board, with the consent of each Entity which would be a recipient of Runoff Notes, (y) all Allowed CCB-1 Guarantees Claims and Allowed CCB-2 Guarantees Claims having been paid, in full, in accordance with the provisions of Articles XIX and XX of the Plan, respectively, and (z) Runoff Notes being the sole remaining Liquidating Trust Asset, the balance of the Runoff Notes in the Liquidating Trust, as the balance thereof may have been reduced from time-to-time, shall be distributed to Creditors whose Allowed Claims have not been paid in full as of the date thereof. To the extent that a holder of an Allowed Claim receives Runoff Notes pursuant to such distribution, the amount of such holder's outstanding Claim shall be reduced on a dollar-for-dollar basis by the lesser of (i) the original outstanding principal amount of the Runoff Notes so received and (ii) the then outstanding principal amount (without regard to any interest paid-in-kind) of the Runoff Notes so received.

## ARTICLE XXXII

## MEANS OF IMPLEMENTATION

32.1    <u>Incorporation and Enforcement of the Settlement Agreement</u>: The Plan incorporates by reference the terms of the Global Settlement Agreement, including, without limitation, (i) the Debtors' agreement to sell, free and clear of all Claims, rights, interests, and Liens, certain of the Plan Contribution Assets to the JPMC Entities, (ii) JPMC's obligations to pay certain consideration for such sale, including, without limitation, JPMC's agreement to pay or fund the payment of the JPMC Assumed Liabilities and certain other Claims, and to waive

certain of its Claims against the Debtors, (iii) JPMC's obligation to transfer certain of the Plan Contribution Assets to the Debtors, (iv) the FDIC Receiver's transfer of any interest it or the Receivership might have in any Plan Contribution Assets, and (v) the agreement among the parties to resolve certain pending Claims and litigation, including the Related Actions, pursuant to the terms of the Global Settlement Agreement and the Plan.

32.2    **Intercompany Claims:** Intercompany Claims shall be extinguished, unless otherwise agreed or resolved between the parties to a given Intercompany Claim, resolved by the Global Settlement Agreement or released by operation of the Plan. Any such transaction may be effected without any further action by the stockholders of any of the Debtors or the Debtors in Possession.

32.3    **Merger/Dissolution/Consolidation:** On or as of the Effective Date or as soon as practicable thereafter, and without the need for any consent or approval, Reorganized WMI may, in its sole and absolute discretion, (i) cause any of the Reorganized WMI Entities to be merged, dissolved, or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized WMI Entities, or (iii) engage in any other transaction in furtherance of the Plan. As soon as practicable after initial distributions are made pursuant to Section 31.1 of the Plan, and without the need for any consent or approval, Reorganized WMI shall complete, or shall cause the completion of, the administrative dissolution of the Washington Mutual Capital Trust 2001.

32.4    **Cancellation of Existing Securities and Agreements:** Except as provided herein, any document, agreement, or instrument evidencing any Claim or Equity Interest shall be deemed automatically cancelled and terminated on the Effective Date without further act or action under any applicable agreement, law, regulation, order, or rule and any and all obligations or liabilities of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests shall be discharged; provided, however, that the foregoing cancellation of securities, documents, agreements or instruments shall not apply to (a) the securities related to the WMB Senior Notes or the WMB Subordinated Notes and (b) any security, document, agreement or instrument related to a Disputed Claim until a Final Order resolving any such Disputed Claim is entered; and, provided, further, that, during the pendency of any such disputes, the Debtors shall not accrue or incur any additional liability or obligation with respect thereto; and, provided, further, that the Indentures and Guarantee Agreements shall continue in effect for the limited purposes of (i) allowing the Trustees to make distributions pursuant to the Plan and to perform such other functions with respect thereto, (ii) permitting the Trustees to maintain and assert any right or Lien for reasonable fees, costs, expenses and indemnities under the Indentures and Guarantee Agreements, (iii) effectuating the applicable subordination provisions of such documents or contesting the application thereof in the prosecution of any appeal to which a Trustee may be a party as of the Effective Date, (iv) enabling the noteholders and the holders of PIERS Claims to receive distributions and (v) enabling the Trustees to make applications in accordance with Section 31.12 of the Plan; and, provided, further, that, except as otherwise provided herein, nothing in this Plan shall impair, affect, or adversely affect the related transactions and the rights of the parties thereto. Notwithstanding any of the foregoing, nothing contained herein shall be deemed to impair, waive or extinguish any rights of the Trustees with respect to any rights contained in the respective Indentures or Guarantee Agreements; provided, however, that, upon payment in full of the

respective Trustee Claims and Trustee Distribution Expenses in accordance with the Plan, the rights of the Trustees to seek payment from or assert claims against the Debtors for amounts owed under the respective Indentures or Guarantee Agreements shall be discharged as provided in this Plan.

32.5    **Claims of Subordination:** Except as specifically provided herein, to the fullest extent permitted by applicable law, on the latest to occur of (i) the Effective Date, (ii) the entry of a Final Order resolving all Claims in the Chapter 11 Cases, and (iii) the final distribution made to holders of Allowed Claims in accordance with Article XXXI of the Plan, all Claims and Equity Interests, and all rights and claims between or among holders of Claims and Equity Interests relating in any manner whatsoever to Claims or Equity Interests, based upon any contractual, equitable or legal subordination and/or subrogation rights, will be terminated and discharged in the manner provided in this Plan, and all such Claims, Equity Interests and rights so based, and all such contractual, equitable and legal subordination and/or subrogation rights to which any Entity may be entitled will be irrevocably waived. To the fullest extent permitted by applicable law, the rights afforded and the distributions that are made in respect of any Claims or Equity Interests under this Plan will not be subject to levy, garnishment, attachment or like legal process by any holder of a Claim or Equity Interest by reason of any contractual, equitable or legal subordination and/or subrogation rights, so that, notwithstanding any such contractual, equitable or legal subordination and/or subrogation rights, each holder of a Claim or Equity Interest shall have and receive the benefit of the rights and distributions set forth in this Plan.

32.6    **Surrender of Instruments:** Except to the extent evidenced by electronic entry, and except with respect to the WMB Senior Notes and the WMB Subordinated Notes, as a condition of receiving any distribution pursuant to the Plan, each holder of a certificated instrument or note must surrender such instrument or note to the appropriate Trustee or the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender such instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity, or similar affidavit reasonably satisfactory to the appropriate Trustee or the Disbursing Agent before the first (1st) anniversary of the Effective Date shall be deemed to have forfeited all rights, interests and Claims and may not participate in any distribution under the Plan. Any distribution so forfeited shall become the property of the Disbursing Agent for distribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

32.7    **Issuance of Runoff Notes, Liquidating Trust Interests and Reorganized Common Stock:** The issuance by Reorganized WMI of the Runoff Notes, the Liquidating Trust Interests and the Reorganized Common Stock on the Effective Date, if applicable, is hereby authorized without the need for any further corporate action and without any further action by holders of Claims or Equity Interests.

32.8    **Exemption from Securities Laws:** To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the Runoff Notes, the Liquidating Trust Interests and the Reorganized Common Stock will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

32.9    **Hart-Scott-Rodino Compliance:** Any shares of Reorganized Common Stock to be distributed under the Plan to any Entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such Entity shall have expired or been terminated.

32.10    **Fractional Stock or Other Distributions:** Notwithstanding anything to the contrary contained herein, no fractional shares of Reorganized Common Stock shall be distributed, and no Cash payments of fractions of cents will be made. Fractional dollars shall be rounded down to the nearest whole dollar. Unless otherwise determined by the Bankruptcy Court at the Confirmation Hearing, fractional shares of stock shall be rounded up or down, as the case may be, to the nearest whole unit. No Cash will be paid in lieu of such fractional shares of stock or dollars.

32.11    **Credit Facility:**

(a)    Terms of Credit Facility: The terms of the Credit Facility are set forth in the Credit Agreement annexed hereto as Exhibit "C".

(b)    Replacement Lenders: During the period from the date hereof up to and including the Ballot Date, the Debtors shall market the terms of the Credit Facility in an effort to obtain terms superior to those set forth in Section 32.11(a) of the Plan; provided, however, that, in accordance with the procedures set forth on the Ballot, any Creditor or holder of an Equity Interest may, upon (1) presentation of financial information necessary to establish the ability to participate as a lender in accordance with the provisions of the Credit Facility and (2) the consent of the Equity Committee, which consent shall not be unreasonably withheld, become a lender under the Credit Facility in lieu of the lenders contemplated pursuant to the Credit Agreement. Prior to the commencement of the Confirmation Hearing, the Debtors shall file a notice with the Bankruptcy Court setting forth the lender(s) selected to provide the Credit Facility.

# ARTICLE XXXIII

## CREDITORS' COMMITTEE/EQUITY COMMITTEE

33.1    **Dissolution of the Creditors' Committee:** On the first (1st) Business Day thirty (30) days following the Effective Date, and provided that payments to holders of Unsecured Claims have been made in accordance with Article XXXI of the Plan, the Creditors' Committee shall be dissolved, and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith; provided, however, that the Creditors' Committee may, at its own discretion, continue or resume its duties arising from or relating to (i) any pending litigation or contested matter to which the Creditors' Committee is a party, (ii) any appeal filed regarding confirmation of the Plan, (iii)

obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered during the Chapter 11 Cases that remain in full force and effect according to their terms, (iv) applications for fees and expenses of members of the Creditors' Committee and requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases, and (v) motions, appeals or other litigation seeking the enforcement of the provisions of the Plan and the transactions contemplated hereunder or in the Confirmation Order; and, provided, further, that the Liquidating Trust shall continue to compensate the Creditors' Committee's attorneys, financial advisors, and other agents, if any, for any of the post-Effective Date activities identified in this Section 33.1 of the Plan; and, provided, further, that, in the event that (a) the Creditors' Committee elects to continue or resume any or all of the enumerated duties set forth in this Section 35.1 and (b) all then-appointed members of the Creditors' Committee subsequently resign, (i) the United States Trustee may appoint such Persons as the United States Trustee deems appropriate to represent the interests of the Creditors' Committee and (ii) if no such Persons are appointed, then, (y) all right, title and interest of the Creditors' Committee in any and all tolling agreements entered into by the Creditors' Committee, for itself or on behalf of the Debtors and Debtors in Possession, on the one hand, and a potential defendant, on the other hand, shall be deemed assigned to the Liquidating Trust and the Liquidating Trustee and the Liquidating Trust and the Liquidating Trustee shall be entitled to the benefits therein, including, without limitation, timing with respect to the commencement of any litigation, as if the Liquidating Trust and the Liquidating Trustee were a party to any such tolling agreement, and (z) in its sole and absolute discretion, the Liquidating Trustee may, and, if it chooses to, shall, accede to the position of the Creditors' Committee in prospective or then-pending litigations or contested matters, as the case may be. Without limiting the foregoing, on the Effective Date, the Creditors' Committee shall take any and all action as is necessary to cause the withdrawal and dismissal, with prejudice, of the appeal taken by the Creditors' Committee from the September Opinion.

33.2   **Dissolution of the Equity Committee:** On the Effective Date, other than with respect to its duties and obligations set forth herein, the Equity Committee shall be dissolved and the members thereof shall be released of and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Equity Committee's attorneys, financial advisors, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith; provided, however, that, in the event that (a) a timely appeal is taken from the Confirmation Order and (b) such appeal remains pending, the Equity Committee shall be dissolved on the earlier to occur of (1) dismissal or withdrawal of such appeal and (2) a determination, by Final Order, as to the merits of such appeal. Without limiting the foregoing, on the Effective Date, the Equity Committee shall take any and all action as is necessary to cause the withdrawal and dismissal, with prejudice, of (x) the Equity Committee Adversary Proceeding, (y) the Equity Committee Action to Compel and (z) the appeals taken by the Equity Committee from (i) the January Opinion and (ii) the September Opinion.

# ARTICLE XXXIV

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

34.1    **Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases:** Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between one or both of the Debtors and any Entity, and which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that (i) has been assumed and assigned or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date or (ii) that is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Plan Supplement, including, without limitation, any executory contract or unexpired lease sold, accepted, or transferred to one of the JPMC Entities pursuant to the terms of the Global Settlement Agreement; provided, however, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend such schedules to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, as the case may be, either rejected, assumed, or assumed and assigned as of the Effective Date. The Debtors shall serve (i) notice of any executory contract and unexpired lease to be assumed or assumed and assigned through the operation of this Section 34.1 by including a schedule of such contracts and leases in the Plan Supplement and (ii) notice of any executory contract and unexpired lease to be rejected through the operation of this Section 34.1 by serving a separate notice to the relevant counterparties to such agreements. To the extent there are any amendments to such schedules, the Debtors shall provide notice of any such amendments to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on the schedules to the Plan Supplement or in any separate notice shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

34.2    **Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases:** Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection, assumption, or assumption and assignment, as the case may be, of executory contracts and unexpired leases pursuant to Section 34.1 of the Plan or pursuant to the Global Settlement Agreement.

34.3    **Inclusiveness:** Unless otherwise specified on the schedules to the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on such schedule.

34.4    **Cure of Defaults:** Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed or assumed and assigned pursuant to Section 34.1 of the Plan, the Debtors shall,

pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty (20) days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases to be assumed pursuant to Section 34.1 of the Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned.  The parties to such executory contracts or unexpired leases will have twenty (20) days from the date of service of such notice to file and serve any objection to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court.  Notwithstanding Section 34.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

34.5    **Rejection Damage Claims:**  If the rejection of an executory contract or unexpired lease by the Debtors hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties or agents, successors, or assigns, including, without limitation, the Reorganized Debtors and the Liquidating Trust, unless a proof of Claim is filed with the Bankruptcy Court and served upon attorneys for the Debtors or the Liquidating Trustee, as the case may be, on or before thirty (30) days after the latest to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease.

34.6    **Indemnification and Reimbursement Obligations:**  For purposes of the Plan, (i) to the extent executory in nature, the obligations of the Debtors to indemnify and reimburse their directors or officers that were directors or officers, respectively, on or prior to the Petition Date shall be deemed rejected as of the Effective Date and such parties' rights to assert rejection damage claims, if any, shall be governed by Section 34.5 of the Plan and (ii) indemnification obligations of the Debtors arising from conduct of officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims.

34.7    **Termination of Benefit Plans:**  Notwithstanding anything contained in the Plan to the contrary, the Debtors and the Liquidating Trustee, as the case may be, shall be authorized, but not required, to terminate all Benefit Plans, in accordance with the terms and provisions of the documents and instruments relating thereto and applicable law, at such time as determined by the Debtors or the Liquidating Trustee, as the case may be, in their sole discretion; provided, however, that, until the transfer or termination of any Benefit Plan, the Debtors, the Liquidating Trustee, and the Reorganized Debtors, as the case may be, shall (a) continue to perform any and all of their administrative obligations thereunder and (b) with respect to Benefit Plans subject to Title IV of ERISA, continue to make any required minimum funding contributions and pay applicable Pension Benefit Guaranty Corporation insurance premiums; and, provided, further, that, upon termination thereof, the Debtors, the Liquidating Trustee, or the Reorganized Debtors, as the case may be, shall provide administrative services in connection with the operation and wind down of the Benefit Plans; and, provided, further, that the continuation of any Benefit Plan by the Debtors, the Liquidating Trustee, or the Reorganized Debtors, as the case may be, from and after the Confirmation Date, including, without limitation,

the provision of administrative services in connection with the operation and wind down of such Benefit Plan, shall not constitute an assumption of such Benefit Plans in accordance with section 365 of the Bankruptcy Code; and, provided, further, that the failure to perform any obligation under the Benefit Plans or to provide administrative services in connection with the wind down of the Benefit Plans shall be without prejudice to (i) any Entity to assert such failure gives rise to an Administrative Expense Claim and (ii) the Debtors or the Liquidating Trustee to contest the assertion thereof. For the avoidance of doubt, the foregoing shall not apply to any employee benefit or welfare plan to be maintained by the Reorganized Debtors or the Liquidating Trustee, as the case may be, in the ordinary course of business after the Effective Date for the benefit of employees actively employed by the Reorganized Debtors or the Liquidating Trustee.

     34.8   **Termination of Vendor Stipulation:** On the Effective Date, that certain Stipulation By and Between Debtors and JPMorgan Chase Bank, N.A. Concerning Certain Contracts, dated October 16, 2008, shall be terminated and deemed of no further force and effect, except as specifically provided in the Confirmation Order and in Section 2.14 of the Global Settlement Agreement.

# ARTICLE XXXV

# RIGHTS AND POWERS OF DISBURSING AGENT

     35.1   **Exculpation:** From and after the Effective Date, the Disbursing Agent shall be exculpated by all Entities, including, without limitation, holders of Claims and Equity Interests and other parties in interest, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or an Equity Interest or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

     35.2   **Powers of the Disbursing Agent:** Except as may be provided otherwise hereunder, the Disbursing Agent shall be empowered to (i) take all steps and execute all instruments and documents necessary to effectuate the Plan, (ii) make distributions contemplated by the Plan, (iii) comply with the Plan and the obligations thereunder, and (iv) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

     35.3   **Fees and Expenses Incurred From and After the Effective Date:** Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, incurred by the Disbursing Agent, shall be paid in Cash without further order of the Bankruptcy Court.

# ARTICLE XXXVI

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN

36.1    **Conditions Precedent to Confirmation of the Plan:** Confirmation of the Plan is subject to satisfaction of the following conditions precedent:

(a)    <u>Required Orders</u>. The Clerk of the Bankruptcy Court shall have entered an order or orders (including, without limitation, the Disclosure Statement Order and the Confirmation Order):

(1)    approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(2)    authorizing the solicitation of votes with respect to the Plan;

(3)    determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan;

(4)    confirming and giving effect to the terms and provisions of the Plan, including the releases in Article XLI of the Plan;

(5)    approving the Global Settlement Agreement in accordance with its terms including, but not limited to the releases of the Released Parties;

(6)    determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan;

(7)    approving the documents in the Plan Supplement;

(8)    authorizing the Debtors to execute, enter into, and deliver the documents in the Plan Supplement, and to execute, implement and take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan, the documents in the Plan Supplement, and the Global Settlement Agreement;

(9)    determining that the compromises and settlements set forth in the Global Settlement Agreement and this Plan are appropriate, reasonable and approved;

(10)    ordering the sale of the Plan Contribution Assets to be sold to the JPMC Entities or the Debtors, as applicable, pursuant to the Global Settlement Agreement, free and clear of all rights, Claims, interests and Liens, and finding that the parties acquired such assets in good faith under

the meaning of, and subject to the protections of, section 363(m) and pursuant to section 1123(a)(5) of the Bankruptcy Code; and

(11)   withdrawing and vacating for all purposes (a) the September Order to the extent relating to the Standing Motion and (b) those portions of the September Opinion relating to the Standing Motion, including, but not limited to, (i) Section III (H) of the September Opinion, pages 108 through 139, and (ii) the first sentence on page 68, footnote 31 on page 70 and the last paragraph of Section III(D) of the September Opinion, page 73.

(b)   <u>Form of Orders</u>. The Confirmation Order and this Plan each is in a form and substance satisfactory to the Debtors, the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate and AAOC.

(c)   <u>Confirmation Order</u>. The Confirmation Order includes (i) determinations that all of the settlements and compromises contained in the Plan and the Global Settlement Agreement satisfy applicable standards under sections 365, 1123(b)(3) and 1129 of the Bankruptcy Code and Bankruptcy Rule 9019, to the extent applicable, and (ii) the releases and injunctions set forth in Article XLI of the Plan.

36.2   **Waiver of Conditions Precedent to Confirmation:**  To the extent practicable and legally permissible, each of the conditions precedent in Section 36.1 hereof may be waived, in whole or in part, by the Debtors, subject to the prior written approval of the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate and AAOC.  Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Bankruptcy Court executed by the Debtors, the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate and AAOC.

## ARTICLE XXXVII

## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN

37.1   **Conditions Precedent to Effective Date of the Plan:**  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)   <u>Satisfaction of Certain Settlement Agreement Conditions</u>. The satisfaction of the "Conditions to Effective Date" set forth in Section 7.2 of the Global Settlement Agreement.

(b)   <u>Entry of the Confirmation Order</u>. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in accordance with section 1129 of the Bankruptcy Code, and the Confirmation Order shall have become a Final Order.

(c)   <u>Execution of Documents; Other Actions</u>. All other actions and documents necessary to implement the Plan shall have been effected or executed.

37.2  **Waiver of Conditions Precedent**:  To the extent practicable and legally permissible, each of the conditions precedent in Section 37.1 hereof may be waived, in whole or in part, by the Debtors, subject to the prior written approval of the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate, and AAOC.  Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Bankruptcy Court executed by the Debtors, the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate and AAOC.

## ARTICLE XXXVIII

## RETENTION OF JURISDICTION

38.1  **Retention of Jurisdiction**:  The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)  to resolve any matter related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claim arising therefrom, including those matters related to the amendment after the Effective Date of the Plan to add any executory contract or unexpired lease to the list of executory contracts and unexpired leases to be rejected;

(b)  to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including, without limitation, the Global Settlement Agreement, unless any such agreements or documents contain express enforcement and dispute resolution provisions to the contrary, in which case, such provisions shall govern;

(c)  to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors, the Reorganized Debtors, or the Liquidating Trustee prior to or after the Effective Date;

(d)  to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)  to hear and determine any timely objection to any Claim or Equity Interest, whether such objection is filed before or after the Confirmation Date, including any objection to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim or Equity Interest, in whole or in part;

(f)  to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(g)    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)    to consider any modification of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)    to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)    to hear and determine disputes arising in connection with or relating to the Plan or the Global Settlement Agreement, or the interpretation, implementation, or enforcement of the Plan or the Global Settlement Agreement, or the extent of any Entity's obligations incurred in connection with or released under the Plan or the Global Settlement Agreement, unless such agreements or documents contain express enforcement or dispute resolution provisions to the contrary, in which case such provisions should govern;

(k)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or the Global Settlement Agreement;

(l)    to determine any other matter that may arise in connection with or that is related to the Plan, the Disclosure Statement, the Supplemental Disclosure Statement, the Confirmation Order, the Global Settlement Agreement, or any contract, instrument, release, or other agreement or document created in connection therewith, unless such agreements or documents contain express enforcement or dispute resolution provisions, in which case, such provisions should govern;

(m)    to hear and determine matters concerning state, local, and federal Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any matter relating to the Tax Refunds, and any request by the Debtors or by the Liquidating Trustee, as applicable, for an expedited determination of Tax under section 505(b) of the Bankruptcy Code with respect to the Debtors, the Liquidating Trust, or the Liquidating Trust Claims Reserve, as applicable);

(n)    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(o)    to enter a final decree closing the Chapter 11 Cases;

provided, however, that the foregoing is not intended to (i) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (ii) grant the Bankruptcy Court jurisdiction over disputes between JPMC and the FDIC Receiver and/or FDIC Corporate under the Purchase and Assumption Agreement, (iii) impair the rights of an Entity to (a) invoke the jurisdiction of a court, commission, or tribunal with respect to matters relating to a governmental unit's police and regulatory powers and (b) contest the invocation of any such jurisdiction; and provided, further, that the invocation of such jurisdiction, if granted, shall not extend to the allowance or priority of Claims or the enforcement of any money judgment against the Debtors, the

Reorganized Debtors, or the Liquidating Trust, as the case may be, entered by such court, commission, or tribunal, and (iv) impair the rights of an Entity to (a) seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d) and (b) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

## ARTICLE XXXIX

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

39.1    **Modification of Plan:**  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, except in the event any amendment or modification would materially adversely affect the substance of the economic provisions set forth in the Plan or the Global Settlement Agreement, to amend or modify the Plan, the Plan Supplement, or any exhibit to the Plan at any time prior to the entry of the Confirmation Order, subject in each case to the consent of the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate and AAOC; provided, however, that, for the avoidance of doubt, it is understood and agreed that any change to the definition of JPMC Assumed Liabilities or to the releases in Article XLI of the Plan, or to the assets or benefits to be received by JPMC pursuant to the Global Settlement Agreement would be material to the JPMC Entities.  Upon entry of the Confirmation Order, the Debtors may, with the consent of the Creditors' Committee, the Equity Committee, the JPMC Entities, the FDIC Receiver, FDIC Corporate and AAOC, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, subject in each case to the terms of the Global Settlement Agreement.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

39.2    **Revocation or Withdrawal:**

(a)    The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors.

(b)    If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim by the Debtors or any other Entity, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceeding involving the Debtors.

39.3    **Amendment of Plan Documents:**  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan, and any document attached to any of the foregoing, shall be as provided in such Plan Supplement, Exhibit to the Plan Supplement, or Exhibit to the Plan and their respective attachments, as the case may be.

39.4    **No Admission of Liability:**

(a)    The submission of this Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in this Plan.

(b)    None of this Plan (including, without limitation, the Exhibits hereto), or any settlement entered, act performed or document executed in connection with this Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the Related Actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or used as an admission or evidence against the Reorganized Debtors, the Debtors, or any other Person or Entity with respect to the validity of any Claim; or (iv) is or may be deemed to be used as an admission or evidence of the jurisdiction of any court to adjudicate claims or matters relating to the Receivership.  None of this Plan or any settlement entered, act performed or document executed in connection with this Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of this Plan, and except that, once confirmed, any Entity may file this Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

## ARTICLE XL

## CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTORS

40.1    **Corporate Action:**  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Reorganized Debtors, including, without limitation, the authorization to issue or cause to be issued the Runoff Notes and the Reorganized Common Stock, the authorization to enter into the Credit Facility, the adoption of the Reorganized Debtors Certificates of Incorporation and the Reorganized Debtors By-Laws, and the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors pursuant to the Plan, as applicable, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors, as the case may be.  The cancellation of all Equity Interests and other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors, as applicable, shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors.  Without limiting the foregoing, from and after the Confirmation Date, the Debtors and the Reorganized Debtors shall take any and all actions deemed appropriate in order to consummate the transactions contemplated herein, and, notwithstanding any provision contained in the Debtors' articles of incorporation and by-laws to the contrary, such Entities shall not require the affirmative vote of holders of Equity Interests in

order to take any corporate action including to (i) compromise and settle claims and causes of action of or against the Debtors and their chapter 11 estates and (ii) dissolve, merge, or consolidate with any other Entity.

40.2 **Reincorporation:** No later than one (1) year following the Effective Date, Reorganized WMI may, at the discretion of the board of directors of Reorganized WMI and without requiring the approval of Reorganized WMI's shareholders, reincorporate from the State of Washington to the State of Delaware, including, without limitation, by merging with a corporation incorporated under the laws of the State of Delaware or by such conversion or redomestication process as is authorized under applicable law.

40.3 **Amendment of Articles of Incorporation and By-Laws:** The articles of incorporation and by-laws of the Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors Certificates of Incorporation and the Reorganized Debtors By-Laws, each of which shall in form and substance be reasonably satisfactory to the Creditors' Committee, the Equity Committee and AAOC. The Reorganized Debtors Certificates of Incorporation and the Reorganized Debtors By-Laws, to the extent applicable, shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

40.4 **Directors of the Reorganized Debtors:** On the Effective Date, the board of directors of each of the Reorganized Debtors shall consist of seven (7) persons: six (6) members selected by the Equity Committee and one (1) member selected by the lenders party to the Credit Facility. The initial directors shall be disclosed prior to the Confirmation Hearing. In the event that, during the period from the Confirmation Hearing up to and including the Effective Date, circumstances require the substitution of one (1) or more persons selected to serve on the boards of directors of the Reorganized Debtors, the Equity Committee and the lenders party to the Credit Facility, as the case may be, shall choose a respective substitute and the Debtors shall file a notice thereof with the Bankruptcy Court and, for purposes of section 1129 of the Bankruptcy Code, any such replacement person, designated in accordance with the requirements of the immediately preceding sentence, shall be deemed to have been selected and disclosed prior to the Confirmation Hearing.

40.5 **Officers of the Reorganized Debtors:** To the extent applicable, the board of directors of the Reorganized Debtors shall elect officers of the Reorganized Debtors as of or after the Effective Date.

## ARTICLE XLI

## MISCELLANEOUS PROVISIONS

41.1 **Title to Assets:** Except as provided in Confirmation Order, on the Effective Date, title to all assets and properties encompassed by the Plan shall vest in the Reorganized Debtors, Reorganized WMI, the Liquidating Trust, the JPMC Entities or the FDIC Receiver, as the case may be, free and clear of all Liens and in accordance with sections 363 and 1141 of the Bankruptcy Code, and the Confirmation Order shall be a judicial determination of

discharge of the liabilities of the Debtors and the Debtors in Possession except as provided in the Plan.

41.2   **Discharge and Release of Claims and Termination of Equity Interests:**

(a)   Except as expressly provided in Section 41.6 of the Plan or the Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Equity Interests or other rights of a holder of an equity security or other ownership interest. Upon the Effective Date, the Debtors and the Reorganized Debtors shall (i) be deemed discharged under section 1141(d)(1)(A) of the Bankruptcy Code and released from any and all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interests or other rights of a holder of an equity security or other ownership interest, of any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate and cancel all rights of any equity security holder in any of the Debtors and all Equity Interests.

(b)   Except as provided in Sections 41.6 and 41.12 of the Plan or the Confirmation Order, all Entities shall be precluded from asserting against any and each of the Debtors and the Reorganized Debtors, and any and each of their respective assets, property and estates, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Equity Interests or other rights of a holder of an equity security or other ownership interest. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interests, or other rights of a holder of an equity interest and termination of all rights of any such holder in any of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall

void and extinguish any judgment obtained against any of the Debtors or the Reorganized Debtors, and their respective assets, property and estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtors. As of the Effective Date, and in consideration for the value provided under the Global Settlement Agreement to effectuate the Plan, each holder of a Claim or Equity Interest in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against each and any of the Debtors and the Reorganized Debtors, and their respective assets, property and estates, all such Claims and Equity Interests.

(c)    Except as expressly provided in Sections 41.6 and 41.12 of the Plan or the Confirmation Order, in furtherance of the foregoing, and except for the JPMC Assumed Liabilities, Allowed WMB Vendor Claims, and Allowed WMI Vendor Claims, to the extent provided in the Global Settlement Agreement, none of the JPMC Entities or any of their Related Persons shall have any liability for, and the Debtors, on behalf of themselves, their respective estates and their present Affiliates (other than WMB and its subsidiaries), hereby release the JPMC Entities and each of their Related Persons from liability for, any and all Claims that (i) are or were property of the Debtors, their respective estates, or their present Affiliates (other than WMB and its subsidiaries), and (ii) were or could have been brought in any of the Related Actions.

41.3    **Injunction on Claims**: Except as otherwise expressly provided in Sections 41.6 and 41.12 of the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan or the Global Settlement Agreement, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 hereof, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest that is terminated, cancelled, assumed or transferred pursuant to the Plan; provided, however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided,

<u>further,</u> that, except in connection with a properly filed proof of Claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery, including fines, restitution or forfeiture, from any of the Released Parties, including, without limitation, the Debtors, the Debtors in Possession or the Reorganized Debtors, or any of their respective assets, property or estates, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power; and, <u>provided, further,</u> that, subject to Section 3.8 of the Global Settlement Agreement, such injunction shall not preclude the JPMC Entities, the Receivership, the FDIC Receiver and the FDIC Corporate from pursuing any and all claims against each other or any other defenses thereto pursuant to the Purchase and Assumption Agreement. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property and estates.

      41.4    **Integral to Plan:** Each of the discharge, injunction and release provisions provided in this Article XLI is an integral part of the Plan and is essential to its implementation. Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article XLI.

      41.5    **Releases by the Debtors, the Creditors' Committee and the Equity Committee:**

      (a)    <u>Released Parties</u>. Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Global Settlement Agreement, on the Effective Date, for good and valuable consideration, each of the Debtors and the Reorganized Debtors, on its own behalf and as representative of its respective estate, the Disbursing Agent and each of the Debtors' Related Persons shall be deemed to hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtors, the Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees; <u>provided, however,</u> that the foregoing release shall not extend to acts of gross negligence or willful misconduct (other than with respect to the JPMC Entities and their respective Related Persons).

      (b)    <u>Release of AAOC, Holders of Allowed Senior Notes Claims, Holders of Allowed Senior Subordinated Notes Claims, Holders of CCB-1 Guarantees Claims, Holders of CCB-2 Guarantees Claims and Holders of Allowed PIERS Claims.</u> On the Effective

Date, for good and valuable consideration, each of the Debtors and the Reorganized Debtors, on its own behalf and as representative of its respective estate, the Disbursing Agent and each of the Debtors' Related Persons, the Creditors' Committee and the Equity Committee, without giving any legitimacy or merit to any of the allegations raised or asserted with respect to AAOC, holders of Allowed Senior Notes Claims, Allowed Senior Subordinated Notes Claims and holders of Allowed PIERS Claims during the Chapter 11 Cases, shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge (1) the AAOC Releasees, (2) the Senior Notes Claims Releasees, (3) the Senior Subordinated Notes Claims Releasees, (4) the PIERS Claims Releasees and (5) the CCB Releasees, and each of their respective officers, directors, agents, employees and, solely in their capacity as counsel with respect to the Debtors' Chapter 11 Cases, attorneys from any and all Estate Claims that the Debtors, the Creditors' Committee and the Equity Committee, have or may have or claim to have, now or in the future, against (1) the AAOC Releasees, (2) the Senior Notes Claims Releasees, (3) the Senior Subordinated Notes Claims Releasees, (4) the PIERS Claims Releasees and (5) the CCB Releasees, and each of their respective officers, directors, agents, employees and, solely in their capacity as counsel with respect to the Debtors' Chapter 11 Cases, attorneys.

### 41.6    Releases by Holders of Claims and Equity Interests:

(a)    Global Third Party Releases. On the Effective Date, for good and valuable consideration, and to the fullest extent permissible under applicable law, each Entity (Creditor or holder of an Equity Interest) that (i) has held, currently holds or may hold a Released Claim or any Released Third Party Causes of Action, (ii) is entitled to receive, directly or indirectly, a distribution or satisfaction of its Claim or Equity Interest pursuant to the Plan, and (iii) elects, by not checking or checking the appropriate box on its Ballot or election form, as the case may be, to grant the releases set forth in this Section 41.6, on their own behalf and on behalf of anyone claiming through them, shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge (1) each and all of the Released Parties, from any and all Released Claims and/or any claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged in the Actions or in the Texas Litigation, or that could have been alleged in respect of the foregoing or other similar proceeding, including, without limitation, any such claim demand, right, liability, or cause of action for indemnification, contribution or any other basis in law or equity for damages, costs or fees incurred by the releasors herein arising directly or indirectly from or otherwise relating thereto and (2) each of (a) the AAOC Releasees, (b) the Senior Notes Claims Releasees, (c) the Senior Subordinated Notes Claims Releasees, (d) the PIERS Claims Releasees and (e) the CCB Releasees from any and all Released Third Party Causes of Action; **provided, however, that each Entity that has elected not to grant the releases set forth in this Section 41.6, including, without limitation, any Entity that fails to execute and deliver a release following notice in accordance with the provisions of Section 31.6(c) hereof, shall not be entitled to, and shall not receive, any payment, distribution or other satisfaction of its claim pursuant to the Plan**; and, provided, further, that, notwithstanding anything contained in this Section 41.6(a) to the contrary, the release set forth in Section 41.6(a)(1) shall not extend to acts of gross negligence or willful misconduct of any Released Parties (other than with respect to the JPMC Entities and their respective Related Persons); and, provided, further, that, notwithstanding the foregoing, solely for purposes of this Section 41.6(a), "Released Parties" shall not include

Related Persons other than (i) Related Persons of the JPMC Entities and (ii) Related Persons of the FDIC Receiver and FDIC Corporate.

(b) <u>Limited Governmental Exceptions</u>. Nothing contained herein or in the Confirmation Order shall (1) (i) release, or is intended to release, any non-Debtor, including any non-Debtor Entity that may be a Released Party or a Related Person, in connection with any legal action or claim brought by the United States Securities and Exchange Commission or (ii) prejudice the rights of any such non-Debtor Entity to defend or otherwise contest any such legal action or claim, (2) (i) to the extent that (A) the Pension Plans are terminated from and after the Effective Date and (B) the Pension Plans are underfunded as of the Effective Date, release, or is intended to release, any non-Debtor, including any non-Debtor Entity that may be a Released Party or a Related Person, from any liability as a fiduciary of the Pension Plans, under any law, government policy or regulatory provision, (ii) enjoin or preclude the Pension Benefit Guaranty Corporation from enforcing such liability against such non-Debtor Entity during the applicable statute of limitations period set forth in 29 U.S.C. § 1303 following any such termination, or (iii) prejudice the rights of any such non-Debtor Entity to defend or otherwise contest any such legal action or claim, and (3) (i) release the claims held by the California Franchise Tax Board, including rights of setoff and recoupment with respect to claims against or among two or more non-Debtor Entities, against any non-Debtor and, notwithstanding any other provision of the Plan or the Confirmation Order, the California Franchise Tax Board shall not be enjoined from pursuing any such claims and (ii) prejudice the rights of any such non-Debtor to defend or otherwise contest any such legal action or claim.

(c) <u>BKK Liabilities</u>. Nothing contained herein or in the Confirmation Order is intended to, nor shall it, release any non-Debtor or non-Debtor Entity that may be a Released Party or a Related Person, in connection with any legal action or claim brought by CDTSC or the BKK Group relating to the BKK Site that is the subject of the BKK Litigation; <u>provided, however</u>, that nothing contained in this Section 41.6(c) is intended, nor shall it be construed, to (1) constitute evidence of or any support for an argument that any such non-Debtors have any such liabilities, or (2) create any liability on behalf of the Liquidating Trust. For the avoidance of doubt, nothing herein shall affect the releases or other terms of the BKK Settlement Agreement, which provisions shall control over any contrary provision in the Confirmation Order, the Plan or the Global Settlement Agreement.

(d) <u>Securities Litigations</u>. Nothing contained herein, in the Confirmation Order or the Global Settlement Agreement with respect to the releases, exculpations, injunctions or similar provisions is intended to, nor shall it, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any non-Debtor or non-Debtor Entity in the Securities Litigations, including, but not limited to, the defendants named in the Securities Litigations (the "<u>Securities Litigations Carve-Out</u>"), nor will any potential distribution on account of the relevant proofs of claim filed by lead plaintiffs in the Securities Litigations and/or which have been withdrawn without prejudice (subject to all parties' rights with respect to the relevant proofs of claim in accordance with and subject to the terms of the Bankruptcy Court-approved stipulations) be forfeited by virtue of the Securities Litigations Carve-Out.

(e) Intentionally Deleted

(f)     <u>Truck and Fire</u>. Notwithstanding anything contained herein or in the Verification Form (as defined in the Order [D.I. 7081] approving the Supplemental Disclosure Statement), with respect to the Claims of Truck Insurance Exchange ("<u>Truck</u>") and Fire Insurance Exchange ("<u>Fire</u>") asserted against the Debtors and the Debtors' chapter 11 estates (collectively, the "<u>Truck/Fire Claims</u>"), including, without limitation, those Claims included in Classes 17A and 17B of the Plan, (a) the release and injunction provisions of the Plan are intended to, and shall release only, all Claims of Truck and Fire against any Released Parties arising from or relating to the Truck/Fire Claims, other than any claims, counterclaims or defenses under or relating to any policies of insurance, and (b) the release and injunction provisions of the Plan are not intended to, and shall not release, any claims of Truck, Fire or any Affiliate of Truck or Fire against (i) a non-Debtor as an investor in securities issued by any such non-Debtor Entity, (ii) WMB, (iii) the Receivership, or (iv) the FDIC Receiver solely with respect to the Receivership.

(g)     <u>Texas Litigation</u>. Nothing contained herein or in the Confirmation Order with respect to the releases, exculpations, injunctions or similar provisions is intended to, nor shall it, release, enjoin or restrain the prosecution of direct claims, if any, asserted, or that could have been asserted, in the Texas Litigation against any non-Debtor Entity; <u>provided, however</u>, that the foregoing is without prejudice to the rights of any such non-Debtor Entity to contest, upon notice and a hearing, the validity, merits and ownership of or standing to assert any such direct claims; and, <u>provided, further</u>, that the Bankruptcy Court is not making, either pursuant to the Plan or the Confirmation Order, a determination as to which Entity, including, without limitation, the Debtors, owns the claims asserted, or that could have been asserted, in the Texas Litigation; and, <u>provided, further</u>, that any and all direct claims against the Debtors and derivative claims of the Debtors, if any, that have been or could have been asserted against any Released Party in the Texas Litigation shall, upon the Effective Date, be released, discharged and enjoined.

In addition to, and not in any way limiting the foregoing, each holder of an Allowed WMB Senior Notes Claim and each Accepting Non-Filing WMB Senior Notes Holder shall be deemed to have released the Debtors, the Reorganized Debtors, and each of their respective Related Persons from any and all direct and derivative claims arising from or related to such holder's WMB Senior Notes, as well as any misrepresentation or other similar claim for damages arising from the purchase or sale of such holder's WMB Senior Notes (including, without limitation, any Section 510(b) Subordinated WMB Notes Claims that such holder may have).

<u>**Waiver of Section 1542**</u>: **All persons providing releases pursuant to the provisions of Section 41.6 of the Plan expressly and voluntarily waive Section 1542 of the California Civil Code, or any similar, comparable or equivalent provision of the statutory or non-statutory law of California or any other jurisdiction. Section 1542 provides:**

> **A general release does not extend to claims under which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

41.7    **Injunction Related to Releases:** As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim, an Estate Claim, any Released Third Party Causes of Action or an Equity Interest that is released pursuant to Sections 41.5 and 41.6 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims, Estate Claim, Released Third Party Causes of Action or such Equity Interests: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Sections 41.5 and 41.6 hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

41.8    **Exculpation:** The Debtors, the Debtors' officers and directors serving during the period from the Petition Date up to and including the Effective Date, the Creditors' Committee and each of its members in their capacity as members of the Creditors' Committee, the Equity Committee and each of its members in their capacity as members of the Equity Committee, and each of their respective professionals shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Chapter 11 Cases (including any actions taken by the Creditors' Committee after the Effective Date), the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement and the Supplemental Disclosure Statement related thereto, the Global Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Global Settlement Agreement; provided, however, that the foregoing provisions of this Section 41.8, shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Nothing in the foregoing Section 41.8 shall prejudice the right of any of the Debtors, the Debtors' officers and directors serving during the period from the Petition Date up to and including the Effective Date, the Creditors' Committee and each of its members in their capacity as members of the Creditors' Committee, the Equity Committee and each of its members in their capacity as members of the Equity Committee, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan.

41.9    **Bar Order:** To the limited extent provided in Section 41.6 of the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the

Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, the Debtors' Claims, the JPMC Claims, the FDIC Claim, the Purchase and Assumption Agreement (other than any rights or claims the JPMC Entities, the Receivership, the FDIC Receiver or the FDIC Corporate may have under the Purchase and Assumption Agreement), confirmation and consummation of the Plan, the negotiation and consummation of the Global Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

41.10 **Deemed Consent:** By submitting a Ballot or election form and receiving a distribution under or any benefit pursuant to this Plan and not electing to withhold consent to the releases of the applicable Released Parties and the Entities set forth in Section 41.6 of the Plan, or by order of the Bankruptcy Court, each holder of a Claim or Equity Interest shall be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases set forth in Section 41.6 of the Plan.

41.11 **No Waiver:** Notwithstanding anything to the contrary contained in Sections 41.5 and 41.6 hereof, the releases and injunctions set forth in such sections shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Creditors' Committee, the Liquidating Trustee, the JPMC Entities, the FDIC Receiver, or FDIC Corporate to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by any of them.

41.12 **Supplemental Injunction:** Notwithstanding anything contained herein to the contrary, except to the limited extent provided in Section 41.6 of the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims or Equity Interests against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims or Equity Interests arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

(a)    **Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim or Equity Interest against any of the Released Parties or the assets or property of any Released Party;**

(b)    Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim or Equity Interest;

(c)    Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim or Equity Interest;

(d)    Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Global Settlement Agreement, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim or Equity Interest; and

(e)    Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Confirmation Order, or the Global Settlement Agreement relating to such Released Claim or Equity Interest;

provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code; and, provided, further, that the supplemental injunction provided pursuant to the terms of this Section 41.12 shall not preclude any current or former officers or directors of WMI from asserting any setoff or recoupment rights against any judgment or other obligation due to the Debtors, the Debtors' estates, or the Liquidating Trust or against the property of the Debtors or the Debtors' estates, to the extent such individuals have such rights pursuant to applicable non-bankruptcy law.

41.13    **Term of Existing Injunctions or Stays:**  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until entry of an order in accordance with Section 41.23 of the Plan or such other Final Order of the Bankruptcy Court; provided, however, that the terms of the Stock Trading Order shall remain in full force and effect forever, including, without limitation, with respect to any violation thereof on or before the Effective Date.

41.14    **Payment of Statutory Fees:**  All fees payable pursuant to section 1930 of title 28 of the United States Code, and, if applicable, any interest payable pursuant to section 3717 of title 31 of the United States Code, as determined by the Bankruptcy Court, shall be obligations and liabilities of the Liquidating Trust and shall be paid on the Effective Date or thereafter as and when they become due or otherwise pursuant to an agreement between the Debtors and the United States Department Justice, Office of the United States Trustee, until such time as the Chapter 11 Cases are closed in accordance with the provisions of Section 41.23 of the Plan.

41.15  **Post-Effective Date Fees and Expenses**: From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, retain professionals and pay the reasonable professional fees and expenses incurred by the Reorganized Debtors related to implementation and consummation of the Plan without further approval from the Bankruptcy Court.

41.16  **Exemption from Transfer Taxes**: Pursuant to sections 106, 1141 and 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan or the Global Settlement Agreement, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan or the Global Settlement Agreement, including, without limitation, the Runoff Notes, the Reorganized Common Stock, the Trust Preferred Securities, and any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the Global Settlement Agreement shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax. The Confirmation Order shall direct all state and local government officials and agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any instrument or other document issued or transferred pursuant to the Plan, without the payment of any such tax or government assessment.

41.17  **Withdrawal of Equity Committee Proceedings**: Without limiting the provisions of Section 35.2 of the Plan, on the Effective Date, the Equity Committee Adversary Proceeding and the Equity Committee Action to Compel, and any other proceeding or action instituted by the Equity Committee (including any appeal), shall be deemed withdrawn, with prejudice, without any further action.

41.18  **Payment of Fees and Expenses of Certain Creditors**: Within ninety (90) days of the Effective Date, (i) Fried, Frank, Harris, Shriver & Jacobson LLP, (ii) Blank Rome LLP, (iii) White & Case LLP, (iv) Kasowitz, Benson, Torres & Friedman LLP, (v) Zolfo Cooper LLC, (vi) Kramer, Levin, Naftalis & Frankel LLP, (vii) Halperin Battaglia Raicht LLP, (viii) Kilpatrick Townsend & Stockton LLP, (ix) Brown Rudnick LLP, (x) Arkin Kaplan Rice LLP, (xi) Campbell & Levine, LLC, (xii) Mesirow Financial Consulting, LLC, (xiii) Schnader Harrison Segal & Lewis LLP, and (xiv) in accordance with Section 21.1(a) hereof, Wilmer Cutler Pickering Hale & Dorr LLP, Pachulski Stang Ziehl & Jones LLP, and Boies, Schiller & Flexner LLP, to the extent any clients with respect to the foregoing professionals seek reimbursement for the payment of fees and expenses incurred, shall file with the Bankruptcy Court an application (for purposes of reviewing the reasonableness of the amounts requested therein), together with detailed invoices annexed thereto, requesting payment for reasonable fees and expenses incurred during the period from the Petition Date through and including the Effective Date, in connection with the Chapter 11 Cases, the Global Settlement Agreement, the Plan or the transactions contemplated herein or therein (including, without limitation, investigating, negotiating, documenting, and completing such transactions and enforcing, attempting to enforce, and preserving any right or remedy contemplated under the Global Settlement Agreement and in the Chapter 11 Cases). Within ten (10) Business Days of the entry of a Final Order by the Bankruptcy Court approving the payment thereof, in whole or in part, the Disbursing Agent shall pay such fees and expenses so approved.

41.19  **Securities Litigations Documents**: On the Effective Date, and to the extent that the Reorganized Debtors are formed, the Debtors shall not transfer any documents, in electronic form or otherwise, to the Reorganized Debtors that relate to the claims, defenses and allegations in the Securities Litigations. All such documents will be transferred to the Liquidating Trust on the Effective Date and shall be thereafter maintained and preserved in accordance with the terms of the Liquidating Trust Agreement; provided, however, that, in the event that any documents are required for the operations of the Reorganized Debtors and are transferred to the Reorganized Debtors, copies of any such documents shall be transferred to the Liquidating Trust or the Effective Date and thereafter maintained and preserved in accordance with the terms of the Liquidating Trust Agreement.

41.20  **Severability**: If, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, the Creditors' Committee, the Equity Committee and AAOC, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation; provided, however, that, any holding, alteration or interpretation that alters, amends or modifies the definition of JPMC Assumed Liabilities or the releases provided in the Plan or the assets or benefits to be provided to JPMC pursuant to the Global Settlement Agreement absent JPMC's express written consent (which may be withheld, delayed, or conditioned in JPMC's sole discretion) shall render the remainder of the terms and provisions of the Plan and the Global Settlement Agreement of no force or effect. Except with respect to the foregoing proviso, the Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted, is valid and enforceable pursuant to its terms.

41.21  **Governing Law**: Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York, without giving effect to principles of conflicts of laws.

41.22  **Notices**: All notices, requests, and demands to or upon the Debtors, the Debtors in Possession, the Reorganized Debtors, or the Liquidating Trustee to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors or the Debtors in Possession:

Washington Mutual, Inc.
1201 Third Avenue, Suite 3000
Seattle, Washington 98101
Attention: General Counsel
Telephone: (206) 432-8731
Facsimile: (206) 432-8879

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Brian S. Rosen, Esq.
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

41.23   **Closing of Case:**  The Liquidating Trustee shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

41.24   **Section Headings:**  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

41.25   **Inconsistencies:**  To the extent of any inconsistency between (a) the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern and (b) the terms and provisions of the Plan and the terms and provisions of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and be deemed a modification of the Plan; provided, however, that under no circumstances shall the Confirmation Order modify the economic terms set forth herein.

Dated:   Seattle, Washington
         December 12, 2011

                                    WASHINGTON MUTUAL, INC.

                                    By:   /s/ William C. Kosturos_____
                                          Name: William C. Kosturos
                                          Title:  Chief Restructuring Officer

WMI INVESTMENT CORP.

By:    /s/ William C. Kosturos
        Name: William C. Kosturos
        Title:  President & Chief Executive
             Officer


/s/ Mark D. Collins
Mark D. Collins (No. 2981)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

– and –

Brian S. Rosen, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION

# EXHIBIT A

## CCB-1 GUARANTEES CLAIMS

| Trust | Maturity Date | Security Type | Notes Issuance | Allowed Principal | Allowed Accrued Interest[1] | Allowed Total Amount | Post-Petition Interest at the Federal Judgment Rate[2] | Post-Petition Interest Pursuant to Contractual Subordination[3] |
|---|---|---|---|---|---|---|---|---|
| CCB Capital Trust IV | October 8, 2033 | Preferred | $7,500,000 | $7,500,000 | $94,843.83 | $7,594,843.83 | $520,150.04 | $1,042,075.89 |
| | | Common | $232,000 | $232,000 | $2,933.84 | $234,933.84 | $16,089.97 | $32,234.88 |
| CCB Capital Trust V | January 23, 2034 | Preferred | $10,000,000 | $10,000,000 | $100,140.62 | $10,100,140.62 | $691,730.96 | $1,306,262.57 |
| | | Common | $310,000 | $310,000 | $3,104.36 | $313,104.36 | $21,443.66 | $40,494.14 |
| CCB Capital Trust VII | July 23, 2034 | Preferred | $7,500,000 | $7,500,000 | $71,762.44 | $7,571,762.44 | $518,569.26 | $905,843.12 |
| | | Common | $232,000 | $232,000 | $2,219.85 | $234,219.85 | $16,041.08 | $28,020.75 |
| CCB Capital Trust VIII | July 23, 2034 | Preferred | $7,500,000 | $7,500,000 | $76,485.09 | $7,576,485.09 | $518,892.70 | $962,205.25 |
| | | Common | $232,000 | $232,000 | $2,365.94 | $234,365.94 | $16,051.08 | $29,764.22 |

---

[1] This amount includes interest accrued as of the Petition Date, and does not include any Post-Petition interest to which such Claim holders may be entitled.

[2] This amount includes the estimated amount of interest accrued at the Federal Judgment Rate of 1.95%, the weekly average 1-year constant maturity Treasury yield as of 9/26/08, through an expected Effective Date of February 29, 2012.

[3] This amount includes the estimated amount of interest accrued and OID accretion from the Petition Date through an expected Effective Date of February 29, 2012. Each holder's Post-Petition Interest Claim will continue to accrue until the date that such holder's Allowed CCB-1 Guarantees Claim and related Post-Petition Interest Claim are paid in full.

**EXHIBIT B**

**CCB-2 GUARANTEES CLAIMS**

| Trust | Maturity Date | Security Type | Notes Issuance | Allowed Principal | Allowed Accrued Interest[4] | Allowed Total Amount | Post-Petition Interest at the Federal Judgment Rate[5] | Post-Petition Interest Pursuant to Contractual Subordination[6] |
|---|---|---|---|---|---|---|---|---|
| HFC Capital Trust I | June 8, 2031 | Preferred | $9,000,000 | $9,000,000 | $274,860.00 | $9,274,860.00 | $635,209.75 | $3,771,954.66 |
| | | Common | $300,000 | $300,000 | $9,162.00 | $309,162.00 | $21,173.66 | $125,731.82 |
| CCB Capital Trust VI | April 15, 2034 | Preferred | $10,000,000 | $10,000,000 | $110,323.89 | $10,110,323.89 | $692,428.38 | $1,288,552.32 |
| | | Common | $310,000 | $310,000 | $3,420.04 | $313,420.04 | $21,465.28 | $39,945.12 |
| CCB Capital Trust IX | March 30, 2035 | Preferred | $15,000,000 | $15,000,000 | $216,333.33 | $15,216,333.33 | $1,042,124.98 | $2,123,709.19 |
| | | Common | $464,000 | $464,000 | $6,691.91 | $470,691.91 | $32,236.40 | $65,693.40 |

---

[4] This amount includes interest accrued as of the Petition Date, and does not include any Post-Petition interest to which such Claim holders may be entitled.

[5] This amount includes the estimated amount of interest accrued at the Federal Judgment Rate of 1.95%, the weekly average 1-year constant maturity Treasury yield as of 9/26/08, through an expected Effective Date of February 29, 2012.

[6] This amount includes the estimated amount of interest accrued and OID accretion from the Petition Date through an expected Effective Date of February 29, 2012. Each holder's Post-Petition Interest Claim will continue to accrue until the date that such holder's Allowed CCB-2 Guarantees Claim and related Post-Petition Interest Claim are paid in full.

**EXHIBIT C**

**CREDIT AGREEMENT**

**FINANCING AGREEMENT**

**Dated as of _____ __, 2012**

**by and among**

**[REORGANIZED WMI],**
**as Borrower,**

**CERTAIN SUBSIDIARIES OF [REORGANIZED WMI] FROM TIME**
**TO TIME A PARTY HERETO,**
**as Guarantors**

**THE LENDERS FROM TIME TO TIME PARTY HERETO,**
**as Lenders,**

**U.S. BANK NATIONAL ASSOCIATION,**
**as Agent,**

DOC ID-17658041.34

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS; CERTAIN TERMS....................................................................2

Section 1.01  Definitions ..............................................................................................2

Section 1.02  Terms Generally ......................................................................................26

Section 1.03  Certain Matters of Construction ..............................................................26

Section 1.04  Accounting and Other Terms ..................................................................27

Section 1.05  Time References........................................................................................28

ARTICLE II THE LOANS.................................................................................................28

Section 2.01  Commitments............................................................................................28

Section 2.02  Making the Loans ....................................................................................29

Section 2.03  Repayment of Loans; Evidence of Debt..................................................30

Section 2.04  Interest and Funding Fee ........................................................................30

Section 2.05  Reduction of Commitment; Prepayment of Loans .....................................31

Section 2.06  Agent's Fee .............................................................................................33

Section 2.07  Taxes.......................................................................................................33

ARTICLE III FEES, PAYMENTS AND OTHER COMPENSATION ...................................36

Section 3.01  Payments; Computations and Statements..................................................36

Section 3.02  Sharing of Payments, Defaulting Lenders, Etc...........................................37

Section 3.03  Apportionment of Payments ...................................................................38

ARTICLE IV CONDITIONS TO LOANS ...........................................................................39

Section 4.01  Conditions Precedent to Effectiveness .....................................................39

Section 4.02  Conditions Precedent to All Loans ..........................................................41

ARTICLE V REPRESENTATIONS AND WARRANTIES...................................................43

Section 5.01  Representations and Warranties ...............................................................43

ARTICLE VI COVENANTS OF THE LOAN PARTIES ........................................................ 47

Section 6.01      Affirmative Covenants.................................................................... 47

Section 6.02      Negative Covenants ...................................................................... 51

Section 6.03      Financial Covenants...................................................................... 56

ARTICLE VII EVENTS OF DEFAULT ............................................................................. 57

Section 7.01      Events of Default .......................................................................... 57

Section 7.02      Agent Matters Upon Default ........................................................ 59

ARTICLE VIII AGENT ...................................................................................................... 60

Section 8.01      Appointment ................................................................................. 60

Section 8.02      Nature of Duties........................................................................... 61

Section 8.03      Rights, Exculpation, Etc .............................................................. 61

Section 8.04      Reliance ........................................................................................ 62

Section 8.05      Indemnification............................................................................. 62

Section 8.06      Agent Individually ....................................................................... 62

Section 8.07      Successor Agent............................................................................ 63

Section 8.08      Agency for Perfection................................................................... 63

Section 8.09      No Reliance on the Agent's Customer Identification
Program........................................................................................ 63

Section 8.10      No Third Party Beneficiaries ....................................................... 64

Section 8.11      No Fiduciary Relationship............................................................ 64

Section 8.12      Reports; Confidentiality; Disclaimers ......................................... 64

Section 8.13      Collateral Matters ........................................................................ 64

ARTICLE IX GUARANTY ................................................................................................ 65

Section 9.01      Guaranty ...................................................................................... 65

Section 9.02      Guaranty Absolute....................................................................... 65

Section 9.03      Waiver.......................................................................................... 66

DOC ID-17658041.34

Section 9.04     Continuing Guaranty; Assignments ............................................................ 67

Section 9.05     Subrogation ............................................................................................ 67

Section 9.06     Reinstatement ......................................................................................... 68

ARTICLE X MISCELLANEOUS ............................................................................. 68

Section 10.01     Notices, Etc............................................................................................. 68

Section 10.02     Amendments, Etc..................................................................................... 69

Section 10.03     No Waiver; Remedies, Etc ...................................................................... 71

Section 10.04     Expenses; Taxes; Attorneys' Fees.......................................................... 71

Section 10.05     Right of Set-off........................................................................................ 72

Section 10.06     Severability ............................................................................................. 72

Section 10.07     Assignments and Participations.............................................................. 73

Section 10.08     Counterparts............................................................................................ 76

Section 10.09     GOVERNING LAW ............................................................................... 76

Section 10.10     CONSENT TO JURISDICTION; SERVICE OF PROCESS AND VENUE................................................................. 76

Section 10.11     WAIVER OF JURY TRIAL, ETC........................................................... 77

Section 10.12     Consent by the Agent and Lenders.......................................................... 78

Section 10.13     No Party Deemed Drafter ........................................................................ 78

Section 10.14     Reinstatement; Certain Payments ........................................................... 78

Section 10.15     Indemnification; Limitation of Liability for Certain Damages .................................................................................................. 78

Section 10.16     Records ................................................................................................... 79

Section 10.17     Binding Effect......................................................................................... 79

Section 10.18     Confidentiality ........................................................................................ 80

Section 10.19     Public Disclosure .................................................................................... 80

Section 10.20     Integration ............................................................................................... 80

Section 10.21     USA PATRIOT Act................................................................................. 81

DOC ID-17658041.34

**Schedules and Exhibits**

Schedule 1.01(A)       Commitments
Schedule 5.01(e)       Subsidiaries
Schedule 5.01(o)       Insurance
Schedule 10.02(c)      Certain Agent Actions

Exhibit A      Form of Assignment and Acceptance Agreement
Exhibit B      Form of Joinder Agreement
Exhibit C      Form of Notice of Borrowing

**Schedule 10.02(c)**

| Section/Provision of Financing Agreement | Action |
| --- | --- |
| Definition of "SAP" | Adjustments to Reporting on an alternative basis to statutory accounting principles and regulations prescribed by the National Association of Insurance Commission for the preparation of financial statements |
| Definition of "Security Agreement" | Form and Substance of Pledge and Security Agreement made by a Loan Party |
| Section 1.04 | Meaning of terms used in New York Uniform Commercial Code (the "UCC") in light of replacement or amendment of the UCC |
| Section 6.01(k) | Consent to change in Fiscal Year. |
| Section 10.02(b) | Replacement of Holdout Lenders |

| Section/Provision of Pledge and Security Agreement | Action |
| --- | --- |
| Section 7(a)(iii) | Execution and delivery by Agent of proxies and other instruments referred to therein |

# FINANCING AGREEMENT

Financing Agreement, dated as of March ___, 2012, by and among [Reorganized WMI], a Washington corporation (the "Borrower"), each subsidiary of the Borrower listed as a "Guarantor" on the signature pages hereto (together with each other Person that executes a joinder agreement and becomes a "Guarantor" hereunder or otherwise guaranties all or any part of the Obligations (as hereinafter defined), each a "Guarantor" and collectively, the "Guarantors"), the lenders from time to time party hereto (each a "Lender" and collectively, the "Lenders") and U.S. Bank National Association, a national banking association, as administrative agent for the Lenders (together with its successors and assigns, in such capacity, the "Agent").

## RECITALS

On September 26, 2008, Washington Mutual, Inc. and its subsidiaries (collectively, the "Debtors") filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (as amended and any successor thereto, the "Bankruptcy Code") and continued in the possession of their assets and in the management of their businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Such reorganization cases were jointly administered under Case Numbers 08-12229 (the "Chapter 11 Cases").

On December 12, 2011, the Debtors filed their Seventh Amended Joint Plan of Reorganization (the "Plan of Reorganization"), and related Disclosure Statement with the Bankruptcy Court in the Chapter 11 Cases. In connection therewith, the Debtors filed a Plan Supplement which included documents contemplated to be executed and delivered contemporaneously with the consummation of the Plan, including the form of this Agreement. By order dated _____, 2012, the Bankruptcy Court confirmed the Plan of Reorganization in accordance with Section 1129 of the Bankruptcy Code and authorized the consummation thereof, including the execution and delivery of this Agreement.

The Borrower has asked the Lenders to extend credit to the Borrower consisting of (a) a tranche A term loan and a tranche A-1 term loan in the aggregate principal amount of $25,000,000 and (b) a tranche B term loan in the aggregate principal amount of $100,000,000. The proceeds of (a) the tranche A term loan and tranche A-1 term loan shall be used to fund working capital and to provide for general corporate purposes (as more fully set forth in Section 5.01(p) hereof) of the Borrower and its subsidiaries subject to the terms hereof, and (b) the tranche B term loan shall be used to fund permitted acquisitions and permitted originations subject to the terms hereof. The Lenders are severally, and not jointly, willing to extend such credit to the Borrower subject to the terms and conditions hereinafter set forth.

In consideration of the premises and the covenants and agreements contained herein, the parties hereto agree as follows:

# ARTICLE I

# DEFINITIONS; CERTAIN TERMS

Section 1.01    Definitions.  As used in this Agreement, the following terms shall have the respective meanings indicated below, such meanings to be applicable equally to both the singular and plural forms of such terms:

"Account Receivable" means, with respect to any Person, any and all rights of such Person to payment for goods sold and/or services rendered, including accounts, general intangibles and any and all such rights evidenced by chattel paper, instruments or documents, whether due or to become due and whether or not earned by performance, and whether now or hereafter acquired or arising in the future, and any proceeds arising therefrom or relating thereto.

"Action" has the meaning specified therefor in Section 10.12.

"Acquisition Business Plan" means a business plan approved by the board of directors of the Borrower consisting of pro forma projected GAAP Pre-Tax Income or Statutory Pre-Tax Income, in accordance with GAAP or SAP, as applicable.

"Additional Amount" has the meaning specified therefor in Section 2.07(a).

"Affiliate" means, with respect to any Person, any other Person that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) vote 10% or more of the Equity Interests having ordinary voting power for the election of members of the board of directors of such Person or (b) direct or cause the direction of the management and policies of such Person whether by contract or otherwise; provided that neither the Agent nor any Lender shall be deemed an Affiliate of the Borrower.

"Agent" has the meaning specified therefor in the preamble hereto.

"Agent's Account" means an account at a bank designated by the Agent from time to time as the account into which the Loan Parties shall make all payments to the Agent for the benefit of the Agent and the Lenders under this Agreement and the other Loan Documents.

"Agent Fee Letter" shall mean that certain Fee Letter dated February __, 2012 between the Borrower and the Agent, as amended, restated or otherwise modified from time to time.

"Agreement" means this Financing Agreement, including all amendments, modifications and supplements and any exhibits or schedules to any of the foregoing, and shall refer to the Agreement as the same may be in effect at the time such reference becomes operative.

"Anti-Terrorism Laws" means any laws relating to terrorism or money laundering, including, without limitation, (a) the Money Laundering Control Act of 1986 (i.e., 18 U.S.C. §§ 1956 and 1957), (b) the Bank Secrecy Act, as amended by the USA PATRIOT Act, (c) the laws, regulations and Executive Orders administered by the United States Department of

the Treasury's Office of Foreign Assets Control ("OFAC"), (d) the Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010 and implementing regulations by the United States Department of the Treasury, (e) any law prohibiting or directed against terrorist activities or the financing of terrorist activities (*e.g.*, 18 U.S.C. §§ 2339A and 2339B), or (f) any similar laws enacted in the United States or any other jurisdictions in which the parties to this agreement operate, as any of the foregoing laws may from time to time be amended, renewed, extended, or replaced and all other present and future legal requirements of any Governmental Authority governing, addressing, relating to, or attempting to eliminate, terrorist acts and acts of war and any regulations promulgated pursuant thereto.

"Asset Coverage Ratio" means the ratio of Consolidated Assets to Consolidated Funded Indebtedness of the Loan Parties (excluding the Run-Off Notes); provided, that for purposes of calculating the Asset Coverage Ratio, (i) the Run-Off Assets and Liabilities shall be excluded and (ii) the Insurance Holdings of any Loan Party shall be accounted for at Net Asset Value on the basis of SAP (for purposes of clarity, it being understood that (x) Consolidated Assets shall exclude assets of Insurance Subsidiaries under SAP and (y) Consolidated Funded Indebtedness shall exclude liabilities of Insurance Subsidiaries under SAP).

"Assignment and Acceptance" means an assignment and acceptance entered into by an assigning Lender and an assignee in accordance with Section 10.07 hereof, substantially in the form of Exhibit A attached hereto.

"Authorized Officer" means, with respect to any Person, the chief executive officer or chief financial officer of such Person.

"Bankruptcy Code" means the United States Bankruptcy Code (11 U.S.C. § 101, et seq.) as amended, and any successor statute.

"Bankruptcy Court" has the meaning specified therefor in the recitals hereto.

"Blocked Person" has the meaning specified therefor in Section 5.01(t).

"Board" means the Board of Governors of the Federal Reserve System of the United States.

"Borrower" has the meaning specified therefor in the preamble hereto.

"Borrower's Cash Interest Expense" means, with respect to Borrower for any period, (a) gross interest expense (excluding interest on the Run-Off Notes) of the Borrower for such period determined in accordance with GAAP incurred in connection with the Loan and any other Indebtedness (including, without limitation, interest expense paid to Affiliates), less (b) the sum of, in each case to the extent included in clause (a) above, (i) the amortized amount of debt discount and debt issuance costs, (ii) gains or losses related to adjustments to the carrying value of Borrower Funded Indebtedness pursuant to GAAP and any applicable Accounting Standards Codifications (c) interest payable in evidence of Indebtedness or by addition to the principal of the related Indebtedness and (d) other non-cash interest.

"Borrower Funded Indebtedness" means, with respect to the Borrower at any date, all Indebtedness of the Borrower, determined in accordance with GAAP.

"Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required to close.

"Business Performance Test" means, with respect to each Fiscal Year of the Borrower and its Subsidiaries (a) the Asset Coverage Ratio of the Borrower and its Subsidiaries as of the last day of such Fiscal Year is not less than 1.20 to 1.00, and (b) the actual performance (on an aggregate basis) of the Borrower and its Subsidiaries for such Fiscal Year, as compared to the Covenant Business Plan in respect of such Fiscal Year, does not demonstrate an actual negative variance greater than 25%.

"Cash Equivalents" means (a) marketable direct obligations issued or unconditionally guaranteed by the United States Government or issued by any agency thereof and backed by the full faith and credit of the United States, in each case, maturing within six months from the date of acquisition thereof, (b) commercial paper, maturing not more than 270 days after the date of issue rated P-1 by Moody's or A-1 by Standard & Poor's, (c) certificates of deposit maturing not more than 270 days after the date of issue, issued by commercial banking institutions and money market or demand deposit accounts maintained at commercial banking institutions, each of which is a member of the Federal Reserve System and has a combined capital and surplus and undivided profits of not less than $500,000,000, (d) money market accounts maintained with mutual funds having assets in excess of $2,500,000,000, and (f) marketable tax exempt securities rated A or higher by Moody's or A+ or higher by Standard & Poor's, in each case, maturing within six months from the date of acquisition thereof.

"Change of Control" means each occurrence of any of the following:

(a)     the acquisition, directly or indirectly, by any person or group (within the meaning of Section 13(d)(3) of the Exchange Act) of beneficial ownership of more than 50% of the aggregate outstanding voting power of the Equity Interests of the Borrower;

(b)     commencing on the earlier of (x) the twelve month anniversary of the effective date of the Plan of Reorganization and (y) when the initial board of directors of the Borrower is fully constituted with members expected to serve a year or more, during any period of two consecutive years, individuals who at the beginning of such period constituted the board of directors of the Borrower (together with any new directors whose election by such board of directors or whose nomination for election by the shareholders of the Borrower was approved by a vote of at least a majority the directors of the Borrower then still in office who were either directors at the beginning of such period, or whose election or nomination for election was previously approved) cease for any reason to constitute a majority of the board of directors of the Borrower;

(c)     except to the extent permitted by Section 6.02(c), the Borrower shall cease to directly or indirectly have beneficial ownership (as defined in Rule 13d-3 under the Exchange Act) of 100% of the aggregate voting power of the Equity Interests of each other Loan Party or Insurance Subsidiary (including, without limitation, any protected cell (other than the Protected

Cell)), free and clear of all Liens or in the case of entities that are Loan Parties or is an Insurance Subsidiary (including, without limitation, any protected cell (other than the Protected Cell)), as a result of a Permitted Acquisition or Permitted Origination, the Borrower shall cease to directly or indirectly have beneficial ownership (as defined in Rule 13d-3 under the Exchange Act) of at least the same percentage of the aggregate voting power of the Equity Interests of such Loan Party, free and clear of all Liens as Borrower had at the time of the closing of the Permitted Acquisition or the Permitted Origination as a result of such Permitted Acquisition or Permitted Origination; or

(d)    a "Change of Control" (or any comparable term or provision), if any, under or with respect to any of the Run-Off Notes Documents or Subordinated Indebtedness of the Borrower or any of its Subsidiaries.

"Chapter 11 Cases" has the meaning specified therefor in the recitals hereto.

"CIP Regulations" has the meaning specified therefor in Section 8.09.

"Collateral" means all of the property and assets and all interests therein and proceeds thereof now owned or hereafter acquired by any Person upon which a Lien is granted or purported to be granted by such Person as security for all or any part of the Obligations.

"Commitment" means, with respect to each Lender, such Lender's Term Loan A Commitment, Term Loan A-1 Commitment and Term Loan B Commitment.

"Confirmation Order" means that certain Order Confirming Seventh Amended Joint Plan of Reorganization of the Debtors, in form and substance acceptable to the Required Lenders and the Equity Committee, entered by the Bankruptcy Court on _____, 2012.

"Consolidated Funded Indebtedness" means, with respect to any Person at any date, all Indebtedness of such Person, determined on a consolidated basis in accordance with GAAP, excluding any deposits at an FDIC regulated financial institution which is a Loan Party.

"Consolidated Assets" means, the total consolidated assets of the Borrower and its Subsidiaries, with the valuation of such total consolidated assets to be calculated on the basis of: (a) in the case of assets owned by the Borrower and its Subsidiaries immediately prior to the time of such calculation, and reflected in the most recently delivered audited financial statements delivered pursuant to Section 6.01(a) hereof, on the basis of such audited financial statements, and (b) in the case of assets (i) to be acquired or originated by the Borrower and its Subsidiaries contemporaneously with the making of such calculation, or (ii) acquired or originated after delivery of the most recently delivered audited financial statements pursuant to Section 6.01(a) hereof, on the basis of the fair market value of such assets, as determined in accordance with (x) the Independent Valuation Process, if required hereunder, or (y) at any other time, by a majority of the Borrower's board of directors, including the Lender Board Representative, in the exercise of the board's good faith business judgment, using a customary method for determining fair market value for such assets.

"Consolidated Tangible Assets" means Consolidated Assets of the Loan Parties, after deducting therefrom any intangible assets.

"Covenant Business Plan" means a business plan consisting of pro forma projected GAAP Pre-Tax Income and Statutory Pre-Tax Income, reflecting all Permitted Acquisitions (consistent with any Acquisition Business Plan) and Permitted Originations (consistent with any Origination Business Plan) through the date of preparation thereof, prepared by the management of the Borrower (it being understood that the Covenant Business Plan is not required to be the actual business plan prepared by the Borrower from time to time for purposes other than the Business Performance Test).

"Cure Amount" means an amount sufficient to reduce Indebtedness outstanding under this Agreement such that after giving effect to such reduction, the Interest Coverage Ratio set forth in Section 6.03(a) is satisfied.

"Cure Right" means the right to obtain a cash equity contribution of the Cure Amount from external sources (so long as such equity issued in connection therewith is common equity of the same class that exists on the Effective Date) and such Cure Amount is deposited in a separate blocked account subject to a first priority perfected Lien in favor of the Agent for the benefit of the Agent and the Lenders and held in such account for six months from the date of deposit; provided, however, that in the event that at the end of such six-month period, without giving effect to such sums so deposited, a Default or Event of Default is continuing with respect to the Interest Coverage Ratio as computed on such date based on the then most recent quarterly financial statements, the Agent shall apply such Cure Amounts to first prepay the Term Loan A-1 until paid in full and then to prepay the Term Loan A and the Term Loan B on a pro rata basis and, provided further, such Cure Amounts may come from internal sources, so long as such amounts were not borrowed from the Lenders under Term Loan A, Term Loan A-1 or Term Loan B and do not constitute Restricted Disposition Proceeds.

"Debtors" has the meaning specified therefor in the recitals hereto.

"Default" means an event which, with the giving of notice or the lapse of time or both, would constitute an Event of Default.

"Defaulting Lender" means subject to Section 3.02, any Lender that (a) has failed to fund any portion of the Loan required to be funded by it hereunder within three (3) Business Days of the date required to be funded by it hereunder unless such Lender notifies the Agent in writing that such failure is the result of such Lender's determination that one or more conditions precedent to funding (each of which conditions precedent, together with any applicable default, shall be specifically identified in such writing) has not been satisfied, (b) has otherwise failed to pay over to the Agent or any other Lender any other amount required to be paid by it hereunder within five (5) Business Days of the date when due, (c) is insolvent or becomes the subject of an Insolvency Proceeding or (d) has notified the Agent in writing that it does not intend to comply with its funding obligations hereunder, or has made a public statement to that effect (unless such writing or public statement relates to such Lender's obligation to fund a Loan hereunder and states that such position is based on such Lender's determination that a condition precedent to funding (which condition precedent, together with any applicable default, shall be specifically identified in such writing or public statement) cannot be satisfied); provided, however, that solely for the purpose of any responsibilities or obligations of the Agent hereunder, the Agent shall not be deemed to be aware of such public statement unless notified in writing of such